ORIGINAL

FILED
OCT 27 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BROWN & PIPKINS, LLC, doing business as ACSENTIAL SERVICES, | ) |
| Plaintiff, | ) 06-732 C |
| v. | ) CIVIL ACTION FILE NO. ______ |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**MOTION FOR TEMPORARY RESTRAINING ORDER, PERMANENT INJUNCTION, AND DECLARATORY RELIEF AND MANDAMUS**

COMES NOW Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), Plaintiff in the above-styled action, and respectfully requests that the Court issue the following relief to B&P and against Defendant The United States and its agencies (particularly the Department of the Army), officers, agents, servants and employees: (1) enter a temporary restraining order/preliminary injunction restraining Defendants and its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for full food services at Fort Gordon, Georgia pursuant to Department of the Army Solicitation No. W911SE-05-R-0013 ("Solicitation") by anyone other than B&P; (2) enter a permanent injunction enjoining Defendant and its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors), from proceeding with performance of a new contract for the Food Services Project

pursuant to the Solicitation by anyone other than B&P; (3) issue an Order declaring any contract issued pursuant to the Solicitation to anyone other than B&P void, and further declaring that the contract pursuant to the Solicitation is to be awarded to B&P; (4) issue a writ of mandamus directing Defendant, its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) to award any contract issued pursuant to the Solicitation to B&P; and (5) provide such other and further relief as the Court may determine is appropriate.

In support of this Motion, B&P is separately filing a Verified Complaint, and a supporting Memorandum, both of which and the exhibits attached to those documents are incorporated herein by reference.

WHEREFORE, B&P respectfully prays that this Honorable Court issue the following relief to B&P and against Defendant The United States and its agencies (particularly the Department of the Army), officers, agents, servants and employees:

(1) enter a temporary restraining order/preliminary injunction restraining Defendants and its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for full food services at Fort Gordon, Georgia pursuant to Department of the Army Solicitation No. W911SE-05-R-0013 ("Solicitation") by anyone other than B&P;

(2) enter a permanent injunction enjoining Defendant and its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors), from proceeding with performance of a new contract for the Food Services Project pursuant to the Solicitation by anyone other than B&P;

(3) issue an Order declaring any contract issued pursuant to the Solicitation to anyone other than B&P void and declaring that the contract pursuant to the Solicitation must be awarded to B&P;

(4) issue a writ of mandamus directing Defendant, its agencies, officers, agents, servants and employees (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) to award any contract issued pursuant to the Solicitation to B&P; and

(5) provide such other and further relief as the Court determines is appropriate.

DATED this 25th day of October, 2006.

**SMITH, CURRIE & HANCOCK LLP**

By [signature]
James W. Copeland (Georgia Bar No. 186780)
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

**OF COUNSEL:**

S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK, LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC, doing business as Acsential Services

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BROWN & PIPKINS, LLC, doing business as ACSENTIAL SERVICES, Plaintiff, v. THE UNITED STATES, Defendant. | ) | CIVIL ACTION FILE NO. ______________ |

# MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, PERMANENT INJUNCTION, AND DECLARATORY RELIEF AND MANDAMUS

## I. STATEMENT OF RELEVANT FACTS

### A. The Parties

Brown & Pipkins, LLC, doing business as Ascential Services ("B&P") is a Georgia limited liability company with its principal place of business located in Atlanta, Fulton County, Georgia. B&P is a small business minority enterprise certified pursuant to Section 8(a) of the Small Business Act.

The United States of America through the United States Department of the Army ("Army") issued the solicitation which is the subject of this lawsuit. Sandra Mack ("Mack") and Diane T. Biddy ("Biddy") are Contracting Officers for the United States Department of the Army and are officers of the Executive Branch delegated with the authority to make or withhold awards of the government contract involved, and are also responsible to ensure that all actions taken in connection with the award of this government contract comply with the Competition in Contracting Act and other

applicable government statutes and regulations. The Injunctive and Declaratory Relief requested herein apply to the United States and its agencies (particularly the Department of the Army), its officers, employees, and agents.[1]

**B. The Solicitation For Full Food Services At Fort Gordon, Georgia**

The Army Southern Region Contracting Center East, Army Contracting Agency at Fort McPherson, Georgia issued Solicitation No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project") on or about February 22, 2006. (A copy of portions of the Solicitation relevant to this action is attached at Exhibit A-1 to the Affidavit of Deidre F. Brown, which is attached hereto at Exhibit A.)

The Solicitation provides that award of the contract is to be made to a certified minority business enterprise subject to the provisions of Section 8(a) of the Small Business Act, as amended (15 U.S.C. § 637(a)) ("8(a)"). The Solicitation states that FAR Provision 52.219-18 is included in the Solicitation. That provision states:

> Offers are solicited only from small business concerns expressly certified by the Small Business Administration (SBA) for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer - . . . (emphasis added)

FAR 52.219-18 addresses the preference for 8(a) contractors and does not address any preference for blind vendors under the Randolph-Sheppard Act. (See Exhibits A and A-1 attached hereto.)

