**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| **BROWN & PIPKINS, LLC,** | ) | |
| **doing business as** | ) | |
| **ACSENTIAL SERVICES,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **FILE NO. 06-732C** |
| | ) | |
| **v.** | ) | **Judge Lawrence M. Baskir** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD/SUPPLEMENTAL MOTION FOR PERMANENT INJUNCTION, AND DECLARATORY RELIEF AND MANDAMUS

James W. Copeland (Georgia Bar No. 186780)
S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

# Table of Contents



I. QUESTIONS INVOLVED IN CASE AND INTRODUCTION ..... 1

II. SUPPLEMENTAL STATEMENT OF RELEVANT FACTS ..... 4

A. The Solicitation For Full Food Services At Fort Gordon, Georgia ..... 4

B. B&P Is An 8(a) Contractor; The SLA Is Not An 8(a) Contractor ..... 7

C. The Actual Contractor For The SLA is Blackstone Consulting, Inc. Which Is Not A Blind Vendor. ..... 7

D. B&P's Proposal And The SLA's Proposal Were The Only Proposals Rated As Technically Acceptable ..... 9

E. The SLA's Price Proposal Is At Least 16% Higher Than B&P's, And The SLA's Price Proposal Failed To Contain Various Information Required By The Solicitation. ..... 10

F. The Army Decided To Award The Contract To The SLA Because The Randolph-Sheppard Act Applied But Did Not Establish A Competitive Range, Did Not Determine That The SLA's Proposal Was Within A Reasonable Competitive Range, And Did Not Take Into Account That The SLA's Proposal Price Was Over $5.67 Million (And Perhaps As Much As $6.745 Million) Higher Than B&P's. ..... 12

G. B&P's Protest to The GAO And The GAO's Decision ..... 14

III. ARGUMENT AND DISCUSSION OF AUTHORITY ..... 14

A. Judgment On The Administrative Record In Favor Of B&P Is Appropriate Because There Are No

Material Facts In Dispute And The Facts And Law Support That Judgment. .......... 14

B. B&P Has Standing As An Interested Party.......... 15

C. Review And Reversal Of The Army's Procedure For Evaluating The Proposals And Its Determination To Award To The SLA Is Appropriate Here Because Those Actions Were Arbitrary, An Abuse Of Discretion Or Otherwise Not in Accordance With Law.......... 16

D. A Permanent Injunction Is Appropriate In This Case.......... 17

1. Permanent Injunctive Relief Is Justified Under The Facts And Law Applicable To This Case .......... 17

a. The Solicitation provides that award is to be made to a Section 8(a) contractor; B&P is an 8(a) contractor and the SLA is not. .......... 18

b. The Solicitation states that the RSA applies but the Army did not establish a competitive range required by regulation and case authority and did not apply a competitive range analysis to the SLA's proposal. .......... 18

c. The Army's award to the SLA is improper because the price differential between the SLA's proposal and B&P's is greater than a reasonable difference for a competitive range. .......... 22

d. The SLA's proposal should not have been considered to fall within the RSA because the work would not be performed by a blind vendor. .......... 24

e. The SLA's proposal failed to provide clear information as required by the Solicitation ........ 27

f. The GAO's decision to dismiss B&P's protest is not based on a correct interpretation of the law or on the facts of this case. ........ 28

2. B&P would suffer immediate and irreparable harm without injunctive relief while the public interest would not be adversely affected. ........ 29

3. The balance of hardships favors a permanent injunction because the injunction would not pose substantial harm to others or harm the public interest. ........ 31

4. The public interest is served by a permanent injunction ........ 32

E. B&P Is Also Entitled To A Declaratory Judgment That The Army's Evaluation Process Was Improper, that The SLA's Proposal Should be Rejected As Outside A Reasonable Competitive Range. ........ 32

F. A Writ Of Mandamus Should Issue Directing Award Of The Contract To B&P ........ 33

IV. CONCLUSION ........ 34

Appendix of Exhibits:

Exhibit A Information from Blackstone Consulting, Inc. website: http://www.blackstone-consulting.com/suppliers.html

Exhibit B Georgia Department of Audits and Accounts Report 05-09, *Performance Audit: Subcontracts For Food Service Operations by the Business Enterprise Program Department of Labor* dated December 2005 located at http://www.audits.state.ga.us/internet/pao/rpt_main.html

Exhibit C DoD Directive 1125.3

Exhibit D Federal Register, vol. 62, No. 145, Pages 40509-40510

# Table of Authorities

## Cases

*A & D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 132-33 (2006) ........ 33

*Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987) ........ 17

*Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 (2000) ........ 22

*Carter III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996) ........ 30

*Doko Farms v. United States*, 13 Cl. Ct. 48 (1987) ........ 33

*Georgia Gazette Pub. Co. v. U.S. Department of Defense*, 562 F.Supp. 1004, 1010 (S.D. Ga. 1993) ........ 31

*Impresa Constructuzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001) ........ 16

*Information Sciences Corp. v. United States*, 73 Fed. Cl. 70, 2006 WL 2686573 (2006) ........ 15

*Information Technology & Applications Corp. v. United States*, 51 Fed. Cl. 340, 345-46 (2001) ........ 14

*Lockheed Missiles Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958 (Fed. Cir. 1993) ........ 22

*Magnavox Electronics Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992) ........ 30

*Mark Dunning Industries, Inc. v. Perry*, 890 F.Supp. 1504, 1517 (M.D. Ala. 1995) ........ 30

*Miller-Holzwarth, Inc. v. United States*, 42 Fed. Cl. 643, 649 (1999) ........ 16

*Myers Investigative*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ........ 16

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) ........ 17

*Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.D.C. 1985) ........ 20

*Randolph-Sheppard Vendors of American v. Harris*, 628 F.2d 1364 (D.C. Cir. 1980) ........ 20

