No. 06-732C
Bid Protest
(Judge Baskir)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BROWN & PIPKINS, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

KENNETH D. WOODROW
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 353-4175
fax: (202) 307-0972
Attorneys for Defendant

OF COUNSEL:

CHRISTOPHER L. KRAFCHEK
CPT, JA
Contract & Fiscal Law Division
Trial Attorney, Team III
United States Army

December 14, 2006

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. The Solicitation For The Full Food Services Contract . . . . . . . . . . . . . . 4

B. The Solicitation And Bids . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. The Decision To Award The Contract To The SLA . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. An Agency's Procurement Decisions May Be Set Aside Only If That Decision Was Arbitrary, Capricious, An Abuse Of Discretion Or Otherwise Not In Accordance With The Law . . . . . . . . . . . . 10

B. The Standard For Granting Injunctive Relief . . . . . . . . . . . . . . . 14

C. The Standard For Issuing Writs of Mandamus . . . . . . . . . . . . . . 14

II. The Army's Decision To Award The Contract To The State Licensing Agency After Engaging In Direct Negotiations Was Reasonable And Lawful . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A. The Contracting Officer Properly Conducted Discussions With The SLA After Determining That The SLA's Offer Was Technically Acceptable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. The Randolph-Sheppard Act Authorizes Direct Negotiations With State Licensing Agencies . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. The Randolph-Sheppard Act . . . . . . . . . . . . . . . . . . . . . . 17

2. Applicable Regulations Explicitly Allow For Sole-Source Awards Via Direct Negotiations To A SLA Under The Randolph-Sheppard Act . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF CONTENTS (cont.)**

Page


C. The Contracting Officer Lawfully Engaged In Direct Negotiations With The SLA After Determining The SLA's Offer To Be Technically Acceptable . . . . . 21

III. B&P Is Not Entitled To Injunctive Relief . . . . . 23

A. B&P Has Not Demonstrated That It Has Succeeded Upon The Merits Of Its Claims . . . . . 23

1. B&P's Challenge To The Terms Of The Solicitation Is Untimely . . . . . 25

2. The Army's Application of the Randolph-Sheppard Act's Mandatory Preference Was Wholly Consistent With Both Section 8(a) Of The SBA And The RSA . . . . . 27

3. The Issue Of Whether A Blind Vendor Will Be Performing The Work Is Beyond The Scope Of Review . . . . . 31

4. The Contracting Officer Properly Determined That The SLA's Price Was Reasonable . . . . . 34

B. B&P Has Not Demonstrated That It Was Irreparably Injured By The Government's Actions . . . . . 36

1. The Randolph-Sheppard Act Is A Statutory Exception To The Full And Open Competition Requirement As Contemplated By The Competition In Contracting Act And B&P Does Not Possess A Statutory Right To Compete For The Contract . . . . . 36

2. B&P Cannot Show It Has Suffered Irreparable Harm . . . 38

C. Permanently Enjoining The Procurement Would Not Serve The Public Interest . . . . . 40

D. The Balance Of Harms Favors The Government . . . . . 41

IV. The Court Cannot Direct The Award Of The Contract To B&P . . . . . 42

V. The Court Does Not Possess Jurisdiction To Issue Writs Of Mandamus . . . . . 42

## TABLE OF CONTENTS (cont.)

Page

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

**CASES**

**PAGE(s)**

Automated Communication Sys. v. United States
49 Fed. Cl. 570 (Ct. Cl. 2001) .......... 27

Bean Dredging Corp. v. United States,
22 Cl. Ct. 519 (1991) .......... 12

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) .......... 14

Beta Analytics Intern., Inc. v. United States,
44 Fed. Cl. 131 (1999) .......... 11

CACI, Inc. v. United States,
719 F.2d 1567 (Fed. Cir. 1983) .......... 11, 14

CCL Serv. Corp. v. United States,
48 Fed. Cl. 113 (2000) .......... 14

Camp v. Pitts,
411 U.S. 138 (1973) .......... 12

Central Arkansas Maintenance, Inc. v. United States,
68 F.3d 1338 (Fed. Cir. 1995) .......... 11

Cincom Systems, Inc. v. United States,
37 Fed. Cl. 663 (1997) .......... 11, 13

Cleveland v. United States,
9 Cl. Ct. 741 (1986) .......... 41

Cubic Defense Sys. v. United States,
45 Fed. Cl. 450 (2003) .......... 12

Daluz v. United States,
73 Fed. Cl. 129 (2006) .......... 14, 42

Data Transformation Corp. v. United States,
13 Cl. Ct. 165 (1987) .......... 37

## TABLE OF AUTHORITIES (cont.)

**CASES** **PAGE(s)**

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993) ..... 14

Filtration Development Co. v. United States,
59 Fed. Cl. 658 (2004) ..... 13

Jets Services, Inc. v. Hoffman,
420 F. Supp. 1300 (M.D. Fla.1976) ..... 37

Keco Indus., Inc. v. United States,
203 Ct. C 492 F.2d 1200 (1974) ..... 13

Logan Canyon Cattle Assoc. v United States,
34 Fed. Cl. 165 (1995) ..... 41

McMahon v. United States,
342 U.S. 25 (1951) ..... 32

N.C. Division of Services for the Blind v. United States,
53 Fed. 147, 165 (Ct. Cl. 2002) ..... 25

NISH v. Cohen,
95 F. Supp. 2d 497 (E.D. Va. 2000), aff'd, 247 F.3d 197 (4th Cir. 2001) ..... 17

NISH v. Cohen,
247 F.3d 197 (4th Cir. 2001) ..... 36

NISH v. Rumsfeld,
188 F. Supp. 2d 1321 (Dist. N.M. 2002) ..... 36

New Hampshire v. Ramsey,
366 F.3d 1 (1st Cir. 2004) ..... 31

Nicholson v. United States,
29 Fed. Cl. 180 (1993) ..... 41

Overstreet Elec. Co., Inc. v. United States,
47 Fed. Cl. 728 (2000) ..... 12

RAMCOR Services Group, Inc. v. United States,
185 F.3d 1286 (Fed. Cir. 1999) ..... 32

## TABLE OF AUTHORITIES (cont.)

**CASES** **PAGE(s)**

Southfork Systems, Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998) ..... 31

