# APPENDIX

# EXHIBIT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| **BROWN & PIPKINS, LLC,**<br>**doing business as**<br>**ACSENTIAL SERVICES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **CIVIL ACTION**<br>**FILE NO. 06-732C**<br><br>**Judge Lawrence M. Baskir** |

**AFFIDAVIT**

COUNTY OF FULTON )

STATE OF GEORGIA )

Deidre F. Brown, having been duly sworn, does hereby depose and state as follows:

1. I am the managing member of Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), which is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia. I am over 21 years of age and I make the statements contained in this affidavit based on my personal knowledge and the information available to me. I make the statements contained in this affidavit for use in the above-styled lawsuit.

EXHIBIT A

2. B&P submitted a price proposal of $35,045,235.00 in response to the Department of the Army Solicitation No. W911SE-05-R-0013 ("Solicitation") for full food services requirement at Ft. Gordon, Georgia ("Project").

3. Included in that price proposal is a profit amount in excess of $1,600,000.00 that B&P anticipates it will earn if the contract for the Project is awarded to B&P pursuant to the Solicitation.

4. If the contract is not awarded to B&P for the Project, and is instead awarded to the State Licensing Agency as the Army has indicated it intends to do, B&P would suffer significant hardship in losing the opportunity to earn over $1,600,000.00 in profit. B&P does not presently have another contract to replace the lost profits associated with the Project.

5. B&P has received a solicitation from the Department of the Air Force for cafeteria services at Andrews Air Force Base, Maryland. A copy of a portion of that Solicitation, as amended, is attached hereto at Exhibit A-1. That solicitation indicates that the award of the contract for food services at Andrews Air Force Base will have a preference for the State Licensing Agency for the blind under the Randolph-Sheppard Act. That Solicitation also indicates that "[t]he SLA will receive award if their final proposal revision does not exceed the offer that represents the best value

(as determined by the Contracting Officer after applying its source selection criteria contained in the solicitation) by more than five percent of that offer or one million dollars, whichever is less, over all performance periods required by the solicitation." See Exhibit A-1 attached hereto.

Deidre F. Brown

Sworn to and subscribed before me

this 29th day of December, 2006.

Notary Public

CAROL D. SEFEL NOTARY PUBLIC EXPIRES GEORGIA JUNE 21, 2010 COBB CO

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 5

2. AMENDMENT/MODIFICATION NO.: 0003
3. EFFECTIVE DATE: 28-Dec-2006
4. REQUISITION/PURCHASE REQ. NO.:
5. PROJECT NO. (If applicable):

6. ISSUED BY CODE FA4416
316TH CONTRACTING SQUADRON
1535 COMMAND DRIVE, STE E213
ANDREWS AFB MD 20762-6500

7. ADMINISTERED BY (If other than item 6) CODE
See Item 6

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

CODE | FACILITY CODE

X 9A. AMENDMENT OF SOLICITATION NO. FA4416-07-R-0002
X 9B. DATED (SEE ITEM 11) 08-Dec-2006
10A. MOD. OF CONTRACT/ORDER NO.
10B. DATED (SEE ITEM 13)

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [ ] is extended, [X] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

POC: Gary Branch
301-981-2382

SEE PAGE 2

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
TEL: EMAIL:

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY
(Signature of Contracting Officer)

16C. DATE SIGNED
26-Dec-2006

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

EXHIBIT A-1

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

1. The purpose of this amendment is to incorporate clauses and make corrections to the solicitation.

(a) The Contracting Officer's address on page 25 in FAR Clause 52.233-2 Service of Protest is hereby corrected and changed to: Louis Campbell, 1535 Command Drive, STE E210 Andrews AFB, Maryland 207623.

(b) Page 32 in the Addendum to FAR Clause 52.212-1, 2. Part II Past Performance information paragraph (d) sub paragraph (b) is hereby corrected and changed to sub paragraph (1).

