IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| BROWN & PIPKINS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-732 |
| | ) | |
| THE UNITED STATES, | ) | (Judge Baskir) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSOLIDATED STATEMENT OF**
**UNCONTROVERTED FACTS IN SUPPORT OF**
**CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims and ¶ 12 of the Court's November 1, 2006 Special Procedures Order, plaintiff, Brown & Pipkins, LLC, and defendant, the United States, state as follows:

1. [B&P] **The Army Southern Region Contracting Center East, Army Contracting Agency at Fort McPherson, Georgia issued the Solicitation No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project") on or about February 22, 2006.** (Administrative Record ("AR") 1-49, 50-63 (Tabs 1, 2, & 3).

2. [Defendant] **The solicitation required vendor services to**

**handle or participate in food preparation, ordering food or supplies, and overall dining facility management. The solicitation had a closing date of April 18, 2006.** AR1.

3. [B&P] **The Solicitation provides that award of the contract is to be made to a certified minority business enterprise subject to the provisions of Section 8(a) of the Small Business Act, as amended (15 U.S.C. § 637(a)) ("8(a)"). The Solicitation states that FAR 52.219-18 is included in the Solicitation.** AR28.

4. [Defendant] **The solicitation was subject to the 20 U.S.C. § 107, the Randolph-Sheppard Act, and issued as an Small Business Act section 8(a) set-aside pursuant to 48 C.F.R. § 52.219-18.** AR28.

5. [B&P] **FAR 52.219-18 addresses the preference for 8(a) contractors and does not address a preference for blind vendors under the Randolph-Sheppard Act.** 48 C.F.R. § 52.219-18.

6. [B&P] **The solicitation also provides that the Randolph-Sheppard Act would apply to provide a preference to qualified nominees of the state licensing agency ("SLA") for the blind pursuant to the Randolph-Sheppard Act, 20 U.S.C. 107, pursuant to present Department of Defense and Army policy.** AR2.

7. [Defendant] **The solicitation contains language notifying all prospective offerors that it is subject to the Randolph-Sheppard Act and explicitly states that the Army would enter into direct negotiations with a SLA if the Army determined the SLA's proposal to be technically acceptable. The solicitation further states that the Georgia SLA had expressed interest in the procurement.** A2.

8. [B&P] **The Army's Source Selection Plan states that award is to be made to the "offeror whose proposal is evaluated as technically acceptable with the lowest evaluated cost; however, priority and mandatory preference will be given SLA offeror whose proposal is considered technically acceptable and price is determined to be reasonable."** AR76.

9. [Defendant] **The Army Source Selection Plan further states that, "[i]n accordance with FAR Provision 52.215.1. . . , the Government reserves the right to evaluate proposals and award a contract without discussions based solely upon initial offers and without providing the opportunity to offerors to submit revised proposals; therefore, each initial offer must contain the offeror's best terms from a technical and cost standpoint."** AR76.

10. [B&P] **The Solicitation ~~is subject to~~ DOD Directive 1125.3.** AR2.

Defendant objects to the phrase “is subject to” because it states a legal conclusion. Defendant agrees that DOD Directive 1125.3 was part of DOD policy applicable at the time the Army released the solicitation.

11. [Defendant] **~~The Army prepared an Independent Government Cost Estimate for the full food services contract at Fort Gordon, GA and determined that the contract would have an anticipated maximum cost of $47,544,350.00.~~** AR78-89.

B&P disagrees that an independent government estimate yielded a estimate of $47,544,350.00 for the Fort Gordon food services contract. It is unclear whether AR78-89 applies to the Fort Gordon contract. Furthermore, the amounts shown at AR79-83 do not yield a total amount of $47,544,350.00. AR79-83.

12. [B&P] **The SLA is not a small business enterprise subject to Section 8(a) of the Small Business Act, because it is a not-for-profit state agency and not a minority contractor.** AR985, 987.

13. [B&P] **The SLA's proposed blind vendor ~~needed to subject its proposal to the RSA~~ is Franklin Hulsey.**

Defendant states that Franklin Hulsey is the blind vendor that has been certified by the Georgia Department of Labor in its capacity as the State Licensing Agency.