The Solicitation also provides that the Randolph-Sheppard Act ("RSA") would apply to provide a preference to qualified nominees of State Licensing Agencies ("SLA") for the blind. The Solicitation states:

[1] The facts presented in this Memorandum are supported by the Verified Complaint filed concurrently with this memorandum and the Affidavit of Deidre F. Brown attached hereto at Exhibit A.

> All offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. 107) as related to offerors of military food services. ***Present DoD and Army policy***, interpreting the Randolph-Sheppard Act applies a selection preference to qualified nominees of State Licensing Agencies (SLA) for the Blind who represent clients seeking Defense contracts for so-called "military cafeteria-styled food operations."
>
> Application of this preference ***may*** entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct negotiations with the Government without further consideration of other technically acceptable proposals.
>
> This notice is not designed to discourage competition from any 8(a) offerors interested in this requirement. Rather, it merely represents notice regarding a mandatory preference for Randolph-Sheppard Act State Licensing Agencies in the event that an offer from such source is received. In this respect, see Section I, FAR clause 52.219-18.

(See Exhibits A and A-1 attached hereto.) (emphasis added)

The Solicitation reflects and effectively incorporates the language of DOD Directive 1125.3, which provides:

> E2.1.3.1.1. If the State licensing agency submits a proposal and it is not ***within the competitive range*** established by the contracting officer, award may be made to another offer or following normal procurement procedures, but only after the on-site official confers with the Head of the DoD Component.
>
> E2.1.3.1.2. If the State licensing agency submits a proposal and it is ***within the competitive range*** established by the contracting officer, the contract will be awarded to the State licensing agency except as provided in E2.1.3.1.3., below.
>
> E.2.1.3.1.3. The contracting officer may award to other than the State licensing agency when the on-site official determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary, U.S. Department of Education, approves the determination (processing will be in accordance with E2.1.2., above), or when the on-site official determines, after conferring with the Head of the DoD Component, and the Secretary, U.S. Department of Education, agrees, that the

> blind vendor does not have the capacity to operate a cafeteria in such a manner as to provide food service at a comparable cost and of a comparable high quality as that available from other providers of cafeteria services.
>
> E2.1.3.2. Direct negotiations may be undertaken with State licensing agencies whenever the on-site official, with concurrence of the Head of the DoD Component, has determined that the State licensing agency, through its blind licensee, can provide the cafeteria services required at a reasonable cost, with food of a high quality comparable to that available from the other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in E2.1.3.1., above, will be followed. (emphasis added)

## C. The Proposals Submitted By B&P And Others

B&P timely submitted its proposal in April, 2006 providing detailed technical information responsive to the Solicitation, with a proposed price of $35,045,235.00. The Army has informed B&P that the Army received five proposals in response to the Solicitation, one of which was from the Georgia Department of Labor State Licensing Agency ("SLA") and another from protester B&P. (See the Army's Motion to Dismiss B&P's bid protest ("Protest") to the General Accountability Office ("GAO"), a copy of which is attached hereto at Exhibit A-5 to the Brown Affidavit at Exhibit A and the statement of Biddy attached to that Motion at Attachment 2. That Motion to Dismiss is referred to herein as "Army's Motion".)

The Army has informed B&P that the SLA's proposal was $40,723,007.00, which is 16 percent higher than the price submitted by B&P. Biddy has also acknowledged that the SLA is not a small business enterprise subject to Section 8(a) of the Small Business Act, because it is a not-for-profit state agency and not a minority contractor. (See Attachment 2 to Exhibit A-5 to the Brown Affidavit at Exhibit A attached hereto.)

The Army has also informed B&P that after reviewing the five proposals for technical acceptability, the Army's Evaluation Board in May 2006 determined that only two of the

proposals were technically acceptable, the proposals submitted by B&P and by the SLA. (See Attachment 2, page 2 to the Army's Motion at Exhibit A-5 to the Brown Affidavit at Exhibit A).

The Army has maintained to B&P that "when the contracting officer learned that the proposal from SLA was rated technically acceptable, she immediately ceased consideration of all other proposals and entered into discussions with SLA." (See Army's Motion at Exhibit A-5 to the Brown Affidavit at Exhibit A.) However, there is nothing in the information provided by the Army to B&P that indicates that the Army conducted any further discussions with the SLA, or how the SLA's price proposal was evaluated. (A significant portion of page 2 of Attachment 2 to the Army's Motion was redacted with this regard, and, therefore, B&P has no way of knowing what the Army maintains that it did after determining the technical acceptability of the proposals.) (B&P also submitted a freedom of information request to the Army but the Army declined to provide any internal documents pertaining to its decision-making process.)

### D. <u>The Army's Notice Of Award To The SLA And B&P's Debriefing</u>

On August 17, 2006, the Army sent B&P a letter informing B&P that the Army had decided to award the Contract for the Project to the SLA. (See Exhibit A-2 attached to the Brown Affidavit at Exhibit A hereto and incorporated herein by reference.)