*Sierra Club v. Martin*, 933 F.Supp, 1559, 1571 (N.D. Ga. 1996) ........ 30

*Westin v. McDaniel*, 769 F.Supp. 1563, 1569 (M.D. Ga. 1991 ........ 30

## Statutes

10 U.S.C. § 2305(a)(3)(A) ........ 22

15 U.S.C. § 637(a)) ("8(a) ........ 4

20 U.S.C. § 107 ........ 24

20 U.S.C. § 107d-3(e) ........ 24

20 U.S.C. § 107e ........ 25

28 U.S.C. § 1491(b)(4) ........ 16

41 U.S.C. § 253a(c)(1)(B) ........ 22

5 U.S.C. § 706(2)(A) ........ 16

## Other Authorities

Federal Register, vol. 62, , No. 145, Pages 40509-40510 ........ 23

## Constitutional Provisions

FAR Provision 52.219-18 ........ 4

# MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD/SUPPLEMENTAL MOTION FOR PERMANENT INJUNCTION, AND DECLARATORY RELIEF AND MANDAMUS

Brown & Pipkins, LLC, doing business as Acsential Services ("B&P") provides this Memorandum in support of its Supplemental Motion For Permanent Injunction, Declaratory Relief and Mandamus regarding Solicitation No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project"). This Memorandum reiterates and supplements the arguments in B&P's original Motion For Temporary Restraining Order, Permanent Injunction Relief, Declaratory Judgment and Mandamus filed in this action October 27, 2006. (AR Tab 28, pages 1014-1043[1])

## I. QUESTIONS INVOLVED IN CASE AND INTRODUCTION

The questions at issue in this protest are:

(1) Is judgment on the administrative record granting permanent injunctive a declaratory relief and mandamus warranted because the Army failed to establish a competitive range or determine that the State Licensing Agency's ("SLA") proposal was within a competitive range?

[1] References to the Administrative Record are provided by reference to the AR Tab and page number within the Administrative Record.

(2) Is judgment on the administrative record granting permanent injunctive a declaratory relief and mandamus warranted because the Army failed to recognize that the SLA's price was more than 16% higher than B&P's and therefore would not be within a reasonable competitive range?

(3) Is judgment on the administrative record granting permanent injunctive a declaratory relief and mandamus warranted because award to the SLA would effective allow the Project be operated by a non-blind vendor contrary to the objectives of the Randolph-Sheppard Act ("RSA")?

(4) Is judgment on the administrative record granting permanent injunctive a declaratory relief and mandamus warranted because the proposal submitted by the SLA failed to include various pricing information required by the Solicitation?

The Administrative Record shows that Army improperly awarded the contract for full food services at Ft. Gordon, Georgia pursuant to Solicitation to the SLA because (a) the Army failed to employ a competitive range analysis in evaluating the proposals as required by judicial authorities interpreting the RSA; (b) the Army did not determine that the SLA's proposal was within the competitive range; and (c) the SLA's proposal could not fall within a reasonable competitive range in light of the significantly higher price submitted by the SLA, as compared to B&P's

proposed price. As discussed below, these contentions are reinforced by the Administrative Record provided by the Army.

Furthermore, the Administrative Record shows that Army recognizes that the services that the SLA proposes to provide would be performed by a non-blind vendor. Therefore, the RSA should not apply to the SLA's proposal. Moreover, the Administrative Record shows that the SLA's proposal was deficient because it failed to provide certain pricing information required by the Solicitation.

For all of these reasons, B&P requests that the Court enter a Judgment on the Administrative Record: permanently enjoining Defendant and its agencies, officers, servants, employees, and agents (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Army Contracting Officers, and their successors) from proceeding with performance of a new contract for the Project by anyone other than B&P; declaring any contract issued pursuant to the Solicitation to anyone other than B&P void, declaring that the contract pursuant to the Solicitation is to be awarded to B&P; and issuing a writ of mandamus directing Defendant and its agencies, officers, servants, employees, and agents (specifying the Department of the Army, the Secretary of Defense,

the Secretary of the Army, and the Contracting Officers, and their successors) to award any contract pursuant to the Solicitation to B&P.

## II. SUPPLEMENTAL STATEMENT OF RELEVANT FACTS

### A. The Solicitation For Full Food Services At Fort Gordon, Georgia

The Army Southern Region Contracting Center East, Army Contracting Agency at Fort McPherson, Georgia issued the Solicitation for the full food services requirement at Ft. Gordon, Georgia ("Project") on or about February 22, 2006. (Administrative Records at AR Tab 1, pages 1-49 and Amendments at AR Tabs 2, 3, and 4, pages 50-63)

The Solicitation provides that award of the contract is to be made to a certified minority business enterprise subject to the provisions of Section 8(a) of the Small Business Act, as amended (15 U.S.C. § 637(a)) ("8(a)"). The Solicitation states that FAR 52.219-18 is included in the Solicitation. That provision states:

> Offers are solicited only from small business concerns expressly certified by the Small Business Administration (SBA) for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer - . . . (emphasis added) (See AR Tab 1, page 28)

FAR 52.219-18 addresses the preference for 8(a) contractors and does not address a preference for blind vendors under the Randolph-Sheppard Act.

The Solicitation also provides that the RSA would apply to provide a preference to qualified nominees of the SLA for the blind. The Solicitation states:

> All offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. 107) as related to offerors of military food services. ***Present DoD and Army policy***, interpreting the Randolph-Sheppard Act applies a selection preference to qualified nominees of State Licensing Agencies (SLA) for the Blind who represent clients seeking Defense contracts for so-called "military cafeteria-styled food operations."
>
> Application of this preference ***may*** entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct negotiations with the Government without further consideration of other technically acceptable proposals.
>
> This notice is not designed to discourage competition from any 8(a) offerors interested in this requirement. Rather, it merely represents notice regarding a mandatory preference for Randolph-Sheppard Act State Licensing Agencies in the event that an offer from such source is received. In this respect, see Section I, FAR clause 52.219-18.