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) ..... 10, 12

United States v. Testan,
424 U.S. 392 (1976) ..... 41

Wackenhut Int., Inc. v. United States,
40 Fed. Cl. 93 (1998) ..... 11

Winstar Communications, Inc. v. United States,
41 Fed. Cl. 748 (1998) ..... 12

Wisconsin Gas Co. v. FERC,
758 F.2d 669 (D.C. Cir.1985) ..... 38

**STATUTES**

5 U.S.C. § 706 ..... 10, 11

10 U.S.C. § 2302 ..... 36

10 U.S.C. § 2304(a)(1) ..... 36

20 U.S.C. § 107 ..... 4, 16, 17, 18

20 U.S.C. §§ 107a(a)(5) ..... 31

20 U.S.C. § 107b ..... 31

28 U.S.C. § 1491(b)(4) ..... 10, 32, 41

28 U.S.C. § 1491(b)(1) ..... 32

32 C.F.R. § 260.3(g)(1) ..... 19

34 C.F.R. §§ 395.5 ..... 31

## TABLE OF AUTHORITIES (cont.)

**CASES** **PAGE(s)**

34 C.F.R. § 395.33(b) .......... 17, 18, 33, 35

**MISCELLANEOUS**

Dismas Charities, Inc., B-284754 .......... 21

S. Rep. No. 93-937, 93rd Cong. 2d Sess. 10-13, 17 (1974) .......... 39

Act of June 20, 1936, Pub. L. No. 74-732, § 1, 49 Stat. 1559 .......... 39

Act of Dec. 7, 1974, Pub. L. No. 93-516, Title II, § 201, 88 Stat. 1622 .......... 39

Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 .......... 31

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| BROWN & PIPKINS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-732 |
| | ) | |
| THE UNITED STATES, | ) | (Judge Baskir) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's November 1, 2006 order, defendant, the United States, respectfully submits this response to Brown & Pipkins's November 21, 2006, motion for judgment upon the administrative record and supplemental motion for permanent injunction, declaratory relief, and mandamus. We further request judgment upon the administrative record in our favor. In support of this response and cross-motion, we rely upon the complaint, this brief, and the administrative record.

## STATEMENT OF THE ISSUES

1. Whether the Department of the Army ("Army") acted arbitrarily and capriciously and committed a clear and prejudicial violation of applicable statutes or regulations when it awarded a contract for full food services to the Georgia Department of Labor Business State Licensing Agency ("SLA").

2. Whether the Court may direct the Army to award the full food services contract to Brown & Pipkins, LLC.

## STATEMENT OF THE CASE

In this post-award protest, plaintiff, Brown & Pipkins, LLC, doing business as Acsential Services, ("B&P") seeks to permanently enjoin the award of a Government contract for full food services at Fort Gordon, Georgia ("Fort Gordon") pursuant to Solicitation No. W911SE-05-R-0013 ("solicitation").

B&P has filed a three count amended complaint. In the first count, B&P seeks temporary injunctive relief to enjoin the SLA from making on-site visits and prepare for contract performance. Compl. at 9. However, during a teleconference on October 30, 2006, the parties agreed that temporary injunctive relief was not necessary. In Count II, B&P

alleges that the contracting officer failed to properly evaluate the offers received on the solicitation, failed to establish a required competitive range, improperly included the SLA in the allegedly nonexistent "competitive range," improperly awarded the contract to the SLA, and it seeks a permanent injunction enjoining the Army from awarding the contract to the SLA and directing that the contract be awarded to B&P. See id. at 10. Count III reiterates the alleged procurement improprieties by the Army and seeks a declaratory judgment enjoining the Army from making award to the SLA or any other offeror based upon the solicitation and directing the Army to award the contract to B&P. Id. at 11-12. In addition, B&P seeks to enjoin the Army from making an award under the solicitation, voiding of the award to the SLA, and issuance of a writ of mandamus directing the Army to award the contract to B&P. See B&P's Motion for Judgment on the Administrative Record, Supplemental Motion for Permanent Injunction and Declaratory Relief and Mandamus ("Pl. Br.") at 2.

## STATEMENT OF FACTS

For our statement of facts, we rely upon the parties' consolidated statement of facts. For the convenience of the Court, we provide the following summary of facts.

### A. The Solicitation For The Full Food Services Contract

1. On February 22, 2006, the Army issued Solicitation No. W911SE-05-R-0013. Administrative Record ("AR") 1.

2. The solicitation was for full food services at Fort Gordon, including vendor services to handle or participate in food preparation, ordering food or supplies, and overall dining facility management. AR1.

3. The solicitation provided that the contract would have a 30-day phase in period and be awarded for a base year with four one-year options. AR20.

4. The solicitation's closing date was April 18, 2006. AR1.

5. The solicitation was subject to the 20 U.S.C. § 107, the Randolph-Sheppard Act and issued as an Small Business Act section 8(a) set-aside pursuant to 48 C.F.R. § 52.219-18. Id.

6. The solicitation contained the following language notifying all prospective offerors that the solicitation was subject to the Randolph-

Sheppard Act and explicitly stated that the Army could enter into direct negotiations with the SLA if the offeror is determined to be technically acceptable :

> NOTES TO OFFERORS
> 1. NOTICE OF APPLICABILITY OF RANDOLPH-SHEPPARD ACT
>
> All offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. § 107) as related to offerors of military food services. Present DoD and Army policy, interpreting the Randolph-Sheppard Act applies a selection preference to qualified nominees of State Licensing Agencies (SLA) for the Blind who represent clients seeking Defense contracts for so-called "military cafeteria-style food operations."
>
> Application of this preference may entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct negotiations with the Government without further consideration of other technically acceptable proposals.
>
> This notice is not designed to discourage competition from any 8(a) offerors interested in this requirement. Rather, it merely represents notice regarding a mandatory preference for Randolph-Sheppard Act State Licensing Agencies in the event that an offer from such source is received. In this respect, see Section I, FAR clause 52.219-18.
>
> NOTE: THE GEORGIA SLA HAS EXPRESSED INTEREST IN THIS REQUIREMENT.

Id.

7. The Army, anticipating a proposal from an Randolph-Sheppard Act State Licensed Agency, included the following language in Section M of the solicitation:

> M. 1.1. The government anticipates the award of a single contract to the offeror whose proposal is evaluated as technically acceptable with the lowest evaluated cost; however, priority and mandatory preference will be given SLA offeror whose proposal is considered technically acceptable and price is determined to be reasonable.
>
> M.1.2. In accordance with FAR Provision 52.215-1, Instructions to Offerors-Competitive Acquisitions, the Government reserves the right to evaluate proposals and award a contract without discussions based solely upon initial offers and without providing the opportunity to offerors to submit revised proposals, therefore, each initial offer must contain the offeror's best terms from a technical and cost standpoint.