(c) The following clauses are hereby incorporated into the solicitation:
FAR Clauses:

52.203-6 Restriction of Subcontractor Sales to Government
52.203-7 Anti Kickback Procedures
52.222-22 Previous Contracts and Compliance Reports
52.222-25 Affirmative Action Compliance
52.223-13 Certification of Toxic Chemical Release
52.225-13 Restrictions on Certain Foreign Purchases
52.232-1 Payments
52.232-18 Availability of Funds
52.232-22 Limitation of Funds
52.233-3 Protest after Award
52.245.2 Government Property Alt. 1
52.244.6 Subcontracts of Commercial Items
252.232.7007 Limitation of Government's Obligation
316 CONS-014 Incremental Funding

(d) Page 13 Addendum to 52.212-2 the Preference for the State Licensing Agency (SLA) for the Blind is hereby changed to read:

PREFERENCE FOR THE STATE LICENSING AGENCY (SLA) FOR THE BLIND. This acquisition is being conducted in accordance with the Randolph-Sheppard Act. (Public Law (PL) 93-15, as implemented by Air Force Instruction 34-206, Vending Facility Program for the Blind on Air Force Property, DoD Directive 1125.3, Vending Facility Program for the Blind on Federal Property and Section 848 of the National Defense Authorization Act of Fiscal Year 2006. This act gives the SLA priority consideration in award of contracts when (1) the State licensing agency has demonstrated that it can provide such operation at a fair and reasonable price, with food of high quality comparable to that available from other providers of cafeteria services and comparable to the quality and price of food currently provided to military service members; and (2) the State licensing agency's final proposal revision, or initial proposal if award without discussions, is among the highly ranked final proposals revisions with a reasonable chance of being selected for award. The SLA will receive award if their final proposal revision does not exceed the offer that represents the best value (as determined by the Contracting Officer after applying its source selection criteria contained in the solicitation) by more than five percent of that offer, or one million dollars, whichever is less, over all performance periods required by the solicitation.

2. All other terms and conditions remain unchanged.

SUMMARY OF CHANGES

SECTION SF 1449 - CONTINUATION SHEET

SUPPLIES OR SERVICES AND PRICES

The following have been added by reference:

| | | |
|---|---|---|
| 52.203-6 | Restrictions On Subcontractor Sales To The Government | JUL 1995 |
| 52.203-7 | Anti-Kickback Procedures | JUL 1995 |
| 52.222-25 | Affirmative Action Compliance | APR 1984 |
| 52.223-13 | Certification of Toxic Chemical Release Reporting | AUG 2003 |
| 52.232-1 | Payments | APR 1984 |
| 52.232-18 | Availability Of Funds | APR 1984 |
| 52.232-22 | Limitation Of Funds | APR 1984 |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.244-6 | Subcontracts for Commercial Items | FEB 2006 |
| 52.245-2 Alt I | Government Property (Fixed-Price Contracts) (May 2004) - Alternate I | APR 1984 |
| 252.232-7007 | Limitation Of Government's Obligation | MAY 2006 |
| 316 CONS-014 | Incremental Funding | DEC 2006 |

The following have been modified:

52.212-2 EVALUATION—COMMERCIAL ITEMS (JAN 1999)

(a) The government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

(1) PAST PERFORMANCE
(2) PRICE

Past Performance is significantly more important than Price when being evaluated.

(b) Options. The government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. The government may determine that an offer is unacceptable if the option prices are significantly unbalanced. Evaluation of options shall not obligate the government to exercise the option(s).

(c) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offer within the time for acceptance specified in the offer, shall result in a binding contract without further action be either party. Before the offer's specified expiration time, the government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

Addendum to 52.212-2:

PREFERENCE FOR THE STATE LICENSING AGENCY (SLA) FOR THE BLIND. This acquisition is being conducted in accordance with the Randolph-Sheppard Act. (Public Law (PL) 93-15, as implemented by Air Force Instruction 34-206, Vending Facility Program for the Blind on Air Force Property, DoD Directive 1125.3, Vending Facility Program for the Blind on Federal Property and Section 848 of the National Defense Authorization Act of Fiscal Year 2006. This act gives the SLA priority consideration in award of contracts when (1) the State licensing agency has demonstrated that it can provide such operation at a fair and reasonable price, with food of high quality comparable to that available from other providers of cafeteria services and comparable to the quality and price of food currently provided to military service members; and (2) the State licensing agency's final proposal revision, or initial proposal if award without discussions, is among the highly ranked final proposals revisions with a reasonable

chance of being selected for award. The SLA will receive award if their final proposal revision does not exceed the offer that represents the best value (as determined by the Contracting Officer after applying its source selection criteria contained in the solicitation) by more than five percent of that offer, or one million dollars, whichever is less, over all performance periods required by the solicitation.

**BASIS FOR CONTRACT AWARD:** This is a competitive selection in which competing offerors past and present performance history will be evaluated on a basis significantly more important than price. By submission of its offer in accordance with instructions provided in clause 52.212-1, Instructions To Offerors, the offeror accedes to the terms of this model contract and all such offers shall be treated equally except for their prices and performance records. The evaluation process shall proceed as follows:

A. Initially offers shall be ranked according to price, including option prices. An offeror's proposed prices will be determined by multiplying the quantities identified in the Pricing Schedule by the unit price for each item to confirm the extended amount for each.