14. [B&P] **The Army's Price/Cost Analysis Report states, "[t]he actual contractor performing the work is Blackstone Consulting, Inc. . . . ."** AR903.

Defendant agrees, but states that the following is a complete recitation of the quoted language:

> Accounting System - The actual contractor performing the work is Blackstone Consulting, Inc., and the accounting system is operational and has been determined acceptable to support cost-type contracts. Audit Report No. 04231-2006F17740022, dated 25 May 2006, is attached as Exhibit A-4.

AR903.

15. [B&P] **The Army's Post Negotiation Memorandum states, "[t]he report concluded that Blackstone Consulting, Inc. (BCI) will be the actual contractor performing the services proposed by the SLA . . .."** AR916.

Defendant agrees, but states that the following is a complete recitation of the quoted language:

> The Price/Cost Analysis Report indicated that an audit was conducted by the Defense Contract Audit Agency to review the adequacy of the offeror's accounting system. The report concluded the Blackstone Consulting, Inc., (BCI) will be the actual contractor performing the services proposed by the SLA and their accounting system is operational and is determined acceptable to support cost-type contracts.

AR916.

16. [B&P] ~~**The SLA's proposed "Onsite Organizational Chart" shows that the entire operation of the SLA's proposed services is under the control of Blackstone Consulting, Inc. ("BCI"), not Mr. Hulsey. The organizational chart states that "Hulsey & Blackstone Consulting, Inc." are the top of the organization but Mr. Hulsey has no operational control as all personnel are under "BCI General Managers".**~~ AR100.

Defendant disagrees because it states a legal conclusion and because the plain language of the organizational chart shows that Frank Hulsey is at the top of the chart and that all employees are subordinate to him, and, therefore, under his operational control.

17. [B&P] **The Quality Control & Safety Manager and the Assistant Food Service Manager designated by the SLA as the "key**

**personnel" whose resumes are attached to the proposal would be employees of BCI. AR97-99. The Executive Summary from Volume I of the SLA's proposal also emphasizes BCI's role on other food service projects to show cafeteria experience.** AR1056-1066.

18. [B&P] ~~**BCI is not a blind vendor. The SLA's proposed services, will not be performed by a blind vendor, by the Army's own recognition.**~~ AR903; AR916.

Defendant disagrees. The Army did not "recognize" that Frank Hulsey, as the SLA-licensed blind vendor, would not have operational control of the food services contract.

19. [B&P] **B&P is a small business minority enterprise certified pursuant to Section 8(a) of the U.S. Small Business Act.** AR1048, paragraph 14.

20. [Defendant] **BCI is a teaming partner with the licensed blind vendor, Frank Hulsey, who will perform the SLA's proposed services.** AR903.

21. [B&P] ~~**The Army did not evaluate the SLA's proposal to ensure that the person operating the service under the SLA's proposal is a state licensed blind person.**~~ AR97-99, 903, 916.

Defendant disagrees upon the grounds that the Army determined the SLA's proposal to be technically acceptable and that the mandatory preference pursuant to the Randolph-Sheppard Act was applicable to the SLA's proposal. AR916. Defendant further disagrees to the extent that the proposed statement implies a legal obligation to "ensure that the person operating the service under the SLA's proposal is a state-licensed blind person."

22. [Defendant] **The Army received five (5) proposals in response to the solicitation.** AR899.

23. [B&P] **In May 2006, the Army's Evaluation Board determined that only two of the proposals were technically acceptable, the proposals submitted by B&P and by the SLA.** AR899; AR912, 916, 919; AR985.

24. [Defendant] **The Source Selection Evaluation Board found that "[t]here were no weaknesses or deficiencies noted in the SLA's proposal."** AR899.

B&P agrees to the extent AR899 addresses the technical proposal but disagrees that there were no errors in the SLA's cost proposal as discussed in paragraphs 29 and 31 below.

25. [B&P] **B&P's proposal price for the base year and four option years was $35,045,235.00.** AR899, 901-02.

26. [B&P] ~~**B&P's proposal includes profit of over $1,600,000.00. Exhibit A to B&P's December 29, 2006 Response Memorandum.**~~

Defendant disagrees with this assertion due to lack of information about B&P's alleged profits.