On August 24, 2006, the Biddy conducted a debriefing with representatives of B&P and explained the Army's reasoning in deciding to award the contract for the Project to the SLA. (See Exhibit A.)

**E. The Army Decided To Award The Contract To The SLA Because The Randolph-Sheppard Act Applied But Did Not Establish A Competitive Range, Did Not Determine That The SLA's Proposal Was Within A Reasonable Competitive Range, And Did Not Take Into Account That The SLA's Proposal Price Was Over $5.67 Million Higher Than B&P's.**

Biddy informed B&P that the Army awarded the contract to the SLA based on the understanding that the RSA supersedes the provisions of Section 8(a) of the Small Business Act. (See Exhibit A-5 attached to Exhibit A hereto.) However, B&P has also been informed by the Army that the Army awarded the contract to the SLA without determining that the SLA's bid falls within the competitive range. (See Exhibit A-5 attached to Exhibit A hereto and Attachment 2 thereto.) B&P understands that the Army did not even establish a competitive range for the Solicitation and did not find that the SLA's proposal was within a competitive range. (See Exhibit A-5 attached hereto and Attachment 2 thereto.)

B&P believes that an evaluation of proposals subject to both Section 8(a) of the Small Business Act and the Randolph-Sheppard Act requires the agency to determine that the SLA's proposal is with the competitive range before negotiations can be conducted with the SLA and before award can be made to the SLA.

**F. B&P's Protest to The GAO And The GAO's Decision**

On August 25, 2006, B&P filed its Protest to the GAO, a copy of which is attached hereto at Exhibit A-3, and which is incorporated herein by reference. B&P amended its Protest to the GAO on August 28, 2006, a copy of which is attached hereto at Exhibit A-4 to Exhibit A. B&P maintained in its Protest, and maintains in this action, that the Army improperly awarded the contract to the SLA because (a) the Army failed to employ a competitive range analysis in evaluating the proposals; (b) the Army did not determine that the SLA's proposal was within the competitive range; and (c) the SLA's proposal could not fall within a reasonable competitive

range in light of the significantly higher price submitted by the SLA, as compared to B&P's proposed price. The Army has informed B&P that only B&P's proposal and the SLA's proposal were deemed technically acceptable, and the Army has informed B&P that B&P's proposed price of $35,045,235.00 (for the base year plus four optional years) was lower than the SLA's proposed price of $40,723,007.00, a difference of over 16 percent. Therefore, B&P maintains that the SLA's proposal should be deemed unacceptable because it would not fall within a competitive range if price were taken into account, as required for consideration of the competitive range. Therefore, B&P believes the SLA's proposal should be rejected, and the contract should be awarded to B&P.

The Army filed a Motion to Dismiss B&P's Protest to the GAO. (See Exhibit A-5, attached to Exhibit A hereto.) B&P responded to the Army's Motion to Dismiss on September 22, 2006, a copy of which is attached hereto at Exhibit A-6 to Exhibit A, which is incorporated herein by reference.

The GAO issued an Order dismissing B&P's Protest on September 27, 2006, a copy of which is attached hereto at Exhibit A-7 to Exhibit A which is incorporated herein by reference.

B&P believes that the GAO decision is improper because it would allow award to the SLA without the agency establishing a competitive range or a finding that the SLA's proposal is within a competitive range, which improperly suggests an absolute right by the SLA to receive government contracts without any regard for the competitive range criteria, or the merit of other bidders' proposals.

**G. <u>The Prior Contract For Full Food Services At Fort Gordon Has Been Extended In Light Of The Protest.</u>**

The Solicitation provides that the contract work on the Project pursuant to the Solicitation would begin on October 1, 2006. In light of B&P's protest and the timing of the GAO's

decision, the Army has extended the incumbent contractor's contract to November 30, 2006, with the new contract to begin December 1, 2006 and the SLA may have personnel on the project site beginning on November 1, 2006 for pre-contract performance preparations. (See Exhibit A.)

## II. ARGUMENT AND DISCUSSION OF AUTHORITY

### A. B&P Has Standing And Is An Interested Party

An entity has standing to pursue a bid protest when it is an interested "party" that had a substantial chance of being awarded the contract. See *Information Sciences Corp. v. United States*, __ Fed. Cl. __, 2006 WL 2686573 (2006). A party which submits a proposal in response to a solicitation and which has a direct economic interest in the procurement is an "interested party". *Id.* A proposer whose proposal is deemed acceptable but whose proposal is ultimately rejected is an "interested party" where that party is prejudiced by the agency decision not to award it the contract. *Id.* The agency decision to award a contract to another proposer directly affects the economic interests of the disappointed proposer by depriving that proposer of a potential procurement. *Id.*, citing 28 U.S.C. § 1491(b)(1) and *Am. Fed'n Gov't Employees*, 258 F.3d 1294 at 1302 (Fed. Cir. 2001).