(See AR Tab 1, page 2) (emphasis added)

This basis for award is reiterated in the Source Selection Plan which states that award is to be made to the "offeror whose proposal is evaluated as technically acceptable with the lowest evaluated cost; however, priority

and mandatory preference will be given SLA offeror whose proposal is considered technically acceptable and price is determined to be reasonable." (AR Tab 5, page 76)

The Solicitation effectively incorporates the language of DOD Directive 1125.3, which provides:

> E2.1.3.1.1. If the State licensing agency submits a proposal and it is not ***within the competitive range*** established by the contracting officer, award may be made to another offer or following normal procurement procedures, but only after the on-site official confers with the Head of the DoD Component.
>
> E2.1.3.1.2. If the State licensing agency submits a proposal and it is ***within the competitive range*** established by the contracting officer, the contract will be awarded to the State licensing agency except as provided in E2.1.3.1.3., below.
>
> E.2.1.3.1.3. The contracting officer may award to other than the State licensing agency when the on-site official determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary, U.S. Department of Education, approves the determination (processing will be in accordance with E2.1.2., above), or when the on-site official determines, after conferring with the Head of the DoD Component, and the Secretary, U.S. Department of Education, agrees, that the blind vendor does not have the capacity to operate a cafeteria in such a manner as to provide food service at a comparable cost and of a comparable high quality as that available from other providers of cafeteria services.

> E2.1.3.2. Direct negotiations may be undertaken with State licensing agencies whenever the on-site official, with concurrence of the Head of the DoD Component, has determined that the State licensing agency, through its blind licensee, can provide the cafeteria services required at a reasonable cost, with food of a high quality comparable to that available from the other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in E2.1.3.1., above, will be followed. (See Exhibit C attached hereto and incorporated herein) (emphasis added)

### B. B&P Is An 8(a) Contractor; The SLA Is Not An 8(a) Contractor.

B&P is a small business minority enterprise certified pursuant to Section 8(a) of the U.S. Small Business Act. (See Verified Complaint at AR Tab 29, page 1048), paragraph 14; Affidavit of Deidre Brown at AR Tab 28, page 1037, paragraph 2)

The Army has acknowledged that the SLA is not a small business enterprise subject to Section 8(a) of the Small Business Act, because it is a not-for-profit state agency and not a minority contractor. (Contracting Officer Statement at AR Tab 23, pages 985, 987)

### C. The Actual Contractor For The SLA is Blackstone Consulting, Inc. Which Is Not A Blind Vendor.

B&P understands that the SLA's proposed blind vendor needed to subject its proposal to the RSA is Franklin Hulsey. However, there is

nothing in the proposal information provided to B&P in the Administrative Record to suggest that Mr. Hulsey is actually performing any work on the Project. In fact, the Army recognizes that "***[t]he actual contractor performing the work is Blackstone Consulting, Inc.*** . . . . (Army's Price/Cost Analysis Report at AR Tab 13, page 903) The Army also states in the Post Negotiation Memorandum, "[t]he report concluded that Blackstone Consulting, Inc. (BCI) will be the actual contractor performing the services proposed by the SLA . . ." (AR Tab 14, page 916)

Nothing in the Administrative Record identifies Mr. Hulsey as having any role in the Project other than lending his name and perhaps collecting some of the fee. The SLA's proposed "Onsite Organizational Chart" shows that the entire operation of the SLA's proposed services is under the control of Blackstone Consulting, Inc. ("BCI"), not Mr. Hulsey The organizational chart states that "Hulsey & Blackstone Consulting, Inc." are the top of the organization but Mr. Hulsey has no operational control as all personnel are under "BCI General Managers". (AR Tab 7, page 100) Moreover, the Quality Control & Safety Manager and the Assistant Food Service Manager designated by the SLA as the "key personnel" (AR Tab 7, page 97) whose resumes are attached to the proposal would be employees of BCI. (AR Tab 7, pages 98-99) The Executive Summary from Volume I of the SLA's

proposal also emphasizes BCI's role on other food service projects to show cafeteria experience. (B&P understands that government counsel will be supplementing the Administrative Record with a copy of Volume I of the SLA's proposal which B&P understands should be at AR Tab 30, pages 1056-1066.)

BCI is not a blind vendor. Information from its website indicates that BCI has a "Randolph Sheppard Division" "to identify and work with the blind and visually impaired vendors in the Randolph-Sheppard Program in the delivery of food services." (See information from BCI website, http://www.blackstone-consulting.com/suppliers.html, a copy of which is attached hereto at Exhibit A and is incorporated herein by reference.) Thus, the SLA's proposed services, will not be performed by a blind vendor, by the Army's own recognition.

**D. B&P's Proposal And The SLA's Proposal Were The Only Proposals Rated As Technically Acceptable.**

The Administrative Record shows that after reviewing the five proposals for technical acceptability, the Army's Evaluation Board in May 2006 determined that only two of the proposals were technically acceptable, the proposals submitted by B&P and by the SLA. (AR Tab 13, page 899; AR Tab 14, pages 912, 916, 919; AR Tab 23, page 985)

### E. The SLA's Price Proposal Is At Least 16% Higher Than B&P's, And The SLA's Price Proposal Failed To Contain Various Information Required By The Solicitation.