AR48.

8. The Army prepared an Independent Government Cost Estimate ("IGCE") for full food services at Fort Gordon and anticipated that the contract would have a maximum cost of $47,544,350.00. AR 78-89 (Tab 6).

**B. <u>The Solicitation And Bids</u>**

9. The Army received five (5) proposals in response to the solicitation. AR899 (Tab 13); AR909 (Tab 14).

10. On May 1, 2006, an evaluation board met to review and evaluate each proposal for technical acceptability. It completed its review and concluded that two of the proposals, those submitted by the SLA and B&P, were technically acceptable. AR899-900 (Tab 13).

11. On June 9, 2006, the Army conducted a price/cost analysis of the proposals submitted in response to the solicitation. AR901-908 (Tab 13)

12. The contracting officer reviewed the source selection evaluation report and the price/cost analysis and determined that "[t]he proposals submitted by the SLA and [B&P] were the only acceptable proposals, so in essence, they were the competitive range." AR985 (Tab 23).

13. The prices of the proposals ranged from $35,023,113 (B&P) to $41,791,049 (SLA). AR919 (Tab 14).

## C. <u>The Decision To Award The Contract To The SLA</u>

14. The contracting officer based her decision to award upon two factors: technical acceptability and reasonable cost. Once she learned that there were only two technically acceptable proposals, she followed the evaluation criteria in the solicitation and completed a price/cost analysis. Because the solicitation was subject to the Randolph-Sheppard Act, the contracting officer entered into direct discussions only with the SLA and performed a price analysis of the SLA's proposal to determine if it was reasonable and realistic. The contracting officer, pursuant to the solicitation's requirement, the IGCE of $47,544,350, comparison of other offeror's proposed cost, and the SLA's offer of $40,723,007, which reflected only a 2 percent increase over the incumbent's total estimated contract cost, found the SLA's price to be reasonable. AR918 - 919.

15. Based upon the price analysis and as set forth in the source selection decision document, the contracting officer performed a comprehensive analysis of both the SLA's proposal and B&P's proposal. <u>See</u>, <u>e.g.</u>, AR899-900 (Source Selection Evaluation Summary, Tab 13); AR901-90 (Price/Cost Analysis, Tab 13); AR 909-920 (Tab 14).

16. The Army awarded the contract to the SLA on August 17, 2006. AR921 (Tab 15).

17. On August 17, 2006 the Army informed B&P of its intent to award the contract to the SLA. AR982 (Tab 22).

18. On August 21, 2006, B&P requested a post award debriefing in accordance with FAR 15.506. AR957 (Tab 16).

19. On August 24, 2006, via teleconference, the Army provided a post award debriefing to B&P. Deidre Brown and Annette Pipkins, along with their attorney, Greg Joy, represented B&P. Diane Biddy and Catherine Hill represented the Army. AR967 (Tab 21).

20. On August 24, 2006, B&P filed a bid protest with the Government Accountability Office ("GAO") challenging the Army's award of a contract on the solicitation. AR970-983 (Tab 23).

21. On September 13, 2006, the Army filed a motion to summarily dismiss B&P's bid protest on the grounds that the protest was procedurally defective. AR989-994 (Tab 24).

22. On September 22, 2006, B&P filed a response to the Army's motion to summarily dismiss the bid protest. AR995-1007 (Tab 25).

23. On September 26, 2006, the GAO granted the Army's motion and dismissed B&P's bid protest, finding that:

> With respect to [B&P's] arguments that a competitive range was not established and that the SLA's offer was not found to be within the competitive range, these arguments are directly contradicted by the record that shows the Agency conducted discussions with the SLA. By definition, an offer that is the subject of discussion is within the competitive range. See DIY, Inc., B-293105.9, Dec. 20, 2004 CPD 249 at 2.

AR1008-1009. (Tab 26).

24. On October 25, 2006, B&P filed a pre-filing notice of procurement protest with this Court. AR1001-1013 (Tab 27).

## ARGUMENT

### I. Standard of Review

#### A. An Agency's Procurement Decisions May Be Set Aside Only If That Decision Was Arbitrary, Capricious, An Abuse Of Discretion Or Otherwise Not In Accordance With The Law

This Court reviews allegations of error in the contract award process under the deferential standard set forth in 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 221 (2001). An award may be set aside only if the awarding agency's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law." 5 U.S.C. § 706. To prevail, a protestor must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract. Wackenhut Int'l, Inc. v. United States, 40 Fed. Cl. 93, 94-95 (1998). Only agency action that is so egregious that it prevented the fair and honest consideration of the protestor's offer or similarly tainted the procurement process may be enjoined. Cent. Ark. Maint., Inc. v. United States, 68 F.3d 1338, 1341-42 (Fed. Cir. 1995); accord CACI, Inc. v. United States, 719 F.2d 1567, 1573 (Fed. Cir. 1983).

In determining whether the agency's action was arbitrary or capricious, the Court considers whether: (1) there was subjective bad faith upon the part of procuring officials thus depriving the protestor of fair and honest consideration of its proposal; (2) there was a reasonable basis for the procuring officials' decision; (3) the procuring officials abused their discretion; or (4) the procuring officials violated pertinent statutes or regulations. Beta Analytics Int'l., Inc. v. United States, 44 Fed. Cl. 131, 136 (1999); Cincom Sys., Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). In applying these factors, the proper focus is the agency's articulated rationale for the decision and the administrative record

underlying it. Camp v. Pitts, 411 U.S. 138, 142-43 (1973); see also Tech Systems, 50 Fed. Cl. at 222 (the Court "cannot substitute its own judgment for that of the agency"); Winstar Communications, Inc. v. United States, 41 Fed. Cl. 748, 757 (1998) (the court's role is limited to ensuring that the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made). Although the agency is required to proffer an explanation for its action, the explanation need not be extensive. Camp, 411 U.S. at 142-43.

A protestor must prove the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation by a preponderance of the evidence. Tech Systems, 50 Fed. Cl. at 222-24. However, because injunctive relief is extraordinary in nature, a plaintiff must demonstrate the right to such relief by clear and convincing evidence. Cubic Def. Sys. v. United States, 45 Fed. Cl. 450, 474 (2003); Overstreet Elec. Co., Inc. v. United States, 47 Fed. Cl. 728, 732 (2000) (citing Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 522 (1991)); Cincom, 37 Fed. Cl. at 671 (citing 126 Northpoint Plaza LP v. United States, 34 Fed. Cl. 105, 107, appeal dismissed, 73 F.3d 379 (Fed. Cir.