B. Using questionnaires, the contracting officer shall seek recent and relevant performance information on the lowest five (5) to seven (7) offerors based on (1) references provided by the offeror and (2) data independently obtained from other government and commercial sources. Recent past performance include those contracts performed within the last three (3) years. Relevant performance includes performance of efforts involving Full Food Service that are similar or greater in scope, magnitude and complexity than the effort described in this solicitation. The government reserves the right to seek information on higher priced offerors if none of the lower priced offerors receive a "High Confidence" performance assessment rating. The purpose of the past performance evaluation is to allow the government to assess the offeror's ability to perform the effort described in the solicitation, based on the offeror's demonstrated present and past performance. The assessment process will result in an overall performance confidence assessment rating of High Confidence, Significant Confidence, Satisfactory Confidence, Unknown Confidence, Little Confidence, or No Confidence, as defined in AFFARS Mandatory Procedures 5315.3, Table 3. Past performance regarding predecessor companies, key personnel who have relevant experience, or subcontractors that will perform major or critical aspects of the requirement will not be considered as highly as past performance information for the principal offeror. Offerors with no relevant past or present performance history shall receive the rating of "Unknown Confidence", meaning the rating is treated neither favorably nor unfavorably.

C. In evaluating past performance, the government reserves the right to give greater consideration to information on those contracts deemed most relevant to the effort described in this solicitation.

D. If the SLA's offer is considered to be within the final competitive range, this contractor will receive preference for contract award as stated above. If a contractor operating under the Randolph-Sheppard Act does not fall within the final competitive range, the government will proceed as follows: If the lowest price evaluated offer is judged to have a "High Confidence" performance rating, that offer represents the best value for the government and the evaluation process stops at this point. Award shall be made to that offeror without further consideration of any other offers.

E. In the event that the government does not make an award pursuant to paragraph D Above, the government reserves the right to award a contract to other than the lowest priced offer if that offeror is judged to have a performance assessment rating of "Significant Confidence" or lower. In that event, the Source Selection Authority shall make an integrated assessment best value award decision.

F. Offerors are cautioned to submit sufficient information and in the format specified in the proposal preparation instructions. Offerors may be asked to clarify certain aspects of their proposal or respond to adverse past performance information to which the offeror has not previously had an opportunity to respond. Adverse past performance is defined as past performance information that support a less than satisfactory rating of any evaluation element or any unfavorable comments received from sources without a formal rating system. Communication conducted to resolve minor or clerical errors will not constitute discussions and the contracting officer reserves the right to award without the opportunity for proposal revision.

G. The government intends to award a contract without discussions with respective offerors. The government, however, reserves the right to conduct discussions if deemed in its best interest.

52.233-2 SERVICE OF PROTEST (AUG 1996)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from Louis Campbell, 316th Contracting Squadron, 1535 Command Drive, Suite 210, Andrews AFB, MD 20762.

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of provision)

(End of Summary of Changes)

# EXHIBIT B

# Section 848 of the National Defense Authorization Act for Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts

## Joint Report to Congress

August 29, 2006

Department of Defense
Department of Education
Committee for Purchase From People Who Are Blind or Severely Disabled

EXHIBIT B

Pursuant to section 848 of the National Defense Authorization Act of Fiscal Year 2006, the Department of Defense (DOD), the Department of Education (ED), and the Committee for Purchase From People Who Are Blind or Severely Disabled (CFP) submit this report to Congress which provides a joint policy statement for the application of the Javits-Wagner-O'Day (JWOD) program and the Randolph-Sheppard Act (R-SA) program to the operation and management of military dining facilities.

Department of Defense:

Mr. Kenneth J. Krieg
Under Secretary of Defense for
Acquisition, Technology and Logistics

9/1/06
Date

U.S. Department of Education:

Mr. John H. Hager
Assistant Secretary for Special Education and
Rehabilitative Services

8/31/06
Date

Committee for Purchase From People Who Are Blind or Severely Disabled:

Mr. Andrew D. Houghton
Chairperson

8-31-2006
Date

## CONTRACTING FOR MILITARY DINING FACILITY OPERATION, FOOD SERVICES AND OTHER SUPPORT SERVICES

Section 848 of the National Defense Authorization Act of Fiscal Year 2006 (Public Law 109-163) requires the Department of Defense (DOD), the Department of Education (ED), and the Committee for Purchase From People Who Are Blind or Severely Disabled (CFP) to develop a joint statement of policy concerning application of the Javits-Wagner-O'Day (JWOD) Act (41 U.S.C. 48 *et seq*) and the Randolph-Sheppard Act (R-SA) (20 U.S.C. 107 *et seq*) to contracts for operation and management of military dining facilities and contracts for food services, mess attendant and other services supporting the operation of military dining facilities. A taskforce comprised of representatives from DOD, ED, and the CFP met weekly and engaged in almost daily discussions by electronic mail and telephone to develop a joint statement of policy pursuant to Section 848. The taskforce also solicited public comments through a notice in the Federal Register, and approximately 240 comments were received. The taskforce memorialized their agreement in the following joint statement of policy.

## JOINT STATEMENT OF POLICY

It is the joint policy of the DOD, ED and the CFP (hereinafter "the Parties") that —

1. Defense appropriations shall be used to accomplish the defense mission. This mission shall be carried out by providing value and accountability to the taxpayers as well as supporting socioeconomic programs to the maximum extent practicable under the law. The DOD has a military mission to maintain some level of in-house food service and military dining facility managerial capabilities to enable forward deployment operations, training, rotation and career progression. Contract services must enable DOD to feed the troops high quality food at a cost effective price.

2. The Secretaries of the Military Departments concerned, as defined in 10 U.S.C. §101(a)(9), shall have the discretion to define requirements (e.g., contract statements of work, assignment of tasks and functions among workers in a facility) and make procurement decisions concerning contracting for military dining support services and the operation of a military dining facility and shall ensure that procurement decisions support the readiness of the Armed Forces.

3. The Parties recommend that legislation (See Attachment 1) should be submitted that creates a "no-poaching" provision maintaining the current distribution of contract opportunities as outlined in this paragraph. The Procurement List protects the jobs of people who are blind and/or severely disabled, and does not conflict with the R-SA opportunities of blind vendors who may employ these workers through a JWOD nonprofit agency. The R-SA shall not apply to any requirement for military dining support services identified on the Procurement List, or to any contract, purchase order, agreement or other arrangement for operation of a military dining facility that is a requirement identified on the Procurement List and was being provided by a JWOD nonprofit agency as of the date of enactment of the "no-poaching" provision. The JWOD

shall not apply at the prime contract level to any contract for operation of a military dining facility entered into with a State licensing agency as of the date of enactment of the "no-poaching" provision, for example, Fort Lee, Fort Carson, and Kirtland AFB prime contracts. As contracts with State licensing agencies expire, the DOD will solicit competitive proposals under the R-SA.

4. For contracts not covered by the "no-poaching" provision:

a. The contracts will be competed under the R-SA when the DOD solicits a contractor to exercise management responsibility and day-to-day decision-making for the overall functioning of a military dining facility, including responsibility for its staff and subcontractors, where the DOD role in the contract is generally limited to contract administration functions described in the Federal Acquisition Regulation (FAR) Part 42 (48 CFR, Chapter 1, Part 42).

b. In all other cases, the contracts will be set aside for JWOD performance (or small businesses if there is no JWOD nonprofit agency capable or interested) when the DOD needs dining support services, (e.g., food preparation services, food serving, ordering and inventory of food, meal planning, cashiers, mess attendants, or other services that support the operation of a dining facility) where DOD food service specialists exercise management responsibility over and above those contract administration functions described in FAR Part 42.

c. The presence of military personnel performing dining facility functions does not necessarily establish the inference that the Government is exercising management responsibility over that particular dining facility.

5. In accordance with FAR Part 8, if dining support services are on or will be placed on the Procurement List, any State licensing agency that is awarded a contract for operation of that military dining facility under the R-SA shall award a subcontract for those services.

6. In order to promote economic opportunities for blind vendors and to increase the number of blind persons who are self-supporting, the R-SA requires that State licensing agencies provide blind persons education, training, equipment and initial inventory suitable for carrying out their licenses to operate vending facilities in federal buildings. The Parties believe that the R-SA program should encourage to the maximum extent possible the employment of people who are blind. Accordingly, through its rule-making procedures ED will encourage State licensing agencies who assert the R-SA "priority" for a multi-facility contract for operation of military dining facilities to assign at least one blind person per military dining facility in a management role.