27. [B&P] **The Army's Post-Negotiation Memorandum indicates that the SLA's proposal was $40,723,007.00, which is $5,677,772.00 (over 16 percent) higher than the price submitted by B&P.** AR919.

28. [Defendant] **On June 9, 2006, after completion of a price/cost analysis of the acceptable proposals submitted in response to the solicitation, the Army produced a Report of Findings that specifically addresses each of the submitted proposals.** AR901-908.

29. [B&P] **The Army's Price/Cost Analysis Report of Findings in the Administrative Record indicates that the SLA's proposed pricing was unclear and its proposal did not include all information required in the Solicitation, including total proposed hours, the**

**amount of $1,200,000 for contractor furnished materials, or a computation of fee, so the Army could not tell from the SLA's proposal what the SLA's actual proposed amount was. "The proposed amount could be anywhere from approximately $40,723,007 (including phase-in costs) to approximately $41,913,031 if contractor furnished materials, base fee, and award fee are added to amounts provided by the offeror."** AR902-04.

30. [Defendant] **The Army noted minor deficiencies in the proposal~~s~~ of ~~both~~ the SLA ~~and B&P~~. ~~For example,~~ the Army found that B&P "did not prepare budgetary data for the entire performance period of this effort."** AR902.

B&P disagrees with the first sentence as to B&P's proposal. The complete recitation of the quoted language states:

> The offeror proposed 6% of this indirect cost element. The basis of application is total cost input and the rate has been verified by DCAA, with qualifications, due to the fact that the offeror did not prepare budgetary data for the entire performance period of this effort. Audit Report No. 1101-2006P27000015, dated 5 June 2006, relative to indirect rates, as attached as Exhibit A-2 to this report.

31. [Defendant] **With respect to the SLA's proposal, the Army found that the "total proposed amount is an item that must be discussed with the [SLA]."** AR904.

32. [Defendant] **The Army sought to ~~clarify each~~ proposal. In B&P's case, the Army independently verified the general and administrative expenses by relying upon a Defense Contracting Audit Agency audit report.** AR902.

B&P disagrees that the Army had to "clarify" B&P's proposal. B&P's proposal information was clear and the Army's review of DCAA audit information was simply used to verify information in B&P's proposal. B&P agrees that the Army had to obtain additional pricing information regarding the SLA's proposal because that proposal did not contain all information required by the Solicitation.

33. [Defendant] **In the SLA's case, the Army communicated with the SLA to ~~"clarify issues that were found in the cost/pricing that was submitted" and~~ determined that the SLA's most probable cost estimate was $41,791,049. This variance constituted a 2.7% increase between the proposed cost and the most probable cost estimate.**

AR916-17.

B&P does not believe the quoted language is found at AR917.

34. [B&P] **The Army's most probable cost estimate for the SLA's proposal was $41,791,049, which is $6,745,814.00 (19.25%) higher than B&P's proposed price. Thus, B&P's proposed price was at least $5,677,772.00 lower than the SLA's and possibly as much as $6,745,814.00.** AR919.

35. [B&P] **The Army awarded the contract to the SLA based on the understanding that the RSA supersedes the provisions of Section 8(a) of the Small Business Act.** AR986.

36. [B&P] **The Contracting Officer ~~acknowledges that award is appropriate to an SLA under the RSA if the SLA's offer is determined to be within the competitive range. She~~ states, "if there is a reasonable expectation of getting a minimum of two Small Business offers . . ., the RFP can be issued as a set-aside, but it shall include language stating that if an SLA submits a proposal that is determined to be within the competitive range, then negotiations will be exclusively with the SLA."** AR986.

Defendant disagrees to the extent that the contracting officer has

"acknowledged" anything and states that the full text of her statements in the administrative record is the best evidence of the agency's reasons for its actions.