In this case, B&P was determined by the Army to be the only offeror other than the SLA who submitted a technically acceptable proposal. Therefore, the decision by the Army to reward the contract to the SLA directly prejudices B&P by depriving it of the potential contract for the food services requirement at Fort Gordon. Thus, B&P is an "interested party" and is entitled to pursue this protest.

Additionally, B&P meets the request of being a protestor with a substantial chance of being awarded the contract if the error is corrected. Where the protestor is directly in line to

receive a contract award if the protest is upheld, that protestor meets the test for a substantial chance of receiving the award. *Id.* "To have standing, the plaintiff need only establish that it 'could compete for the contract' if the process were competitive." *Myers Investigative*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (citations omitted). Here, B&P would be the only technically acceptable contractor and the only contractor submitting a proposal within a reasonable competitive range if the protest is withheld. Therefore, B&P clearly has standing because it is an interested party which could compete for the contract if the competitive process were fairly applied.

### B. A Temporary Restraining Order/ Preliminary Injunction Is Appropriate In This Case.

A temporary restraining order ("TRO") and preliminary injunction is appropriate where :

(1) There is a likelihood of success on the merits;
(2) It will be immediately and irreparably injured;
(3) There is a showing that the stay would not pose substantial harm to other interested parties if granted; and
(4) There is a showing that no harm will be inflicted upon the public interest.

*Wheeler Constr., Inc. v. United States*, 39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1998). "The purpose of a preliminary injunction," according to the 5th Circuit, "is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975).

#### 1. B&P has a substantial likelihood of success on the merits.

B&P has a likelihood of success on the merits because there is no dispute that the Army: (a) did not establish a competitive range; (b) did not use a competitive range analysis; and (c) did not apply a price evaluation to determine if the SLA's proposed price was in a reasonable competitive range. There is also no dispute that the SLA is not an 8(a) contractor,

and that the SLA's proposal price is over $5.67 million (more than 16 percent) higher than B&P's, which indicates that the SLA's bid would not be within a reasonable competitive range. B&P believes the Army's decision to award to the SLA effectively provides the SLA with a near absolute right to receive awards over other contractors, and exceeds the authority allowed the Army and its Contracting Officers.

**a. The Solicitation provides that award is to be made to a Section 8(a) contractor; B&P is an 8(s) contractor and the SLA is not.**

The Solicitation provides that "[o]ffers are solicited only from small business concerns expressly certified by the Small Business Administration ("SBA") for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer . . ." (See Exhibit A-1 hereto.) B&P is a certified 8(a) minority business enterprise under the Small Business Act. However, as the Army has acknowledged, the SLA does not qualify as a minority business enterprise pursuant to Section 8(a). (See Statement from Biddy at Attachment 2 to Exhibit A-5.) See also *Department of the Air Force -- Reconsideration*, 72 Comp. Gen. 241, 242, fn. 2. Therefore, the SLA is not a qualified proposer pursuant to the language of the Solicitation.

The Solicitation also provides that it is subject to the RSA as it relates to offers of military food services. (See Exhibit A-1 hereto.) The Solicitation provides that application of the RSA preference may entitle a qualified offeror, whose evaluated proposal is determined technically acceptable, to enter into direct negotiations with the Army without further consideration of other technically acceptable proposals.

In evaluating the interrelationship of the 8(a) preference and the RSA, this Court has found that the RSA will take priority so long as the agency determines that the state licensing agency's proposal is within the competitive range. In *Automated Communication Systems, Inc. v. United States*, 49 Fed. Cl. 570, 573 (2001), the Court cited to DoD Directive 1125.3, which

provides that award is to be made to an SLA on an RSA set-aside "*if the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer.*" (emphasis added)

Cases interpreting whether the RSA preference or the 8(a) preference takes priority have indicated that the RSA preference has priority only <u>if the SLA's proposal is deemed to be in the competitive range</u>. As the Comptroller General stated in the *Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993):

> If the state licensing agency's proposal is judged by the federal agency to be "within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award," the federal agency is to consult with DOE. 34 C.F.R. § 395.33(b). The preamble to DOE's regulations states that the contract "is expected to be awarded to the state licensing agency" following this consultation. Preamble to Final Rule, Randolph-Sheppard Regulations, 42 Fed. Reg. 15803, 15809 (1977). If, on the other hand, the proposal is judged not to be within the competitive range, the agency can award the contract to the most highly evaluated offeror. Accordingly, the term "priority" does not suggest an absolute right to receive a government contract without regard to the contract criteria or the merit of the other bidders.

*Id.* at 244, citing *Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.D.C. 1985), *judgment vacated on other grounds*, 795 F.2d 90 (D.C. Cir. 1986).

Similarly, in *Randolph-Sheppard Vendors of American v. Harris*, 628 F.2d 1364 (D.C. Cir. 1980), the Court recognized that the RSA does not provide an unqualified priority in favor of blind vendors or the SLA's representing them. As the Court stated in that case:

> It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost. In fact such a scheme, unlike the present one, would actually exceed the authority delegated to the Secretary by the Amendment.