B&P's proposal price for the base year and four option years was $35,045,235.00. (See AR Tab 13, pages 899, 901-02) B&P had been informed prior to filing this action that the SLA's proposal was $40,723,007.00, which is $5,677,772.00 (over 16 percent) higher than the price submitted by B&P. (AR Tab 28, page 1040, ¶11) The Army's Post Negotiation Memorandum also indicates that this is the amount of the SLA's proposed cost. (See AR Tab 14, page 919) However, the Army's Price/Cost Analysis Report of Findings in the Administrative Record indicates that the SLA's proposed pricing was unclear and its proposal did not include all information required in the Solicitation. As that Report states:

> (3) **Direct Labor Hours** – All hours were accepted as proposed with the exception of building 29704. ***The offeror did not total proposed hours,*** but it appears that there are approximately 106,578.25 hours proposed for this building per year. The recommendation from the Technical Committee is 104,847.50 hours for a difference of 1,730.75 hours per year. The Technical Committee's recommendation was incorporated into the most probable cost estimate (MPCE).
>
> (4) **Contractor Furnished Material** – The offeror proposed $240,000 per year, a total of $1.200,000 for this costs element; ***however, it does***

> ***not appear that the offeror has included the $1,200,000 in the total proposal amount***. The total amount has been included to compute the most probable cost estimate.
>
> * * *
>
> (6) **Fee** – Base fee was proposed at 3%, and award fee was proposed at 5%. The CLIN breakdowns show the proposed amounts for base and award fee for each year of the effort. ***The summary breakdown per year and by building presented by the offeror does not show the computation of fee.***
>
> * * *
>
> (8) General Comments – ***The offeror does not show where contractor furnished materials are included in the proposed amount. The CLIN breakout shows base and award fee, but these items are not addressed in the breakdown by building, or in the management worksheets; therefore, it is unknown what the offeror's actual proposed amount is.***
>
> ***The proposed amount could be anywhere from approximately $40,723,007 (including phase-in costs) to approximately $41,913,031 if contractor furnished materials, base fee, and award fee are added to amounts provided by the offeror.*** The total proposed amount is an item that must be discussed with the offeror. (AR Tab 13, pages 902-04) (emphasis added)

The Army's most probable cost estimate for the SLA is $41,791,049 (AR Tab 14, page 919) which is $6,745,814.00 (19.25%) higher than B&P's

proposed price. Thus, B&P's proposed price was at least $5,677,772.00 lower than the SLA's and possibly as much as $6,745,814.00.

### F. The Army Decided To Award The Contract To The SLA Because The Randolph-Sheppard Act Applied But Did Not Establish A Competitive Range, Did Not Determine That The SLA's Proposal Was Within A Reasonable Competitive Range, And Did Not Take Into Account That The SLA's Proposal Price Was Over $5.67 Million (And Perhaps As Much As $6.745 Million) Higher Than B&P's.

As B&P pointed out in its initial Memorandum, the Army awarded the contract to the SLA based on the understanding that the RSA supersedes the provisions of Section 8(a) of the Small Business Act. (AR Tab 23, page 986.) However, the Contracting Officer acknowledges in her Statement that award is appropriate to an SLA under the RSA if the SLA's offer is determined to be within the competitive range. She states, "if there is a reasonable expectation of getting a minimum of two Small Business offers . . ., the RFP can be issued as a set-aside, but it shall include language stating that ***if an SLA submits a proposal that is determined to be within the competitive range***, then negotiations will be exclusively with the SLA." (AR Tab 23, page 986) (emphasis added)

However, the Army acknowledges that it awarded the contract to the SLA without determining that the SLA's proposal fell within any competitive range. The Contracting Officer states in her Statement that "***[n]o***

***competitive range was established***. In this case, the offeror had to be technically acceptable to be further considered. Cost/pricing had not been evaluated for any proposals as yet." (AR Tab 23, page 987) (emphasis added) See also Post Negotiation Memorandum, "because the solicitation indicated that award without discussions was intended and the Contracting Officer has determined that discussions are not necessary, a competitive range was not established; . . .." (AR Tab 14, page 919)

Furthermore, the Contracting Officer has acknowledged that the significant price difference between B&P's proposal and the SLA's proposal was not considered. She states:

> Because of the process that was used, (Low Cost Technically Acceptable) ***cost/price was not a factor***. . . . Once the Technical Acceptability was established then pricing was evaluated. The SLA's proposal and Acsential Services (Brown & Pipkins) proposal were the only ones that were considered technically acceptable. This is the point when cost/pricing was evaluated. This is also the point when the Government considered the RSA to take effect. Also, Army Contracting Agency (ACA) Policy Memo P006, Randolph Sheppard Act (RSA) Policy, states that the cost/pricing submitted by the SLA does not have to be the lowest, only that they are considered reasonable and the Government considered the pricing reasonable when evaluated." (AR Tab 23, page 986) (emphasis added)

Thus, the Army did not establish a competitive range for the Solicitation and did not find that the SLA's proposal was within a

competitive range. Moreover, the Army did not consider the difference in the SLA's and B&P's prices in determining whether the SLA's proposal fell within a reasonable competitive range. Despite these facts, the Army decided in August 2006 to award the contract to the SLA because its proposal was deemed technically acceptable and the SLA's proposal was submitted under the RSA. (AR Tab 23, page 986)

### G. B&P's Protest to The GAO And The GAO's Decision

The Administrative Record contains a copy of the initial bid protest submitted by B&P to the GAO (AR Tab 22, pages 970-983), portions of the Army's Motion to Dismiss to the GAO (AR Tab 24, pages 989-94), B&P response to the Army's Motion to Dismiss (AR Tab 25, pages 995-1007), and the GAO Order dismissing B&P's protest. AR Tab 26, pages 1008-09)

## III. ARGUMENT AND DISCUSSION OF AUTHORITY

### A. Judgment On The Administrative Record In Favor Of B&P Is Appropriate Because There Are No Material Facts In Dispute And The Facts And Law Support That Judgment.

A motion for judgment on the Administrative Record is governed by the same rules as a motion for summary judgment. *Information Technology & Applications Corp. v. United States*, 51 Fed. Cl. 340, 345-46 (2001). A judgment on the administrative record, like a summary judgment, is

warranted where there is no general issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. at 346.