1995)) (plaintiff must prove its case by clear and convincing evidence). A bid protestor cannot meet its burden merely by demonstrating that the record might have supported a different decision, nor may a bid protestor prevail merely by establishing the existence of oversights or errors in the evaluation process. Keco Indus., Inc. v. United States, 203 Ct. Cl. 566, 579, 492 F.2d 1200, 1206-07 (1974) (even assuming Air Force should have known technical merits of a bidder's proposal, such proof is insufficient to establish that the procurement decision was arbitrary). Because contracting officials may exercise wide discretion in their evaluation of procurement regulations, a bid protestor may prevail only when it is clear that the agency's determinations were irrational and unreasonable. Cincom Systems, 37 Fed. Cl. at 672; see also Filtration Dev. Co. v. United States, 59 Fed. Cl. 658, 666 (2004) ("the standards employed by the court . . . afford the military great latitude in the administration and execution of its affairs").

**B. The Standard For Granting Injunctive Relief**

B&P here requests permanent injunctive relief. Injunctive relief for a disappointed bidder is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120

(2000) (quoting CACI, Inc., 719 F.2d at 1581). In order to obtain a permanent injunction, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief based upon the following factors: (1) actual success on the merits; (2) that plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

### C. Standard For Issuing Writs Of Mandamus

B&P's complaint seeks a writ of mandamus directing the Army to award the food services contract to B&P. Compl. at 12. Mandamus jurisdiction under 28 U.S.C. § 1361 lies exclusively in federal district courts. See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Daluz v. United States, 73 Fed. Cl. 129, 133 (2006).

## II. The Army's Decision To Award The Contract To The State Licensing Agency After Engaging In Direct Negotiations Was Reasonable And Lawful

The contracting officer's decision to enter into discussions with the SLA after determining that the SLA's offer was one of two technically acceptable offers was consistent with the explicit terms of the solicitation and authorized by the Army's own regulations.

### A. The Contracting Officer Properly Conducted Discussions With The SLA After Determining That The SLA's Offer Was Technically Acceptable

The solicitation, in the Notes to Offerors, explicitly states that application of the Randolph-Sheppard Act preference "may entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct negotiations with the Government without further consideration of other technically acceptable proposals." AR2 (emphasis added). This is precisely what the contracting officer did.

Following the evaluation criteria set forth in the solicitation, the contracting officer evaluated each proposal on two factors: technical acceptability and cost. AR1-2. Technical acceptability was determined upon a subjective basis without ranking or scoring of proposals. AR911. Upon determining that the SLA's proposal was only one of two technically

acceptable proposals, the contracting officer applied the mandatory preference pursuant to the Randolph-Sheppard Act. She entered into direct discussions only with the SLA and performed a price analysis of the SLA's proposal to determine if it was reasonable and realistic. AR911. The contracting officer, pursuant to the solicitation's requirements, compared the SLA's proposal to the Government's independent cost estimate of $47,544,350 and found the SLA's cost of $40,723,007 to be lower. She also determined that the SLA's proposed cost was only a 2 percent more than the incumbent's total estimated contract cost. Based upon this comparison, she concluded that the SLA's price was reasonable. AR918-19.

### B. The Randolph-Sheppard Act Authorizes Direct Negotiations With State Licensing Agencies

The contracting officer's decision to conduct discussions with the SLA after determining that the SLA's offer was technically acceptable was fully consistent with Army, Department of Defense ("DOD"), and Department of Education ("DOE") regulations implementing the Randolph-Sheppard Act.

### 1. The Randolph-Sheppard Act

The Randolph-Sheppard Act for the Blind, as amended in 1974, provides blind vendors with a preference for certain types of federal contracts. 20 U.S.C. § 107 et seq. Pursuant to the 1974 amendments, the Secretary of Education is responsible for designating an agency in each state to issue licenses to blind persons for the operation of vending facilities. 20 U.S.C. § 107(b). A designated state licensing agency is required to give preference to blind persons who are in need for employment when issuing a license for the operation of a vending facility. 20 U.S.C. § 107(b). The 1974 amendments ordered Federal agencies to give priority to blind persons licensed by state agencies and mandated that the DOE, through the Commissioner of Rehabilitative Services Administration, publish regulations securing the priority of blind vendors in "the operation of vending facilities on federal property." 20 U.S.C. § 107(b). Pursuant to the implementing regulations, when an acquiring agency has a requirement for cafeteria services, the agency is required to invite the state licensing agency to compete for the requirement. 34 C.F.R. § 395.33(b) (2001).

The Randolph-Sheppard Act applies to contracts for the operation of military mess halls. See, e.g., NISH v. Cohen, 95 F. Supp. 2d 497 (E.D. Va. 2000), aff'd, 247 F.3d 197 (4th Cir. 2001) (holding that, as a matter of law, "addition of the term 'cafeteria' to the [Randolph-Sheppard Act], …supports [its] coverage of…military mess hall services); see also U.S. Dep't of Air Force-Reconsideration, B-250465 et. al., June 4, 1993, 93-1, CPD 431. The contract at issue here is one for the operation of a military mess hall and, therefore, is subject to the mandatory preference set forth in the Randolph-Sheppard Act.

### 2. Applicable Regulations Explicitly Allow For Sole-Source Awards Via Direct Negotiations To A SLA Under The Randolph-Sheppard Act

The Randolph-Sheppard Act requires DOE to promulgate regulations establishing priority for blind vendors to operate cafeterias, subject to certain restrictions. 20 U.S.C. § 107(b). DOD, and likewise the Army, has adopted nearly identical regulations.

DOE regulations offer two options by which a Federal agency may implement the priority mandated for blind vendors. First, an agency may "establish the ability of blind vendors to operate a cafeteria…at comparable cost and of comparable high quality [by inviting a state licensing agency] to

respond to solicitations…when a cafeteria contract is contemplated." 34 C.F.R. § 395.33(b). Second, an agency may, in the alternative, enter into direct negotiations with the state licensing agency when the Federal agency (that is, DOD) "determines on an individual basis, that such an operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided." 34 C.F.R. § 395.33(d) (emphasis added).

Like the DOE regulations, the DOD regulations provide a choice (competitive v. sole-source) for contracting officials in determining which method they will use to award cafeteria contracts. The first choice contemplates a competitive award procedure:

> If a designated SLA submits an offer found to be within the competitive range, award must be made to the SLA absent a high-level determination by the agency and agreement by the Secretary of Education, that…the SLA does not have the capacity to operate a cafeteria in such a manner as to provide food service at a cost and quality comparable to that available from other cafeteria service providers.