7. The DOD shall continue to be able to use the "Marine Corps model" for regional contracts for operation of military dining facilities at several installations or across State lines. In this model, the DOD may designate individual dining facilities for subcontract opportunities under the Small Business Act, JWOD or other preferential procurement programs, and may designate some facilities in which military food service specialists may train or perform cooking or other dining support services in conjunction with contractor functions. State licensing agencies are eligible under the R-SA to bid on contracts based upon this model.

8. METHOD OF AFFORDING THE RANDOLPH-SHEPPARD "PRIORITY."— Defense Department contracts for the operation of a military dining facility must be awarded as the result of full and open competition, unless there is a basis for direct negotiations (e.g., the only source available to provide the services is a State licensing agency, or an exception to the Competition in Contracting Act applies). When competing such contracts, contracting officers shall afford State licensing agencies a priority under the R-S Act when (1) the State licensing agency has demonstrated that it can provide such operation at a fair and reasonable price, with food of high quality comparable to that available from other providers of cafeteria services and comparable to the quality and price of food currently provided to military service members; and (2) the State licensing agency's final proposal revision, or initial proposal if award is made without discussions, is among the highly ranked final proposal revisions with a reasonable chance of being selected for award. In this context, the term "final proposal revision" is a reference to the description in FAR Subpart 15.307. The term "fair and reasonable price" means that the State licensing agency's final proposal revision does not exceed the offer that represents the best value (as determined by the contracting officer after applying its source selection criteria contained in the solicitation) by more than five percent of that offer, or one million dollars, whichever is less, over all performance periods required by the solicitation.

9. The contracting officer may award to other than the State licensing agency when the head of the contracting activity determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary of Education approves the determination in accordance with the R-SA.

10. The Parties will promptly implement complementary regulations reflecting the joint policy herein. In addition, the Parties believe that statutory changes as described in Attachment 1 will implement the joint policy regarding "no poaching." We believe these actions will significantly clarify and improve the application of JWOD and R-SA to military dining facilities contracts.

**Attachment 1 to the Section 848 Joint Report to Congress**

**SEC. ___. CONTRACTING WITH EMPLOYERS OF PERSONS WITH DISABILITIES.**

(a) INAPPLICABILITY OF THE RANDOLPH-SHEPPARD ACT TO CONTRACTS AND SUBCONTRACTS FOR MILITARY DINING FACILITY SUPPORT SERVICES COVERED BY JAVITS-WAGNER-O'DAY ACT.--The Randolph-Sheppard Act (20 U.S.C. 107 et seq.) does not apply to full food services, mess attendant services, or services supporting the operation of a military dining facility that, as of the date of enactment of this section, were on the Procurement List established under section 2 of the Javits-Wagner-O'Day Act (41 U.S.C. 47).

(b) INAPPLICABILITY OF THE JAVITS-WAGNER-O'DAY ACT TO CONTRACTS FOR THE OPERATION OF A MILITARY DINING FACILITY.--(1) The Javits-Wagner-O'Day Act (41 U.S.C. 46 et seq.) does not apply at the prime contract level to any contract entered into as of the date of enactment of this section with a State licensing agency under the Randolph-Sheppard Act (20 U.S.C. 107 et seq.) for the operation of a military dining facility.

(2) The Javits-Wagner-O'Day Act shall apply to any subcontract entered into for food services, mess attendant services, and other services supporting the operation of a military dining facility.

(c) DEFINITIONS.

(1) In this section, the term "State licensing agency" means any agency designated by the Secretary of Education under section 2(a)(5) of the Randolph

Sheppard Act (20 U.S.C. 107a (a)(5)).

(2) In this section, the term "military dining facility" means a facility owned, operated, leased, or wholly controlled by the Department of Defense and used to provide dining services to members of the armed forces, including a cafeteria, military mess hall, military troop dining facility or any similar dining facility operated for the purpose of providing meals to members of the armed forces.

## Section-by-Section Analysis

This section would help to protect both Javits-Wagner-O'Day Act (JWOD) and Randolph-Sheppard Act (R-SA) beneficiaries by treating military dining facility contracts entered into as of the date of enactment of this section under both Acts in a mutually exclusive manner for DoD procurement purposes. This will also simplify Department of Defense (DoD) contracting by clarifying the application of the JWOD and R-SA programs to current military dining facility in a more effective way than the similar language in the FY04, FY05, and FY06 National Defense Authorization Acts.

Under this section, those contracts that are currently performed by R-S sources will remain in the R-S program and those that are currently performed by JWOD sources will remain in the JWOD program. When the current R-S contracts expire, they will continue to be available for State licensing agencies to assert a "priority" for the prime contract.