37. [Defendant] **The following is a complete recitation of the quoted language:**

> **Full Food Services (FFS) for military installations fall under the Randolph-Sheppard Act (RSA) and all awards that are made for FFS services are to be governed by this law. RSA is a federal law that establishes a preference in favor of firms operated by blind persons for various vending services on installations operated by Executive Branch Agencies. Within the Department of Defense, dining facilities are covered by the RSA. As a result of a GAO Decision, Intermark, B-290925 (10/23/02), it is clear that when the conditions are present under which small business set-aside is required, there is no conflict for the RSA preference to also be applied. Therefore, if there is a reasonable expectation of getting a minimum of two small business offers, or any subgroup therein, ie., 8(a), HUBZone, etc., the RFP can be issued as a set-aside, but it shall include language stating that if an SLA submits a proposal that is determined to be within the competitive range, then negotiations will be exclusively with the SLA. This is clearly what happened. There were two separate locations within the RFP which stated if an SLA submits a proposal that is determined to be technically acceptable, then negotiations will be exclusively**

**with the SLA.**

AR986.

B&P disagrees with the Contracting Officer's Statement that the Army applied a competitive range analysis because the Army has acknowledged that it did not apply a competitive range analysis as noted in paragraphs 38 and 39 below. Also, B&P believes the quoted material regarding the interpretation of the GAO decision, <u>Intermark</u>, is not appropriate for a statement of facts because it is a legal conclusion asserted by the Army.

38. [B&P] ~~**The Army acknowledges that it awarded the contract to the SLA without determining that the SLA's proposal fell within any competitive range.**~~ **The Contracting Officer states, "[n]o competitive range was established. In this case, the offeror had to be technically acceptable to be further considered. Cost/pricing had not been evaluated for any proposals as yet."** AR987.

Defendant disagrees that the Army ever "acknowledged" that it made award to the SLA without determining it was within the competitive range. Defendant asserts that the quoted language is referring to the fact that all proposals had to be technically acceptable before being further evaluated.

39. [B&P] **The Contracting Officer states in the Post-**

**Negotiation Memorandum, "because the solicitation indicated that award without discussions was intended and the Contracting Officer has determined that discussions are not necessary, a competitive range was not established; . . .."** AR919.

40. [Defendant] **The following is a complete recitation of the quoted language:**

> **A list of offerors in the competitive range. Pursuant to SRIM 05-11, Implementation of ACA Policy Memo P006, Randolph-Sheppard Act Policy, because the solicitation indicated that award without discussions was intended and the Contracting Officer has determined that discussions are not necessary, a competitive range was not established; however, following is a depiction of each technically acceptable offeror's proposed cost.**

AR919.

41. [Defendant] **The contracting officer reviewed the source selection evaluation report and the price/cost analysis and determined that "[t]he proposals submitted by the SLA and [B&P] were the only acceptable proposals, so in essence, they were considered the competitive range."** AR985.

B&P disagrees with the Contracting Officer's conclusory statement

when she has acknowledged that the Army did not establish a competitive range as noted in paragraphs 38 and 39 above.

42. [B&P] ~~**The Contracting Officer has acknowledged that the price difference between B&P's proposal and the SLA's proposal was not considered.**~~ AR986.

Defendant disagrees to the extent that the contracting officer "acknowledged" that the price difference between the proposals was not considered. The administrative record itself is the best evidence of the agency's reasons for its actions.

43. [Defendant] **The contracting officer considered cost and price, including the cost difference between the proposals of B&P and the SLA. The contracting officer stated, in response to the allegation that the SLA could not fall within a reasonable competitive range, the following:**

> **Because of the process that was used (Low Cost Technically Acceptable) cost/price was not a factor. The first hurdle that had to be cleared was whether the proposal submitted by each offeror was technically acceptable. Cost/price was not evaluated at this point. Once the Technically Acceptability was established then pricing was evaluated. The SLA's proposal and Acsential Services (Brown & Pipkins) proposal**

> **were the only ones that were considered technically acceptable. This is the point when cost/pricing was evaluated. This is also the point when the Government considered that the RSA was to take effect. Also, Army Contracting Agency (ACA) Policy Memo P0006, Randolph-Sheppard Act (RSA) Policy, states that cost/pricing submitted by the SLA does not have to be the lowest, only that they are considered reasonable and the Government considered the pricing reasonable when evaluated.**

AR986, Tab 23.