*Id.* at 1367. As in 72 Comp. Gen. 241, the court in *Randolph – Sheppard Vendors* found that the agency must determine that the SLA's bid falls within "a reasonable and competitive range." *Id.*

In this case, the Army did not determine that the SLA's proposal was within the competitive range because the Army never established a competitive range for proposals. The Army only found that the SLA's proposal was technically acceptable (as was B&P's) but then later found the price was "reasonable," without establishing a competitive range. Therefore, the evaluation process was flawed even if the RSA's preference provisions are considered to take priority over the 8(a) preference provisions, because there was no determination that the SLA's proposal with within the competitive range.

Moreover, a proper competitive range evaluation of the SLA's proposal would have found that price proposal to be outside the competitive range. It has long been held that the price proposals must be considered as part of the competitive range determination. For example, in *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 (2000), the Court of Federal Claims held that:

> It is well-established that price must always be a factor in an agency's decision to award a contract. 10 U.S.C. § 2305(a)(3)(A); 41 U.S.C. § 253a(c)(1)(B); FAR § 15.304(c)(1). Moreover, an agency may not discount the importance of price in a price/technical tradeoff to such an extent that it "effectively renders the price factor meaningless." *Lockheed Missiles Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958 (Fed. Cir. 1993) (citing *Grumman Data Sys. Corp.*, GSBCA No. 11635-P, 92-1 BCA CCH ¶24, 700 at 123, 721). These requirements "mean that an agency may not exclude a technically acceptable proposal from the competitive range without taking into account the relative cost of that proposal to the government." *Meridian Management Corp.*, 2000 WL 1097129, 3 (July 19, 2000). . .

48 Fed. Cl. at 338.

In this case, the Army did not consider price as part of competitive range determination, or even establish a competitive range. A review of the prices submitted by B&P and the SLA shows that the SLA's price could not have been within a reasonable competitive range because it was more than 16 percent higher than B&P's proposal. B&P's proposal for the base year plus four option years was for $35,045,235.00. The SLA's proposal for the same period was for $40,723,007.00. This is a difference of over $5.2 million, or more than 16 percent. If this Solicitation was not solely an 8(a) set-aside (as the Solicitation indicates it is) then it would have been appropriate for an evaluation adjustment to have been made pursuant to FAR 52.219.-23. A price proposal that is over 14 percent higher than other technically acceptable price proposals should not be deemed to be within the competitive range and should be disregarded. See, e.g., Fed. Register, vol. 62, , No. 145, Pages 40509-40510, Arbitration Panel Decision Under Randolph-Sheppard Act in *Mississippi Dep't of Rehabilitative Services vs. United States Dept of Defense* (finding that an SLA's bid that was materially higher than other bidders was properly excluded from competitive range consideration).

In this case, the SLA's proposal should have been rejected as not within the competitive range, which means that the RSA preference would not be applied to the SLA's proposal, leaving B&P's much lower-priced proposal as the lowest cost technically acceptable proposal, the standard the Army indicates it applies to the evaluation of proposals. Therefore, B&P has a substantial likelihood of success on the merits, because the Army has not applied the competitive range standard required when employing the RSA, and has not determined that the SLA's proposal was within the competitive range, and because the SLA's proposal is more than 16 percent higher than B&P's.

b. **<u>The GAO's decision to dismiss B&P's Protest is not based on a correct interpretation of the law or on the facts of this case.</u>**

The GAO's decision was incorrect and does not detract from the strength of B&P's position. Despite the Army's admission that it did not establish a competitive range or determine that the SLA's proposal was within a competitive range, the GAO determined that the Army had applied a competitive range because "[b]y definition an offer that is the subject of discussion is within the competitive range. <u>See</u> <u>DIY, Inc.</u>, B-293105.9, Dec. 20, 2004, 2004 CPD ¶ 249 at 2." (See Exhibit 7 hereto at p. 2.) The GAO also found that B&P had not established that the SLA's costs were not fair and reasonable. (See Exhibit 7, page 2 hereto.)

The *DIY, Inc.* decision relied on by the GAO does not stand for the proposition asserted by the GAO. The decision does not state that an offer is within the competitive range just because the agency has decided to conduct discussions regarding that offer. Under that circular logic, the competitive range requirement would be rendered meaningless. The agency could pick any offers it wanted to discuss no matter their relative merits and intentionally sidestep other offers simply because the agency liked one offeror more than another, and the offers arbitrarily selected by the agency would be in the competitive range without any evaluation of the relative merits of the offers. Clearly, that interpretation would gut competition and allow agencies unfettered discretion to determine that a proposal is in the competitive range simply because the agency conducted discussions with a particular offeror.

The proper procedure is to determine the competitive range before determining whether a proposal is within the competitive range. This procedure minimizes the likelihood of arbitrary and capricious awards because it requires the agency to establish objective guidelines all proposers can conform to rather than allowing the agency to change the evaluation procedures after reviewing the proposals.