The Administrative Record and the applicable law demonstrate that the Army's procedures in evaluating the SLA's proposal and the Army's decision to award the contract for the Project to the SLA was arbitrary, an abuse of discretion and contrary to applicable law as discussed below. Therefore, B&P is entitled to a judgment in its favor on the Administrative Record, and entry of the requested permanent injunctive and declaratory relief and a writ of mandamus directing award of the contract to B&P.

**B. B&P Has Standing As An Interested Party**

As B&P showed in its initial Memorandum, it has standing to pursue this bid protest because it is an interested "party" that has a substantial chance of being awarded the contract. *Information Sciences Corp. v. United States*, 73 Fed. Cl. 70 (2006). B&P submitted the only proposal deemed technically acceptable by the Army other than the SLA. A proposer whose proposal is deemed acceptable but is ultimately rejected is an "interested party" where that party is prejudiced by the agency decision not to award it the contract. *Id.* The decision by the Army to reward the contract to the SLA directly prejudices B&P by depriving it of the potential

contract for the food services requirement at Fort Gordon. Thus, B&P is an "interested party" and is entitled to pursue this protest.

Moreover, "[t]o have standing, the plaintiff need only establish that it 'could compete for the contract' if the process were competitive." *Myers Investigative and Security Systems, Inc. v. United States,* 275 F.3d 1366, 1370 (Fed. Cir. 2002) (citations omitted). Here, B&P's proposal was found to be technically acceptable by the Army and its price is undisputedly several million dollars lower than the SLA's. B&P would be the only technically acceptable contractor and the only contractor submitting a proposal within a reasonable competitive range if the protest is withheld. Therefore, B&P clearly has standing.

**C. Review And Reversal Of The Army's Procedure For Evaluating The Proposals And Its Determination To Award To The SLA Is Appropriate Here Because Those Actions Were Arbitrary, An Abuse Of Discretion Or Otherwise Not in Accordance With Law.**

Review of procurement decisions is based on the record and the agency's decision should be reversed if the evidence suggests the decision of the contracting officer is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Impresa Constructuzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001); *Miller-Holzwarth, Inc. v.*

*United States*, 42 Fed. Cl. 643, 649 (1999). In this case, the Army's actions were arbitrary, an abuse of discretion and not in accordance with law because (1) the Army did not apply the proper competitive range analysis required for proposals under the RSA, (2) the Army seeks to award the contract to an SLA where the work is to be operated by a non-blind vendor, and (3) the SLA's proposal did not provide proper responses to many of the pricing requirements of the Solicitation.

### D. A Permanent Injunction Is Appropriate In This Case.

Permanent injunctive relief is appropriate where: (1) the plaintiff has succeeded on the merits of the case; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *See Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987)**;** *PGBA, LLC v. United States***,** 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). The facts of this case satisfy these criteria.

#### 1. Permanent Injunctive Relief Is Justified Under The Facts And Law Applicable To This Case

Permanent injunctive relief should be granted in this case because (a) the Army has failed to satisfy the competitive range determination requirements for an award under the RSA; (b) the SLA's proposal is not

within a reasonable competitive range; (c) the SLA's proposal is based on the work of a non-blind vendor; and (d) the SLA's proposal contained numerous deficiencies that were non-responsive to the solicitation.

**a. The Solicitation provides that award is to be made to a Section 8(a) contractor; B&P is an 8(a) contractor and the SLA is not.**

The Solicitation provides that "[o]ffers are solicited only from small business concerns expressly certified by the Small Business Administration ("SBA") for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer . . ." (See AR Tab 1, page 28) B&P is a certified 8(a) contractor. (See Affidavit of Deidre Brown at AR Tab 28, page 1037, paragraph 2) As the Army has acknowledged, the SLA does not qualify as a minority business enterprise pursuant to Section 8(a). (AR Tab 23, page 984) See also *Department of the Air Force – Reconsideration*, 72 Comp. Gen. 241, 242, fn. 2. Therefore, the SLA is not a qualified proposer pursuant to the language of the Solicitation unless the RSA applies to override the 8(a) requirement.

**b. The Solicitation states that the RSA applies but the Army did not establish a competitive range required by regulation and case authority and did not apply a competitive range analysis to the SLA's proposal.**

The Solicitation also provides that it is subject to the RSA as it relates to offers of military food services. (AR Tab 1, page 2) The Solicitation

provides that application of the RSA preference may entitle a qualified offeror, whose evaluated proposal is determined technically acceptable, to enter into direct negotiations with the Army without further consideration of other technically acceptable proposals. (AR Tab 1, page 2)

In evaluating the interrelationship of the 8(a) preference and the RSA, this Court has found that the RSA will take priority if the agency determines that the state licensing agency's proposal is within the competitive range. DoD Directive 1125.3, specifically provides that award is to be made to an SLA on an RSA set-aside "***if the State licensing agency submits a proposal and it is within the competitive range established by the contracting officer.***" (See Exhibit C attached hereto) (emphasis added) See also *Automated Communications Systems, Inc. v. United States*, 49 Fed. Cl. 570, 573 (2001), referencing DoD Directive 1125.3.

Cases interpreting whether the RSA preference or the 8(a) preference takes priority have indicated that the RSA preference has priority only if the SLA's proposal is deemed to be in the competitive range. As the Comptroller General stated in the *Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993):

> If the state licensing agency's proposal is judged by the federal agency to be "within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final

> award," the federal agency is to consult with DOE. 34 C.F.R. § 395.33(b). The preamble to DOE's regulations states that the contract "is expected to be awarded to the state licensing agency" following this consultation. Preamble to Final Rule, Randolph-Sheppard Regulations, 42 Fed. Reg. 15803, 15809 (1977). If, on the other hand, the proposal is judged not to be within the competitive range, the agency can award the contract to the most highly evaluated offeror. Accordingly, the term "priority" does not suggest an absolute right to receive a government contract without regard to the contract criteria or the merit of the other bidders.