32 C.F.R. § 260.3(g)(1); see also, U.S. Dep't of Defense, Dir. 1125.3, VENDING FACILITY PROGRAM FOR THE BLIND ON FEDERAL PROPERTY para. E2.1.3. (7 Apr. 1978) (C1 22 Aug. 1991); see, Matter of:

Cantu Services, Inc., B-289666.2, B-289666.3, November 1, 2002, CPD 189.

The DOD regulations also authorize an alternate method of awarding the Randolph-Sheppard Act preference to blind vendors for food service contracts: direct negotiations via a sole-source award. Pursuant to paragraph E2.1.3.2. of the DOD Directive:

> Direct negotiations may be undertaken with State licensing agencies whenever the on-site official, with concurrence of the Head of the DOD Component, has determined that State licensing agency, through its blind licensee, can provide the cafeteria services required at reasonable cost, with food of a high quality comparable to that available from other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in E2.1.3.1….will be followed.

U.S. Dep't of Defense, Dir. 1125.3, VENDING FACILITY PROGRAM FOR THE BLIND ON FEDERAL PROPERTY para. E2.1.3.2. (7 Apr. 1978) (C1 22 Aug. 1991).

The Army has adopted DOE's and DOD's policy on direct negotiations. The Army regulation specifically provides that:

> (2) Direct negotiations may be undertaken with State licensing agencies whenever the onsite official determines that the State licensing agency, through its blind licensee, can provide the cafeteria

> services required at a reasonable cost, with food of a high quality comparable to that available from other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in subparagraph b(1), above, will be followed.

Army Regulation (AR) 210-25(6)(b)(2), Vending Facility for the Blind on Federal Property (June 30, 2004). The Army regulation, like the Department of Education and DOD regulations, permits contracting officials to acquire services through either direct negotiations or competitive procedures. The Army regulation designates the "on-site official" as the primary decision maker with regards to whether the state licensing agency can provide the cafeteria services at a reasonable cost and of a high quality. Army Regulation 210-25(4)(c), Vending Facility for the Blind on Federal Property (June 30, 2004).

### C. The Contracting Officer Lawfully Engaged In Direct Negotiations With The SLA After Determining The SLA's Offer To Be Technically Acceptable

B&P claims that the Army failed to establish a competitive range and did not apply a competitive range analysis as required by the Randolph-Sheppard Act. Pl. Br. at 18. Pursuant to FAR § 15.306(c), a contracting officer may establish a competitive range any time after the initial evaluation of proposals. The determination of whether a proposal is in the

competitive range is principally a matter within the sound judgment of the procuring agency. See Dismas Charities, Inc., B-284754, May 22, 2000, 2000 CPD 3.

Here, B&P's entire argument, and therefore its case, relies upon the contracting officer's statement that "a competitive range was not established" in the Post Negotiation Memorandum (AR919) and the Contracting Officer Statement (AR987). However, B&P ignores that when explaining her actions, the contacting officer also said "[t]hose offers that fell into the Technically Acceptable category are in essence the competitive range because those offers are the only offers that are to be further considered for award." AR987 (emphasis added). The contracting officer's actions demonstrate that she followed the evaluation factors in the solicitation and established a competitive range.

To be certain, the solicitation clearly informed all offerors that "priority and mandatory preference will be given SLA offeror whose proposal is considered technically acceptable and price is determined to be reasonable." AR48. Moreover, the solicitation warned offerors that the Government reserved the right to award a contract based upon initial proposals and without providing the opportunity to offerors to submit

revised proposals. Id. The Army received five proposals and the Army's Source Selection Evaluation Board ("SSEB") evaluated the five submitted proposals and deemed three as technically unacceptable and two as technically acceptable. AR899-900. Included in this latter group was the SLA's proposal. Once the competitive range was established, the contracting officer evaluated the SLA's price and properly found it to be reasonable. By following the terms of the solicitation, establishing a competitive range, and evaluating the SLA's price to ensure it was reasonable, the Army acted in accordance with applicable statutes, regulations, and case law.

## III. B&P Is Not Entitled To Injunctive Relief

### A. B&P Has Not Demonstrated That It Has Succeeded Upon The Merits Of Its Claims

B&P argues that the contracting officer's determination to award the contract to the SLA was arbitrary, an abuse of discretion, or otherwise not in accordance with law because: (1) the solicitation provided that award was to be made to an 8(a) contractor and the SLA does not qualify as an 8(a) contractor pursuant to the Small Business Act (“SBA”); (2) the Army failed to establish a competitive range and did not apply a competitive range analysis as required by the Randolph-Sheppard Act; (3) the

contracting officer acted improperly in determining that the SLA's price was reasonable; (4) the services at Fort Gordon would not be performed by a blind vendor; and (5) the SLA's proposal should not have been included in the competitive range because it lacked required information. Pl's Br. at 17-28.

B&P's arguments are without merit. As set forth above, the Army acted in accordance with the solicitation and Army regulations implementing the Randolph-Sheppard Act when it entered into discussions only with the SLA. The Army's application of the Randolph-Sheppard Act's mandatory preference in the context of a competitive procurement set aside for small businesses was wholly consistent with both Section 8(a) of the SBA and the Randolph-Sheppard Act and B&P's challenge to the solicitation on such grounds is untimely. Likewise, the Army reasonably determined that the SLA's price was reasonable when it compared the SLA's price to the Government's independent cost estimate and the incumbent's cost of services. Finally, B&P's claim that the SLA's proposal is defective because the services would not be provided by a blind vendor is without factual support and is beyond this Court's jurisdiction to review.

### 1. B&P's Challenge To The Terms Of The Solicitation Is Untimely

B&P first contends that the "[s]olicitation provides that award is to be made to a Section 8(a) contractor; B&P is an 8(a) contractor and the SLA is not." Pl. Br. at 18. B&P argues that because the solicitation was issued as an 8(a) set aside, the Army acted arbitrarily when it issued a procurement affording a preference both to small business set-asides and the SLA under the Randolph-Sheppard Act. B&P's challenge to the terms of the solicitation is untimely.

The solicitation provided notice to all prospective offerors that the procurement was subject to preferences regarding the Randolph-Sheppard Act. The solicitation specifically stated that "[all offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. § 107) as related to offerors of military food services." AR2. The solicitation further provided that the Army could enter into direction negotiations with qualified SLS offerors whose proposals are determined "without further consideration of other technically acceptable proposals."