B&P disagrees that there is any evidence that the costs/price differential between B&P's and the SLA's proposal was considered in deciding to award to the SLA. The language quoted above does not state that the cost/price differential was considered and, in fact, indicates that the Army only had to consider whether the SLA's price was reasonable regardless of whether it was the lowest price.

44. [Defendant] **The contracting officer performed a price/cost analysis of the SLA's proposal to determine if it was reasonable and realistic. She compared the SLA's price to the independent Government cost estimate of $47,544,350 and to the B&P’s proposed costs, and to the incumbent's total estimated contract cost. The**

**contracting officer found the SLA's price to be reasonable and realistic.** AR918-919.

45. [Defendant] **The Army awarded the contract to the SLA on August 17, 2006.** AR921.

46. [B&P] ~~**The Army awarded the contract to the SLA in August 2006 even though the Army: (a) did not establish a competitive range for the Solicitation (AR Tab 14, page 919), (b) did not find that the SLA's proposal was within a competitive range (AR Tab 14, page 919), and (c) did not consider the difference in the SLA's and B&P's prices in determining whether the SLA's proposal fell within a reasonable competitive range.**~~ AR986.

Defendant disagrees because each of B&P's purported factual assertions are legal conclusions.

47. [B&P] **B&P was notified on August 17, 2006 that the Army intended to issue the contract for the Project to the SLA.** AR982.

48. [B&P] **B&P requested a debriefing from the Army and the Army held a debriefing on August 24, 2006.** AR957.

49. [Defendant] **On August 24, 2006, via teleconference, the Army provided a post award debriefing to B&P. Deidre Brown and**

**Annette Pipkins, along with their attorney, Greg Joy, represented B&P. Diane Biddy and Catherine Hill represented the Army.** AR967.

50. [B&P] ~~**During the debriefing, the Army first informed B&P that the Army had not applied a competitive range analysis.**~~ AR987, 1049.

Defendant disagrees, because the administrative record, including the Army's Memorandum of Record and the contracting officer's statement of facts, is the best evidence of the Army's statements during the post-award debriefing. AR967, AR984-88.

51. [B&P] **B&P filed a bid protest to the GAO on August 25, 2006.** AR970-983.

52. [B&P] **The Army moved to dismiss the protest on September 13, 2006.** AR989-94. **B&P responded to the Army's Motion to Dismiss on September 22, 2006.** AR995-1007.

53. [B&P] **The GAO dismissed B&P's protest on September 26, 2006.** AR1008-1009.

54. [B&P] **B&P filed this action on October 27, 2006.**

55. [B&P] **The Army has extended the last day for the existing food services contract at Ft. Gordon from September 20, 2006 to at**

**least January 31, 2006.**

56. [B&P] **The Government served the Administrative Record in this case on November 8 and 17, 2006.**

57. [B&P] **~~B&P did not know until the Administrative Record was issued in November 2006 that the Army found that the SLA's proposal was based on work to be performed by a non-blind vendor.~~**

Defendant disagrees because it lacks sufficient information to determine what B&P “knew” prior to when the Government served the administrative record. Defendant further disagrees that the Army "found that the SLA's proposal was based on work to be performed by a non-blind vendor."

58. [B&P] **~~B&P did not know until the Administrative Record was issued that the SLA's proposal failed to include the proper information required by the Solicitation prior to proposal submission.~~**

Defendant disagrees because it lacks sufficient information to determine what B&P “knew” prior to when the Government served the administrative record. Defendant further disagrees that "the SLA's proposal failed to include the proper information required by the solicitation prior to proposal submission."

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ James W. Copeland
s/ S. Gregory Joy
SMITH, CURRIE & HANCOCK, LLP
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1277
Phone: (404) 521-3800
Fax: (404) 688-0671

Attorneys for Plaintiff

s/ Kenneth D. Woodrow
KENNETH D. WOODROW
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530
Phone: (202) 353-0513
Fax: (202) 514-7976

Attorneys for Defendant

January 12, 2007

CERTIFICATE OF FILING

I hereby certify that on this 12th day of January 2007, a copy of the foregoing "CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kenneth D. Woodrow