Moreover, the GAO's decision ignores the facts acknowledged by the Army's Contracting Officer that the Army did not establish a competitive range, or use a competitive range analysis, or apply a price evaluation to determine if the SLA's proposed price was in a reasonable competitive range.

**2. B&P would suffer immediate and irreparable harm without injunctive relief.**

"Irreparable harm" has been defined as an injury for which there exists "no adequate remedy at law, meaning that the injury must be actual and imminent, not remote and speculative, and requires a remedy of more than money damages." *Westin v. McDaniel*, 769 F.Supp. 1563, 1569 (M.D. Ga. 1991). The question of irreparable injury does not focus on the significance, expansiveness or magnitude of the injury, "but rather whether the injury, irrespective of its gravity, is irreparable – that is, whether there is any adequate remedy at law for the injury in question." *Sierra Club v. Martin*, 933 F.Supp, 1559, 1571 (N.D. Ga. 1996) (reversed on other grounds, 110 F.3d 1551 (11th Cir. 1997)). A TRO and injunctive relief is appropriate in this case because the Army intends to allow the SLA to come onto the Project site beginning November 1, 2006 to begin on-site preparations for the new contract (scheduled to start December 1, 2006) which would effectively allow the SLA and its contractor to begin on-site operations, and ultimately to take over the food services contract.

If B&P is excluded from providing the food services at Fort Gordon, B&P will lose the opportunity to compete for the contract award and will lose profits thereunder. These lost profits cannot be recovered by B&P, because the only monetary damages available to a disappointed bidder are bid preparation costs. This lost opportunity to compete and loss of profits has been recognized as a basis to order a preliminary injunction. *Magnavox Electronics Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992). See also *Carter III Service Corp. v. NASA*,

950 F.Supp. 357 (D.D.C. 1996). As another court has recognized,"[t]he right to fair and equal competition in bidding for government procurement contracts is a statutory right, which can be adequately protected only by the issuance of injunctive relief." *Mark Dunning Industries, Inc. v. Perry*, 890 F.Supp. 1504, 1517 (M.D. Ala. 1995). The Army has failed to adhere to the required competitive range analysis, hereby depriving B&P of its opportunity to compete for these work requirements. A denial of the opportunity to have one's proposal fully and equally considered has been held to be not monetarily compensable and demonstrates irreparable harm justifying an injunction. *Georgia Gazette Pub. Co. v. U.S. Department of Defense*, 562 F.Supp. 1004, 1010 (S.D. Ga. 1993).

Therefore, injunctive relief is necessary to prevent irreparable harm to B&P.

**3. <u>An injunction would not pose substantial harm to other interested parties in this case or harm the public interest.</u>**

An injunction would not pose a substantial harm to other interested parties or harm the public interest in this case. The Army will still be able to obtain the food services needed at Fort Gordon pending the injunction because there is an existing contract and contractor providing the food services. The Army has already extended the existing contract by two months, which indicates that the Army will not be injured by the continuation of the existing contract. Additionally, if the Court were to later find that the new contract with the SLA should proceed the Army could proceed at that point with the preparations for the SLA and its contractor to begin working on the Project.

Therefore, there will be no substantial harm to the public or interested persons if an injunction is issued. On the other hand, the potential for injury to B&P (and the competitive process) is compelling, and justifies the issuance of an injunction so the award process may be fully investigated.

## C. A Permanent Injunction Is Ultimately Appropriate In This Case.

For the reasons discussed above justifying a temporary restraining order/preliminary injunction, B&P will ultimately be entitled to a permanent injunction in light of the Army's failure to properly evaluate proposals and apply a competitive range analysis.

## D. B&P Is Also Ultimately Entitled To A Declaratory Judgment That The Army's Evaluation Process Was Improper, that The SLA's Proposal Should be Rejected As Outside A Reasonable Competitive Range And A Writ of Mandamus Directing Award To B&P.

In light of the Army's failure to apply properly the required competitive range analysis and the fact that B&P has submitted the only other technically acceptable proposal (which is more than $5.67 million lower than the SLA's), the Court should ultimately issue a declaratory judgment finding that the Army's evaluation procedure was improper and that the award should be made to B&P and issue a writ of mandamus directing Defendants not to award the contract for the Project pursuant to the Solicitation to any proposer other than B&P.

# III. CONCLUSION

In light of the foregoing facts and authorities, B&P respectfully requests that this Honorable Court:

1) Issue a temporary restraining order/preliminary injunction restraining Defendant and its agencies, officers, servants, employees, and agents (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for the Food Services Project pursuant to the Solicitation by anyone other than B&P;

2) Issue a permanent injunction enjoining Defendant and its agencies, officers, servants, employees, and agents (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for the Food Services Project pursuant to the Solicitation by anyone other than B&P;

3) Issue an Order declaring any contract issued pursuant to the Solicitation to anyone other than B&P void, and further declaring that the contract pursuant to the Solicitation is to be awarded to B&P;

4) Issue a writ of mandamus directing Defendant and its agencies, officers, servants, employees, and agents (specifying the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) to award any contract issued pursuant to the Solicitation to B&P; and

5) Provide such other and further relief as this Court determines is appropriate.