*Id*. at 244, citing *Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.D.C. 1985), *judgment vacated on other grounds*, 795 F.2d 90 (D.C. Cir. 1986).

Similarly, in *Randolph-Sheppard Vendors of American v. Harris*, 628 F.2d 1364 (D.C. Cir. 1980), the Court recognized that the RSA does not provide an unqualified priority in favor of blind vendors or the SLA's representing them. As the Court stated in that case:

> It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost. In fact such a scheme, unlike the present one, would actually exceed the authority delegated to the Secretary by the Amendment.

*Id*. at 1367. As in 72 Comp. Gen. 241, the court in *Randolph – Sheppard Vendors* found that the agency must determine that the SLA's bid falls within "a reasonable and competitive range." *Id.*

The Contracting Officer also recognized in her Statement that the SLA's proposal must be found to be within the competitive range. As she states, 'if there is a reasonable expectation of getting a minimum of two Small Business offers . . ., the RFP can be issued as a set-aside, but ***it shall include language stating that if an SLA submits a proposal that is determined to be within the competitive range***, then negotiations will be exclusively with the SLA." (AR Tab 23, page 986) (emphasis added)

However, the Army admits it did not determine that the SLA's proposal was within the competitive range because the Army never established a competitive range for proposals. (Post Negotiations Memorandum, AR Tab 14, Page 919; Contracting Officer Statement, AR Tab 23, page 987). The Army only found that the SLA's proposal was technically acceptable (as was B&P's) and later found the price was "reasonable," without establishing a competitive range. Therefore, the evaluation process was flawed even if the RSA's preference provisions are considered to take priority over the 8(a) preference provisions, because there was no determination that the SLA's proposal with within the competitive range.

### c. The Army's award to the SLA is improper because the price differential between the SLA's proposal and B&P's is greater than a reasonable difference for a competitive range.

A proper competitive range analysis of the SLA's proposal would have found its price proposal to be outside the competitive range. Price proposals must be considered as part of the competitive range analysis. In *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 (2000), the Court of Federal Claims held that:

> It is well-established that price must always be a factor in an agency's decision to award a contract. 10 U.S.C. § 2305(a)(3)(A); 41 U.S.C. § 253a(c)(1)(B); FAR § 15.304(c)(1). Moreover, an agency may not discount the importance of price in a price/technical tradeoff to such an extent that it "effectively renders the price factor meaningless." *Lockheed Missiles Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958 (Fed. Cir. 1993) (citing *Grumman Data Sys. Corp.*, GSBCA No. 11635-P, 92-1 BCA CCH ¶24, 700 at 123, 721). These requirements "mean that an agency may not exclude a technically acceptable proposal from the competitive range without taking into account the relative cost of that proposal to the government." *Meridian Management Corp.*, 2000 WL 1097129, 3 (July 19, 2000). . .

48 Fed. Cl. at 338. *See also SCIENTECH, Inc.,* Comp. Gen. Dec. B-277805.2, 98-1 CPD ¶ 33.

In this case, the Army did not consider price as part of a competitive range determination, or even establish a competitive range. The SLA's price could not have been within a reasonable competitive range because it was at least 16 percent higher than B&P's proposal, and possibly even higher. B&P's proposal for the base year plus four option years was for $35,045,235.00. (AR Tab 13, pages 899, 901-02) The SLA's proposal (before the Army's analysis) for the same period was at least $40,723,007.00. (AR Tab 13, page 904) This is a difference of over $5.67 million, or more than 16 percent.

A price proposal that is over 14 percent higher than other technically acceptable price proposals should not be deemed to be within the competitive range and should be disregarded. See, e.g., Federal Register, vol. 62, No. 145, Pages 40509-40510, Arbitration Panel Decision Under Randolph-Sheppard Act in *Mississippi Dep't of Rehabilitative Services vs. United States Dept of Defense* (finding that an SLA's bid that was materially higher than other bidders was properly excluded from competitive range consideration). (see Exhibit D attached hereto)

And the difference between B&P's and the SLA's proposals may be even greater. The Army's Cost Price Memorandum states, "[t]he proposed amount could be anywhere from approximately $40,723,007 (including

phase-in costs) to approximately $41,913,031 if contractor furnished materials, base fee, and award fee are added to amounts provided by the offeror." (AR Tab 13, pages 902-04) (AR Tab 13, pages 902-04) (emphasis added) The Army's Post Negotiation Memorandum states that the Army's most probable cost estimate for the SLA's price is $41,791,049. (AR Tab 14, page 919) This would amount to a difference of over 19.25% from B&P's proposal.

Therefore, the SLA's proposal should have been rejected as not within the competitive range, which means that the RSA preference would not apply, leaving B&P's much lower-priced proposal as the lowest cost technically acceptable proposal, the standard the Army indicates it applies to the evaluation of proposals, and the only proposal that could have fallen within a reasonable competitive range.

**d. The SLA's proposal should not have been considered to fall within the RSA because the work would not be performed by a blind vendor.**

In order for the RSA to apply, the SLA's proposal must provide for a blind vendor to operate the contract work. "The RS[A] was enacted by Congress with the purpose of providing employment opportunities and encouraging the economic self-sufficiency of blind persons. 20 U.S.C. § 107. 20 U.S.C. § 107d-3(e) provides that the U.S. Secretary of Education

may "establish a priority for the ***operation*** of cafeterias on Federal property by blind licensees." (emphasis added) The statute requires that the licensee be blind as defined in 20 U.S.C. § 107e. Thus, the RSA calls for cafeterias under RSA contracts to be operated by blind licensees. The Contracting Officer has also recognized this fact stating "[f]ederal law states (RSA) that a preference is given in favor of firms operated by blind persons for various vending services (to include full food services) on installations operated by Executive Branch Agencies." (AR Tab 23, page 986)