Id.

It is settled that challenges to the terms of a solicitation should be raised prior to the closing date for receipt of proposals. In cases where the Army permitted an SLA to submit a proposal under an SBA set-aside procurement, the Court of Claims has held:

> In a similar vein to those cases, the court in this case holds that where an offeror recognizes a significant deficiency or problem in a solicitation (e.g., the erroneous application of a particular statute/regulation to the solicitation), the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion, i.e., prior to the closing date for receipt of proposals or, at the latest, prior to contract award.

N.C. Division of Services for the Blind v. United States, 53 Fed. 147, 165 (Ct. Cl. 2002) (emphasis in original).

Here, the solicitation clearly put B&P on notice that the Army intended to receive proposals from the SLA despite the fact that the solicitation was issued as an SBA set-aside procurement. However, B&P did not raise a challenge to the terms of the solicitation until after it was informed that the SLA was awarded the contract on August 24, 2006. AR967. Here, B&P's challenge to the terms of the solicitation should have

been raised on or before April 18, 2006, the closing date for receipt of proposals. AR895.

**2. The Army's Application of the Randolph-Sheppard Act's Mandatory Preference Was Wholly Consistent With Both Section 8(a) Of The SBA And The RSA**

Even if the Court finds that B&P's challenge to the terms of the solicitation is timely, B&P's argument is still without merit. The Army's application of the Randolph-Sheppard Act's mandatory preference in the context of a competitive procurement set aside for small businesses was wholly consistent with both Section 8(a) of the SBA and the Randolph-Sheppard Act.

Indeed, the GAO reviewed this very issue and held:

> Here, the Army was faced with the challenge of reconciling the priority afforded SLAs with the limitation of potential competitors afforded in a small business set-aside that would generally exclude SLAs. Nonetheless, we think the court's broad conclusion is applicable to the facts here; simply stated, there is no inherent conflict in applying the two preferences or priorities.

Intermark, Inc., B-290925, Oct. 23, 2002, 2002 CPD 180. Moreover, in Automated Communication Sys. v. United States, this Court reviewed a similar issue and held that the application of the Randolph-Sheppard Act's mandatory preference was not incompatible with the statutory preferences

for small businesses set forth in the HUBZone Act. 49 Fed. Cl. 570, 577 (Ct. Cl. 2001). The Court explained that the contracting officer could reasonably apply both the HUBZone preference and the Randolph-Sheppard Act and that "[t]he fact that the RSA preference or priority, if triggered, is superior to the others, does not mean that the various preferences conflict." Id. at 577 - 578.

The Court's reasoning is equally applicable here. By structuring the procurement as a small business set-aside and accepting proposals only from small businesses pursuant to Section 8(a) of the SBA, the Army appropriately applied the preference for small businesses contemplated in the SBA. Structuring the solicitation in this fashion effectively excluded all businesses other than qualified 8(a) vendors from competing for the contract. Likewise, the Army structured the procurement to apply the mandatory preference for blind vendors set forth in the Randolph-Sheppard Act. The Army explicitly stated that the solicitation was subject to the Randolph-Sheppard Act and explained "that this notice is not designed to discourage competition from any 8(a) offerors interested in this requirement." The solicitation further stated that "the Georgia SLA has expressed interest in this requirement," thereby providing notice that any

qualified 8(a) vendor who wished to compete for the contract would likely be competing directly with the SLA. By providing for competition between only 8(a) contractors and the SLA, the Army appropriately applied the preferences set forth in both the SBA and the Randolph-Sheppard Act.

The Army's application of the solicitation's requirements was similarly consistent with both the SBA and the Randolph-Sheppard Act. The contracting officer evaluated each of the Section 8(a) qualified offerors' proposals equally with the SLA's proposal to determine which proposals were technically acceptable. AR911-916. After determining that B&P's and the SLA's proposals were technically acceptable, the contracting officer then communicated directly with the SLA, pursuant to 48 C.F.R. § 15.306(b)(2), to clarify certain aspects of its cost proposal. AR916-917. After clarifying the SLA's proposal, the contracting officer compared the SLA's cost to the Government's independent cost estimate, the incumbent's total estimated contract cost, and the other offerors' proposed costs, and determined that the SLA's cost was reasonable. AR918-19. By first evaluating equally each offeror's proposal for technical acceptability, the Army appropriately applied the SBA's preference for small business vendors. The Army then applied the mandatory Randolph-Sheppard Act

preference only after narrowing the field to two technically acceptable competitors. By sequentially applying the statutory preferences pursuant to the terms of the solicitation, the Army acted consistently with both the SBA and Randolph-Sheppard Act.

Even if the Court were to conclude that a conflict exists between the Randolph-Sheppard Act preferences for blind vendors and small business set-asides, then the contracting officer still acted reasonably because "it is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." Automated, 49 Fed. Cl. at 578. Here, the Randolph-Sheppard Act, which establishes a priority for blind vendors to operate vending facility contracts, is far more specific than the SBA, which generally covers government contracts. Therefore, it would have been reasonable for the contracting officer to find that the mandatory preference set forth in the Randolph-Sheppard Act trumps the SBA, solicit a proposal from the SLA and, after finding that the SLA's proposal was technically acceptable and reasonably priced, award the contract to the SLA. In sum, the fact that B&P is an "8(a) contractor and

the SLA is not" is irrelevant to the issues before the Court and should be disregarded.

### 3. The Issue Of Whether A Blind Vendor Will Be Performing The Work Is Beyond The Scope Of Review

B&P next argues that the Army acted unlawfully when it considered the SLA's proposal because the work would not be performed by a blind vendor. Pl. Br. at 24.

Although B&P's argument is somewhat opaque, B&P appears to be claiming that the Army should have determined that the Randolph-Sheppard Act did not apply to the SLA's proposal because actual contractor performing the work was Blackstone Consulting, Inc. and Blackstone was not "operated" by a blind vendor. Id. at 24-25. B&P's argument is without support in the administrative record. Moreover, the Army does not possess the authority in connection with a procurement decision to determine whether a vendor licensed by the SLA meets DOE's licensing requirements. Because the SLA's licensing decisions are wholly separate from a Federal agency's procurement decisions, the issue of whether Blackstone Consulting, Inc. was properly licensed is beyond this Court's bid protest jurisdiction. Southfork Sys., Inc. v. United States, 141 F.3d 1124 (Fed. Cir. 1998).