DATED this 25th day of October, 2006.

Respectfully submitted,

**SMITH, CURRIE & HANCOCK LLP**

By ______________________

James W. Copeland (Georgia Bar No. 186780)
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

**OF COUNSEL:**

S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK, LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC, doing business as Acsential Services

# AFFIDAVIT

COUNTY OF FULTON )

STATE OF GEORGIA )

Deidre F. Brown, having been duly sworn, does hereby depose and state as follows:

1. I am the managing member of Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), which is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia. I am over 21 years of age and I make the statements contained in this affidavit based on my personal knowledge and the information available to me. I make the statements contained in this affidavit for purposes of attempting to obtain injunctive relief concerning the United States Department of the Army's indication of an intent to award a contract to an entity other than B&P pursuant to Solicitation No. No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project").

2. B&P is a certified small business minority business enterprise under Section 8(a) of the Small Business Act of the United States.

3. The Army Southern Region Contracting Center East, Army Contracting Agency at Fort McPherson, Georgia issued Solicitation No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project") on or about February 22, 2006. (A copy of portions of the Solicitation relevant to this action is attached hereto at Exhibit A-1 which is incorporated herein by reference.)

4. The Solicitation provides that award of the contract is to be made to the Small Business Administration which will subcontract performance to the successful 8(a) offeror, which is a certified minority business enterprise subject to the provisions of Section 8(a) of the

EXHIBIT A

Small Business Act, as amended, (15 U.S.C. § 637(a)) ("8(a)"). The Solicitation states that FAR Provision 52.219-18 is included in the Solicitation. That provision states:

> Offers are solicited only from small business concerns expressly certified by the Small Business Administration (SBA) for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer - . . . (emphasis added)

FAR 52.219-18 addresses the preference for 8(a) contractors and does not address any preference for blind venders under the Randolph-Sheppard Act.

5. The Solicitation also provides that the Randolph-Sheppard Act ("RSA") would apply to provide a preference to qualified nominees of State Licensing Agencies ("SLA") for the blind. The Solicitation states:

> All offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. 107) as related to offerors of military food services. ***Present DoD and Army policy***, interpreting the Randolph-Sheppard Act applies a selection preference to qualified nominees of State Licensing Agencies (SLA) for the Blind who represent clients seeking Defense contracts for so-called "military cafeteria-styled food operations."
>
> Application of this preference ***may*** entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct negotiations with the Government without further consideration of other technically acceptable proposals.
>
> This notice is not designed to discourage competition from any 8(a) offerors interested in this requirement. Rather, it merely represents notice regarding a mandatory preference for Randolph-Sheppard Act State Licensing Agencies in the event that an offer from such source is received. In this respect, see Section I, FAR clause 52.219-18. (emphasis added)

6. I believe that these terms of the Solicitation reflect and effectively incorporate the language of DOD Directive 1125.3 which provides:

> E2.1.3.1.1. If the State licensing agency submits a proposal and it is not ***within the competitive range*** established by the contracting officer, award may be made to another offer or following normal procurement procedures, but only after the on-site official confers with the Head of the DoD Component.
>
> E2.1.3.1.2. If the State licensing agency submits a proposal and it is ***within the competitive range*** established by the contracting officer, the contract will be awarded to the State licensing agency except as provided in E2.1.3.1.3., below.
>
> E.2.1.3.1.3. The contracting officer may award to other than the State licensing agency when the on-site official determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary, U.S. Department of Education, approves the determination (processing will be in accordance with E2.1.2., above), or when the on-site official determines, after conferring with the Head of the DoD Component, and the Secretary, U.S. Department of Education, agrees, that the blind vendor does not have the capacity to operate a cafeteria in such a manner as to provide food service at a comparable cost and of a comparable high quality as that available from other providers of cafeteria services.
>
> E2.1.3.2. Direct negotiations may be undertaken with State licensing agencies whenever the on-site official, with concurrence of the Head of the DoD Component, has determined that the State licensing agency, through its blind licensee, can provide the cafeteria services required at a reasonable cost, with food of a high quality comparable to that available from the other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in E2.1.3.1., above, will be followed. (emphasis added)

7. B&P timely submitted its proposal in April, 2006 providing detailed technical information responsive to the Solicitation and submitting a proposed price of $35,045,235.00.

8. The Army has informed B&P that the Army received five proposals in response to the Solicitation, one of which was from the Georgia Department of Labor State Licensing Agency ("SLA") and another from protester B&P. (See the Army's Motion to Dismiss B&P's bid protest ("Protest") to the General Accountability Office ("GAO"), a copy of which is

attached hereto at Exhibit A-5 and the statement of Biddy attached to that Motion at Attachment 2. That Motion to Dismiss is referred to herein as "Army's Motion".)