In this case, the Army acknowledges that the SLA's proposal calls for work to be performed by a non-blind entity, BCI, not by the blind vendor licensee, Franklin Hulsey. Analyzing the SLA's proposal, the Army's Price/Cost Analysis Report states, "***[t]he actual contractor performing the work is Blackstone Consulting, Inc.*** . . . . (AR Tab 13, page 903; see also Post Negotiation Memorandum at AR Tab 14, page 916)

Nothing in the Administrative Record identifies Mr. Hulsey as having any role in the Project other than lending his name and perhaps collecting some of the fee. The SLA's proposed "Onsite Organizational Chart" shows that the entire operation of the SLA's proposed services is under the control of BCI, not Mr. Hulsey. The organizational chart states "Hulsey & Blackstone Consulting, Inc." are the top of the organization but Mr. Hulsey

has no operational control as all personnel are under "BCI General Managers". (AR Tab 7, page 100) Moreover, the Quality Control & Safety Manager and the Assistant Food Service Manager who are designated by the SLA as the "key personnel" (AR Tab 7, page 97) would be BCI employees. (AR Tab 7, pages 98-99)

BCI is not a blind vendor but rather maintains it is a "teaming partner" for blind vendors. (See Exhibit A attached hereto) However, in this case, BCI is not just a partner but would actually run the proposed operation. The Georgia Department of Audits and Accounts has also recognized that the Georgia Program may not be in keeping with the purpose of the RSA because "the blind vendors only serve has contract managers; they do not actually operate facilities or provide any food services." Georgia Department of Accounts Report 05-09, *Performance Audit: Subcontracts For Food Service Operations by the Business Enterprise Program Department Of Labor*, Dec. 2005, page 6, a copy of which is attached at Exhibit B. (http://www.audits.state.ga.us/internet/pao/rpt_main.html) That report also notes "there is not indication that any of the [blind] contract managers will ever assume responsibility for actually operating the subcontracted food service facilities." *Id.* at 7.

Therefore, the SLA's proposed services, by the Army's own recognition (reinforced by the Georgia Department of Audits and Accounts findings), will not be operated by a blind vendor. The SLA's proposal should not even be considered under the RSA because that proposal is based on the proposed work by a non-blind entity.

**e. The SLA's proposal failed to provide clear information as required by the Solicitation**

The Army's determination to award to the SLA should also be enjoined because the SLA's proposal failed to comply with several requirements of the Solicitation as the Record shows. The Army's Price/Cost Analysis Report states that the SLA's proposed pricing was unclear and its proposal was defective because the SLA: (1) did not total proposed hours; (2) apparently did not include contractor furnished material costs of $1,200,000 in the total proposal amount; and (3) did not show the computation of fee in its summary breakdown per year or by building. As a result, the Army could not tell what the SLA's proposed price really was (other than to know it was at least $5.67 million higher than B&P's.)

Such errors in a proposal render the proposal non-responsive. A proposal that fails to conform to material terms of the solicitation should be deemed unacceptable and not form the basis for an award. *Hawkins & Powers Aviation, Inc.,* Comp. Gen. Dec. B-244360, 91-2 CPD ¶ 313.

**f. The GAO's decision to dismiss B&P's protest is not based on a correct interpretation of the law or on the facts of this case.**

The GAO's decision was incorrect and does not detract from the strength of B&P's position. Despite the Army's admission that it did not establish a competitive range or determine that the SLA's proposal was within a competitive range, the GAO determined that the Army had applied a competitive range because "[b]y definition an offer that is the subject of discussion is within the competitive range. See DIY, Inc., B-293105.9, Dec. 20, 2004, 2004 CPD ¶ 249 at 2." The GAO also found that B&P had not established that the SLA's costs were not fair and reasonable. (AR Tab 26, page 1009)

The *DIY, Inc.* decision relied on by the GAO does not stand for the proposition asserted by the GAO. The decision does not state that an offer is within the competitive range just because the agency has decided to conduct discussions regarding that offer. Under that circular logic, the competitive range requirement would be rendered meaningless. The agency could pick any offers it wanted to discuss no matter their relative merits and intentionally sidestep other offers simply because the agency liked one offeror more than another, and the offers arbitrarily selected by the agency would be in the competitive range without any evaluation of the

relative merits of the offers. Clearly, that interpretation would gut competition and allow agencies unfettered discretion to determine that a proposal is in the competitive range simply because the agency conducted discussions with a particular offeror.

The proper procedure is to determine the competitive range before determining whether a proposal is within the competitive range. This procedure minimizes the likelihood of arbitrary and capricious awards because it requires the agency to establish objective guidelines all proposers can conform to rather than allowing the agency to change the evaluation procedures after reviewing the proposals.

Moreover, the GAO's decision ignores the Contracting Officer's acknowledgment that the Army did not establish a competitive range, or use a competitive range analysis, or apply a price evaluation to determine if the SLA's proposed price was in a reasonable competitive range.

### 2. B&P would suffer immediate and irreparable harm without injunctive relief while the public interest would not be adversely affected.

"Irreparable harm" has been defined as an injury for which there exists "no adequate remedy at law, meaning that the injury must be actual and imminent, not remote and speculative, and requires a remedy of more than money damages." *Westin v. McDaniel*, 769 F.Supp. 1563, 1569 (M.D.

Ga. 1991. The question of irreparable injury does not focus on the significance, expansiveness or magnitude of the injury, "but rather whether the injury, irrespective of its gravity, is irreparable – that is, whether there is any adequate remedy at law for the injury in question." *Sierra Club v. Martin*, 933 F.Supp, 1559, 1571 (N.D. Ga. 1996) (reversed on other grounds, 110 F.3d 1551 (11th Cir. 1997)).