The SLA's decision to license Blackstone Consulting, Inc. as a vendor under its Randolph-Sheppard Act program is a matter solely within the province of the SLA. The Randolph-Sheppard Act divides responsibility for the blind vendor program between the state and Federal agencies. The Secretary of Education is responsible for interpreting and enforcing the Act's provisions, and more specifically, for designating state licensing agencies. 20 U.S.C. §§ 107a(a)(5), 107b; 34 C.F.R. §§ 395.5, 395.8. A person seeking a position as a blind vendor applies to the designated state agency and is licensed by that agency. The state agency in turn applies to the Federal Government for the placement of the licensee on Federal property. 20 U.S.C. § 107b. See New Hampshire v. Ramsey, 366 F.3d 1, 6-7 (1st Cir. 2004) (explaining delegation of authority pursuant to the Randolph-Sheppard Act).

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870, confers jurisdiction upon this Court to "render judgment on an action by an interested party . . . to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added). It is

settled that waivers of sovereign immunity, such as those established by the Tucker Act, are to be narrowly construed in favor of the sovereign. McMahon v. United States, 342 U.S. 25, 27 (1951). Although the United States Court of Appeals for the Federal Circuit has observed that the phrase "'in connection with' is very sweeping in scope," the court held that 28 U.S.C. § 1491(b)(1) confers jurisdiction only upon the violation of a statute or regulation in connection with a procurement or proposed procurement. RAMCOR Services Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999).

The SLA's decision to license Blackstone Consulting, Inc. as a blind vendor (or, indeed, as a "teaming partner" with a blind vendor) is wholly separate from the Army's decision to procure full food services at Fort Gordon. The Randolph-Sheppard Act explicitly delegates to the state licensing agency the authority to license appropriately qualified vendors, and the licensing decision is wholly separate from any Federal agency's decision to procure services. Assuming, for argument's sake, that B&P correctly asserts that the Georgia program is "not in keeping with the Randolph-Sheppard Act's purposes" and that Blackstone Consulting is not appropriately qualified as a blind vendor, Pl. Br. at 26, the responsibility for

correcting such faults lies with the SLA, not with the procuring agency. The SLA's licensing decisions cannot be construed as being made "in connection with" the proposed procurement and, therefore, are outside of this Court's bid protest review.

### 4. The Contracting Officer Properly Determined That The SLA's Price Was Reasonable

B&P next argues that the "Army's award to the SLA is improper because the price differential between the SLA's proposal and B&P's is greater than a reasonable difference for a competitive range." Pl. Br. at 22. B&P offers in support of this argument the fact that the SLA's proposed price, $35,023,113.00, was "at least 16% higher than B&P's proposal." Pl. Br. at 23. Because the source selection process and the Randolph-Sheppard Act do not require comparison or ranking of technically acceptable proposals, B&P's argument is without merit.

Contrary to B&P's assertion, the standard for determining whether to award to an SLA is that it must have a proposal in the competitive range, that is, provide the complete range of full food services, and come at comparable cost. See 34 C.F.R. § 395.33. The source selection process here was based upon a "best value" determination derived from the selection of the technically acceptable proposal with the lowest evaluated

cost. It specifically does not involve the ranking or scoring of proposals, nor does it require any kind of comparative assessment. AR919. The contracting officer established the competitive range when she narrowed the field to the two technically acceptable offerors. The contracting officer made her cost reasonableness determination after the other offerors were eliminated from competition. AR918-19. The contracting officer's price reasonableness determination was conducted pursuant to the mandatory preference provisions of the Randolph-Sheppard Act, which require the agency to award the contract to the state licensing agency if its proposal is technically acceptable and its price is reasonable. AR48.

The contracting officer's price reasonableness determination is fully documented in the administrative record. The contracting officer determined the SLA's proposed cost to be reasonable by comparing it to specific benchmarks. Specifically, she confirmed that the SLA's total proposed cost of $40,723.00 was only a "2% increase over the incumbent's total estimated contract cost." AR919. She further compared it to the Government's independent cost estimate of $47,544,350 and determined that the SLA's cost was $6,821,343.04 lower. Id. Because the source selection process and the Randolph-Sheppard Act do not require

comparison or ranking of technically acceptable proposals, B&P's argument that SLA's cost proposal was outside of the "competitive range" because it exceeded B&P's proposed cost is without merit.

### B. B&P Has Not Demonstrated That It Was Irreparably Injured By The Government's Actions

#### 1. The Randolph-Sheppard Act Is A Statutory Exception To The Full And Open Competition Requirement As Contemplated By The Competition In Contracting Act And B&P Does Not Possess A Statutory Right To Compete For The Contract

B&P cannot establish irreparable harm upon the basis that it was denied the opportunity to compete for the Fort Gordon food services contract. Pl. Br. at 30. First, B&P did have the opportunity to compete for the contract and its offer was fully and properly evaluated according to the terms of the solicitation. Tellingly, B&P does not dispute any aspect of the Army's technical acceptability determination. Second, because the Randolph-Sheppard Act (and its implementing regulations) permits the Army to award food services contracts to SLA-licensed vendors by direct negotiation and without competitive procedures, B&P cannot rely upon the lost opportunity to compete as a basis for alleging irreparable harm.

Generally, the Competition in Contracting Act ("CICA") controls Army procurements and mandates full and open competition. However, in

military dining facility procurements, the Randolph-Sheppard Act and its implementing regulations control. See Department of the Air Force Recon., B-250465, B-250783, B-250465.6, B-250783.2, Jun. 4, 1993, 93-1 CPD 431 at note 2. CICA requires that the agencies procure goods and services through a full and open competitive process unless a noncompetitive procedure is authorized by statute. 10 U.S.C. § 2302, 2304(a)(1). The Randolph-Sheppard Act is a statutory exception to CICA within the meaning of the "savings clause" set forth at 10 U.S.C. § 2304(a)(1) and 10 U.S.C. § 2304(c)(5), as implemented by FAR 6.302-5. See NISH v. Rumsfeld, 188 F. Supp. 2d 1321, 1326 (Dist. N.M. 2002) (holding that the Randolph-Sheppard Act has been reasonably interpreted as a statute authorizing procurement, therefore falling within the savings clause of CICA). Consequently, the open competition requirements of CICA do not apply to the Randolph-Sheppard Act. NISH v. Cohen, 247 F.3d 197 (4th Cir. 2001).