9. B&P is a small business minority enterprise subject to Section 8(a) of the Small Business Act.

10. I understand that Contracting Officer Diane T. Biddy has acknowledged that the SLA is not a small business enterprise subject to Section 8(a) of the Small Business Act because it is a not-for-profit state agency and not a minority contractor.

11. The Army has informed B&P that the SLA's proposal was $40,723,007.00, which is 16 percent higher than the price submitted by B&P.

12. The Army has also informed B&P that after a review of the five proposals for technical acceptability, the Army's Evaluation Board in May 2006, completed its review and determined that only two of the proposals were technically acceptable, the proposal submitted by B&P and by the SLA. (See Attachment 2, page 2 to the Army's Motion at Exhibit A-5).

13. The Army has maintained to B&P that "when the contracting officer learned that the proposal from SLA was rated technically acceptable, she immediately ceased consideration of all other proposals and entered into discussions with SLA." (See Army's Motion at Exhibit A-5.) However, there is nothing in the information provided by the Army to B&P that indicates that the Army conducted any further discussions with the SLA, what was discussed, or how the SLA's price proposal was evaluated. (A significant portion of page 2 of Attachment 2 to the Army's Motion was redacted with this regard, and, therefore, I have no way of knowing what the Army maintains that it did after determining the technical acceptability of the proposals.)

14. On August 17, 2006, B&P received from the Army a letter informing B&P that the Army had decided to award the Contract for the Project to the SLA. (See Exhibit A-2 attached hereto and incorporated herein by reference.)

15. On August 24, 2006, Ms. Biddy conducted a debriefing with representatives of B&P and explained the Army's reasoning in deciding to award the contract for the Project to the SLA.

16. Ms. Biddy has informed me that the Army has awarded the contract to the SLA based on the understanding that the RSA supersedes the provisions of Section 8(a) of the Small Business Act. (See Exhibit A-5 attached hereto.) However, I have also been informed by the Army that the Army has awarded the contract to the SLA without determining that the SLA's bid falls within a competitive range. (See Exhibit A-5 attached hereto and Attachment 2 thereto.) I understand that the Army did not even establish a competitive range for the Solicitation and did not find that the SLA's proposal was within a competitive range. (See Exhibit A-5 attached hereto and Attachment 2 thereto.)

17. I believe that an evaluation of proposals subject to both Section 8(a) of the Small Business Act and the Randolph-Sheppard Act requires the agency to determine that the SLA's proposal is with the competitive range before negotiations can be conducted with the SLA and before award can be made to the SLA.

18. On August 25, 2006, B&P filed its Protest to the GAO, a copy of which is attached hereto at Exhibit A-3 which is incorporated herein by reference. B&P amended its Protest to the GAO on August 28, 2006, a copy of which is attached hereto at Exhibit A-4.

19. B&P maintained in the Protest and maintains in this action that the Army improperly awarded the contract to the SLA because (a) the Army failed to employ a competitive

range analysis in evaluating the proposals; (b) the Army did not determine that the SLA's proposal was within the competitive range; and (c) the SLA's proposal could fall within a reasonable competitive range in light of the significantly higher price submitted by the SLA compared to B&P's proposed price. The Army has informed B&P that only B&P's proposal and the SLA's proposal were deemed technically acceptable and the Army has informed B&P that B&P's proposal price of $35,045,235.00 (for the base year plus four optional years) was lower than the SLA's proposal of $40,723.007.00, a difference of over 16 percent. Therefore, B&P maintains that the SLA's proposal should be deemed unacceptable because it would not fall within a competitive range if price were taken into account as required for consideration of the competitive range. Therefore, I believe the SLA's proposal should be rejected and award made to B&P.

20. The Army filed a Motion to Dismiss B&P's Protest to the GAO. (See Exhibit A-5 attached hereto.)

21. B&P responded to the Motion to Dismiss on September 22, 2006, a copy of which is attached hereto at Exhibit A-6 which is incorporated herein by reference.

22. The GAO issued an Order dismissing B&P's Protest on September 27, 2006, a copy of which is attached hereto at Exhibit A-7 which is incorporating herein by reference.

23. I believe that the GAO decision was incorrect.

24. The Solicitation provided that the contract work on the Project pursuant to the Solicitation would begin on October 1, 2006. In light of B&P's protest and the timing of the GAO's decision, the Army has extended the incumbent contractor's contract to November 30, 2006 with the new contract to begin December 1, 2006 and the SLA may have personnel on the Project site beginning November 1, 2006 for pre-contract performance preparations.

Deidre F. Brown

Sworn to and subscribed before me

this 25th day of October, 2006.

Notary Public
My Commission Expires: June 21, 2010

CAROL D. SEFERS
NOTARY
EXPIRES
GEORGIA
JUNE 21, 2010
PUBLIC