Injunctive relief is appropriate in this case because if B&P is excluded from providing the food services at Fort Gordon, B&P will lose the opportunity to compete for the contract award and will lose profits thereunder. These lost profits cannot be recovered by B&P, because the only monetary damages available to a disappointed bidder are bid preparation costs. This lost opportunity to compete and loss of profits has been recognized as a basis to order a preliminary injunction. *Magnavox Electronics Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992). See also *Carter III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996). As another court has recognized,"[t]he right to fair and equal competition in bidding for government procurement contracts is a statutory right, which can be adequately protected only by the issuance of injunctive relief." *Mark Dunning Industries, Inc. v. Perry*, 890 F.Supp. 1504, 1517 (M.D. Ala. 1995). The Army has failed to adhere to the required

competitive range analysis, hereby depriving B&P of its opportunity to compete for these work requirements. A denial of the opportunity to have one's proposal fully and equally considered has been held to be not monetarily compensable and demonstrates irreparable harm justifying an injunction. *Georgia Gazette Pub. Co. v. U.S. Department of Defense*, 562 F.Supp. 1004, 1010 (S.D. Ga. 1993).

Therefore, injunctive relief is necessary to prevent irreparable harm to B&P.

**3. <u>The balance of hardships favors a permanent injunction because the injunction would not pose substantial harm to others or harm the public interest.</u>**

While the entry of a permanent injunction would protect B&P's interests, an injunction would not pose a substantial harm to food service operations at Ft. Gordon or harm the public interest in this case. The Army will still be able to obtain the food services needed at Fort Gordon pending the injunction because there is an existing contract and contractor providing the food services. The Army has already extended the existing contract by two months, which indicates that the Army will not be injured by the continuation of the existing contract. Additionally, an injunction of award to the SLA and a concurrent direction to award to B&P would allow the food

services to continue and would save the taxpayers over $5.67 million over five years and perhaps even more.

An injunction of the award to the SLA and award to B&P would also serve to promote the 8(a) set-aside for which this Project was designated but which would not be fostered by award to the non-8(a) SLA.

#### 4. **<u>The public interest is served by a permanent injunction</u>**

There will be no substantial harm to the public or interested persons if a permanent injunction is issued. As discussed above, the Army and military personnel would receive the food services they need and the Army would save over $5.67 million dollars if award to the SLA is enjoined. Further, the 8(a) program will be encouraged by a permanent injunction. Therefore, a permanent injunction would actually serve the public interest.

For all of the reasons set forth in Section III. D of this Memorandum,, permanent injunctive relief should be issued in favor of B&P.

### E. **<u>B&P Is Also Entitled To A Declaratory Judgment That The Army's Evaluation Process Was Improper, that The SLA's Proposal Should be Rejected As Outside A Reasonable Competitive Range.</u>**

In the context of a bid protest, a request for declaratory relief is by its nature a request for permanent injunction for a contract award in the same

standard for entry of injunctive relief applies to the request for declaratory relief. *A & D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 132-33 (2006).

B&P has satisfied the requirements for a permanent injunction and declaratory relief. In light of the Army's failure to apply properly the required competitive range analysis and the fact that B&P has submitted the only other technically acceptable proposal (which is more than $5.67 million lower than the SLA's), the Court should enter a permanent injunction preventing Defendant from preceding with award of a contract for the Project to anyone other than B&P and issue a declaratory judgment finding that the Army's evaluation procedure was arbitrary and abuse of discretion and not in accordance of law and that the award should be made to B&P.

### F. <u>A Writ Of Mandamus Should Issue Directing Award Of The Contract To B&P</u>

Mandamus is appropriate where the plaintiff shows the clear right of to the relief sought, clear duty by the defendant to due the particular act and that no other adequate remedy is available. *Doko Farms v. United States*, 13 Cl. Ct. 48 (1987)

As discussed above, the contracting officer did not apply competitive range analysis as required by applicable law, the work subject to the SLA's proposal would actually be performed by a non-blind vendor, and the SLA's

proposal did not clearly provide information required in the Solicitation. Therefore, B&P has a clear right to the relief requested because the Army has failed to follow required procedures for award of a contract under the RSA and award would not be appropriate under the RSA. The Army has failed to meet its clear duty under the RSA. Finally, as discussed above, B&P does not have an adequate remedy of law. Therefore, if the Court does not have another avenue to direct that the contract be awarded to B&P, mandamus is appropriate to direct award of the contract to B&P.

## IV. CONCLUSION

In light of the foregoing facts and authorities, B&P respectfully requests that this Honorable Court issue a judgment in favor of B&P and against Defendant and its agencies, officers, servants, employees, and agents (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, the Contracting Officers, and their successors):

1) permanently enjoining Defendant from proceeding with performance of a new contract for the Food Services Project pursuant to the Solicitation by anyone other than B&P;

2) declaring any contract issued pursuant to the Solicitation to anyone other than B&P void, and

further declaring that the contract pursuant to the Solicitation is to be awarded to B&P;

3) Issuing a writ of mandamus directing Defendant to award any contract issued pursuant to the Solicitation to B&P; and

4) Provide such other and further relief as this Court determines is appropriate.

DATED this 21st day of November, 2006.

Respectfully submitted,

**SMITH, CURRIE & HANCOCK LLP**

By s/James W. Copeland
James W. Copeland (Georgia Bar No. 186780)
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

**OF COUNSEL:**

S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC, doing business as Acsential Services

## CERTIFICATE OF SERVICE

I hereby certify that the Motion For Judgment Upon The Administrative Record/Supplemental Motion For Permanent Injunction, And Declaratory Relief And Mandamus and the Memorandum in Support therefore is being electronically filed with the Clerk of Court this 21st day of November, 2006 using the CM/ECF system which will send e-mail notification of such electronic filing to the following counsel of record for defendant: Kenneth David Woodrow, Esquire

By s/ James W. Copeland
James W. Copeland
(Georgia Bar No. 186780)

SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, Georgia 30303-1227
Phone: (404) 521-3800
Facsimile: (404) 688-0671