Here, Army regulations (like the DOE and DOD regulations) specifically permit contracting officials to acquire services through either direct negotiations or competitive procedures and leaves the decision up to the discretion of the contracting officer. Army Regulation (AR)

210-25(6)(b)(2), Vending Facility for the Blind on Federal Property (June 30, 2004). Therefore, because the Army was not required to issue the solicitation competitively, B&P never possessed a statutory right to compete for the contract and cannot establish that it was irreparably harmed by the loss of such a right.

### 2. B&P Cannot Show It Has Suffered Irreparable Harm

Even if the Court were to hold that B&P possessed a statutory right to compete for full food service contracts, B&P nonetheless has failed to demonstrate that it would be irreparably injured. B&P argues that "if it is excluded from providing the food services at Fort Gordon, B&P will lose the opportunity to compete for the contract award and will lose profits thereunder." Pl. Br. at 30.

The fact that a plaintiff may not receive all of the Government business it desires does not create a right to insist that the Government offer it more or require that the Court interfere with the discretionary policy decisions of Government agencies. Data Transformation Corp. v. United States, 13 Cl.Ct. 165, 175, n. 8 (1987) (citing Jets Services, Inc. v. Hoffman, 420 F. Supp. 1300, 1306 07 (M.D. Fla.1976)). B&P's cursory claims of economic loss do not satisfy its burden of demonstrating

irreparable harm. It is “well settled that economic loss does not, in and of itself, constitute irreparable harm.” Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir.1985) (per curiam). B&P makes generalized statements that if the contract award goes forward and it is not selected, it will lose profits and the right to compete. Pl. Br. at 30-31. Yet B&P makes no specific showing, through declarations or otherwise, of the degree to which it would be affected by not being awarded these contracts. The submissions accompanying B&P's complaint state nothing about B&P's gross revenues and the percentage of those revenues that this contract represents, or whether B&P would be substantially damaged by the failure to receive these contracts. Moreover, it may well be the case that there may be other opportunities (including government contracting opportunities) that would be available to B&P even if it was not selected on the solicitation that could compensate for the lost revenue and work. In the absence of a sworn declaration from an appropriate official at B&P addressing these questions, there is no basis upon which this Court may make the necessary finding of irreparable harm.

### C. Permanently Enjoining The Procurement Would Not Serve The Public Interest

B&P argues that entry of a permanent injunction would not "harm public interest." Pl. Br. at 31. Here, imposition of a permanent injunction would defeat Congressional intent and curtail 70 years of effort to serve the public interest by maintaining and enforcing a priority for blind vendors to operate full food service contracts on DOD installations. The Randolph-Sheppard Act was specifically enacted in 1936 to protect the public interest by enabling blind vendors to operate vending stands in federal buildings. Act of June 20, 1936, Pub. L. No. 74-732, § 1, 49 Stat. 1559. It was substantially amended in 1974 after reports that the spirit of the Act was not effectively implemented by the federal agencies. Act of Dec. 7, 1974, Pub. L. No. 93-516, Title II, § 201, 88 Stat. 1622. The legislative history demonstrates that one of the main concerns Congress was attempting to address in 1974 was the failure of many Federal agencies to comply with the Randolph-Sheppard Act. “DOD installations were specifically targeted in several discussions regarding compliance with the RSA and methods of obtaining better compliance.” S. Rep. No. 93-937, 93rd Cong. 2d Sess. 10-13, 17 (1974); Randolph-Sheppard Act for Blind Amendments of 1973:

Hearings on S.2581 Before the Subcommittee on the Handicapped of the Comm. On Labor and Public Welfare, 93d Cong. 31-21 (1973).

D. **The Balance Of Harms Favors The Government**

B&P claims the Army is not being harmed because "[t]he Army has already extended the existing contract by two months, which indicates that the Army will not be injured by the continuation of the existing contract". Pl. Br. at 31. However, the Army and the public are being harmed to the extent that the SLA is denied the opportunity to begin contract performance as envisioned in the Randolph-Sheppard Act.

Furthermore, allowing the incumbent's contract to continue for an indefinite period would unreasonably delay the Army's procurement of vital services at Fort Gordon. Continued delay would disrupt the procurement process and would prevent the Army from awarding the contract in accordance with the schedule set for the turnover of the vital tasks currently being performed by the incumbent contractor. Because the current contracts provide only for an extension of up to six months pursuant to FAR § 52.217 8, an additional delay -- on top of the voluntary delay already institute by the Army -- may push the schedule for the procurements beyond the period for extending the existing contracts. Such

a delay risks incurrence of fiscal law violations as the Army is required to spend money only in the allocated time and for the allocated purpose. For these reasons, the balance of harm prong of the preliminary injunction analysis does not strongly weigh in favor of enjoining the ongoing solicitation process.

## IV. The Court Cannot Direct The Award Of The Contract To B&P

B&P requests declaratory relief in the nature of an order from the Court directing the Army to award the full food services contract to B&P. Such an order is outside the Court's authority. It is settled that the Court does not possess jurisdiction to consider claims for specific performance. Logan Canyon Cattle Assoc. v United States, 34 Fed. Cl. 165 (1995) (citing Nicholson v. United States, 29 Fed. Cl. 180, 185 (1993)); United States v. Testan, 424 U.S. 392, 397 98, (1976); Cleveland v. United States, 9 Cl. Ct. 741, 746 (1986). While this Court may exercise its authority, pursuant to 28 U.S.C. § 1491(a)(3), to grant injunctive relief in appropriate pre award claims, the remedies do not extend to specific performance.

## V. The Court Does Not Possess Jurisdiction To Issue Writs Of Mandamus

B&P's complaint seeks a writ of mandamus directing the Army to award the food services contract to B&P. Compl. at 12. Mandamus

jurisdiction under 28 U.S.C. § 1361 lies exclusively in federal district courts. See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Daluz v. United States, 73 Fed. Cl. 129, 133 (2006). Because this Court does not possess jurisdiction to issue a writ of mandamus, B&P's claim for such relief should be dismissed.

## CONCLUSION

For these reasons, the defendant respectfully requests that the Court grant the Government's motion for judgment upon the administrative record and deny B&P's motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Kenneth D. Woodrow
KENNETH D. WOODROW
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530
Phone: (202) 353-0513
Fax: (202) 514-7976

OF COUNSEL:

CHRISTOPHER L. KRAFCHEK
CPT, JA
Contract & Fiscal Law Division
Trial Attorney, Team III
901 N. Stuart Street, Suite 500
Arlington, VA 22203
Phone: 703-696-2804
Fax: 703-696-1535

December 14, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of December, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kenneth D. Woodrow