**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| **BROWN & PIPKINS, LLC,**<br>**doing business as**<br>**ACSENTIAL SERVICES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION**<br>**FILE NO. 06-732C**<br><br>**Judge Lawrence M. Baskir** |

**VERIFIED AMENDED COMPLAINT**
**FOR PERMANENT INJUNCTION,**
**AND DECLARATORY RELIEF AND MANDAMUS**

COMES NOW Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), Plaintiff in the above-styled action, and files this Verified Amended Complaint seeking a permanent injunction against The United States of America and its agencies (particularly the U. S. Department of the Army), its officials, employees, agents and servants and for declaratory relief, a writ of mandamus and such other relief as the Court deems just and proper. In support of this Amended Complaint, B&P shows the Court the following:

## JURISDICTION AND PARTIES

1. B&P is a Georgia limited liability company with its principal place of business located in Atlanta, Fulton County, Georgia.

2. Defendant United States of America is the sovereign nation and government of the United States of America and its agencies, officers, employees and agents.

3. Sandra Mack ("Mack") is a Contracting Officer for the United States Department of the Army and is an officer of the Executive Branch delegated with the authority to make or withhold awards of the government contract involved, and is also responsible to ensure that all actions taken in connection with the award of this government contract comply with the Competition in Contracting Act and other applicable government statutes and regulations.

4. Diane T. Biddy ("Biddy") is a Contracting Officer for the United States Department of the Army and is an officer of the Executive Branch delegated with the authority to make or withhold awards of the government contract involved, and is also responsible to ensure that all actions taken in connection with the award of this government contract comply with the Competition in Contracting Act and other applicable government statutes and regulations.

5. Mack and Biddy are hereinafter referred to as the "Contracting Officers."

6. This Court has jurisdiction over this cause of action pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, and the Competition and Contracting Act, 31 U.S.C. §§ 3553, 3554, 3556 and 28 U.S.C. §§ 1491, 2201, and 2202. There is now existing between the parties an actual justiciable controversy.

7. Venue is appropriate in this Court.

**FACTS JUSTIFYING DECLARATORY AND INJUNCTIVE RELIEF**

8. The Army Southern Region Contracting Center East, Army Contracting Agency at Fort McPherson, Georgia issued Solicitation No. W911SE-05-R-0013 ("Solicitation") for the full food services requirement at Ft. Gordon, Georgia ("Project") on or about February 22, 2006. (A copy of portions of the Solicitation relevant to this action is attached to the original Verified Complaint filed in this action at Exhibit 1 which is incorporated herein by reference.)

9. The Solicitation provides that award of the contract is to be made to the Small Business Administration which will subcontract performance to the successful 8(a) offeror, which is a certified minority business enterprise subject to the provisions of Section 8(a) of the Small

Business Act, as amended (15 U.S.C. § 637(a)) ("8(a)"). The Solicitation states that FAR Provision 52.219-18 is included in the Solicitation. That provision states:

> Offers are solicited only from small business concerns expressly certified by the Small Business Administration (SBA) for participation in the SBA's 8(a) program and which meet the following criteria at the time of the submission of the offer - . . . (emphasis added)

FAR 52.219-18 addresses the preference for 8(a) contractors and does not address any preference for blind vendors under the Randolph-Sheppard Act.

10. The Solicitation also provides that the Randolph-Sheppard Act ("RSA") would apply to provide a preference to qualified nominees of State Licensing Agencies ("SLA") for the blind. The Solicitation states:

> All offerors are hereby put on notice that this solicitation is subject to the exercise of certain Defense preference policies regarding the Randolph-Sheppard Act (20 U.S.C. 107) as related to offerors of military food services. ***Present DoD and Army policy***, interpreting the Randolph-Sheppard Act applies a selection preference to qualified nominees of State Licensing Agencies (SLA) for the Blind who represent clients seeking Defense contracts for so-called "military cafeteria-styled food operations."
>
> Application of this preference ***may*** entitle a qualified offeror, whose evaluated proposal is determined technically acceptable to enter into direct

> negotiations with the Government without further consideration of other technically acceptable proposals.
>
> This notice is not designed to discourage competition from any 8(a) offerors interested in this requirement. Rather, it merely represents notice regarding a mandatory preference for Randolph-Sheppard Act State Licensing Agencies in the event that an offer from such source is received. In this respect, see Section I, FAR clause 52.219-18. (emphasis added)

(See Exhibit 1 to the original Verified Complaint filed in this action)

11. B&P maintains that these terms of the Solicitation reflect and effectively incorporate the language of DOD Directive 1125.3 which provides:

> E2.1.3.1.1. If the State licensing agency submits a proposal and it is not ***within the competitive range*** established by the contracting officer, award may be made to another offer or following normal procurement procedures, but only after the on-site official confers with the Head of the DoD Component.
>
> E2.1.3.1.2. If the State licensing agency submits a proposal and it is ***within the competitive range*** established by the contracting officer, the contract will be awarded to the State licensing agency except as provided in E2.1.3.1.3., below.
>
> E.2.1.3.1.3. The contracting officer may award to other than the State licensing agency when the on-site official determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary,

> U.S. Department of Education, approves the determination (processing will be in accordance with E2.1.2., above), or when the on-site official determines, after conferring with the Head of the DoD Component, and the Secretary, U.S. Department of Education, agrees, that the blind vendor does not have the capacity to operate a cafeteria in such a manner as to provide food service at a comparable cost and of a comparable high quality as that available from other providers of cafeteria services.
>
> E2.1.3.2. Direct negotiations may be undertaken with State licensing agencies whenever the on-site official, with concurrence of the Head of the DoD Component, has determined that the State licensing agency, through its blind licensee, can provide the cafeteria services required at a reasonable cost, with food of a high quality comparable to that available from the other providers of cafeteria services. In the event direct negotiations fail to result in a contract with the State licensing agency, the procedures prescribed in E2.1.3.1., above, will be followed. (emphasis added)

12. B&P timely submitted its proposal in April, 2006 providing detailed technical information responsive to the Solicitation, with a proposed price of $35,045,235.00.

13. The Army has informed B&P that the Army received five proposals in response to the Solicitation, one of which was from the Georgia Department of Labor State Licensing Agency ("SLA") and another from protester B&P. (See the Army's Motion to Dismiss B&P's bid protest ("Protest") to the General Accountability Office ("GAO"), a copy of which is

attached to the original Verified Complaint filed in this action at Exhibit 5, and the statement of Biddy, attached to that Motion at Attachment 2. That Motion to Dismiss is referred to herein as "Army's Motion".)

14. B&P is a small business minority enterprise subject to Section 8(a) of the Small Business Act.

15. Biddy has acknowledged that the SLA is not a small business enterprise subject to Section 8(a) of the Small Business Act because the SLA is a not-for-profit state agency and not a minority contractor. (See Attachment 2, page 2 to Exhibit 5 attached to the original Verified Complaint filed in this action).

16. The Army has informed B&P that the SLA's proposal was $40,723,007.00, which is 16 percent higher than the price submitted by B&P.

17. The Army has also informed B&P that after reviewing of the five proposals for technical acceptability, the Army's Evaluation Board in May 2006 determined that only two of the proposals were technically acceptable, the proposals submitted by B&P and by the SLA. (See Attachment 2, page 2 to the Army's Motion at Exhibit 5 to the original Verified Complaint filed in this action).

18. The Army has maintained to B&P that "when the contracting officer learned that the proposal from SLA was rated technically acceptable, she immediately ceased consideration of all other proposals and entered into discussions with SLA." (See Attachment 2, Army's Motion at Exhibit 5 to the original Verified Complaint filed in this action However, there is nothing in the information provided by the Army to B&P that indicates that the Army conducted any further discussions with the SLA, what was discussed, or how the SLA's price proposal was evaluated. (A significant portion of page 2 of Attachment 2 to the Army's Motion was redacted with this regard, and, therefore, B&P has no way of knowing what the Army maintains that it did after determining the technical acceptability of the two proposals. B&P submitted a freedom of information request to the Army for documents relevant to the issues in B&P's protests, but the Army declined to provide any internal documents regarding its decision-making process.)

19. On August 17, 2006, B&P received from the Army a letter informing B&P that the Army had decided to award the Contract for the Project to the SLA. (See Exhibit 2 attached to the original Verified Complaint filed in this action and incorporated herein by reference.)

20. On August 24, 2006, Biddy conducted a debriefing with representatives of B&P and explained the Army's reasoning in deciding to award the contract for the Project to the SLA.

21. The Army has informed B&P that the Army awarded the contract to the SLA based on the understanding that the RSA supersedes the provisions of Section 8(a) of the Small Business Act. (See Exhibit 5 attached to the original Verified Complaint filed in this action.) However, B&P has also been informed by the Army that the Army awarded the contract to the SLA without determining that the SLA's bid falls within the competitive range. (See Exhibit 5 attached to the original Verified Complaint filed in this action and Attachment 2 thereto.) B&P understands that the Army did not even establish a competitive range for the Solicitation and did not find that the SLA's proposal was within a competitive range. (See Exhibit 5 attached to the original Verified Complaint filed in this action and Attachment 2 thereto.)

22. B&P believes that Section 8(a) of the Small Business Act and the Randolph-Sheppard Act both require the agency to determine that the SLA's proposal is within the competitive range before negotiations can be conducted with the SLA and before an award can be made to the SLA.

23. On August 25, 2006, B&P filed its Protest to the GAO, a copy of which is attached to the original Verified Complaint filed in this action at Exhibit 3 which is incorporated herein by reference. B&P amended its Protest to the GAO on August 28, 2006, a copy of which Amended Protest is attached to the original Verified Complaint filed in this action at Exhibit 4 and is incorporated herein by reference.

24. B&P maintained in the Protest and maintains in this action that the Army improperly awarded the contract to the SLA because: (a) the Army failed to employ a competitive range analysis in evaluating the proposals; (b) the Army did not determine that the SLA's proposal was within the competitive range; and (c) the SLA's proposal could not fall within a reasonable competitive range in light of the significantly higher price submitted by the SLA compared to B&P's proposed price. The Army has informed B&P that only B&P's proposal and the SLA's proposal were deemed technically acceptable and the Army has informed B&P that B&P's proposal price of $35,045,235.00 (for the base year plus four optional years) was lower than the SLA's proposal of $40,723.007.00, a difference of over 16 percent. Therefore, B&P maintains that the SLA's proposal should be deemed unacceptable because it would not fall within a reasonable competitive range if price were taken into account. Therefore,

B&P believes the SLA's proposal should be rejected and award made to B&P.

25. The Army filed a Motion to Dismiss B&P's Protest to the GAO. (See Exhibit 5 attached to the original Verified Complaint filed in this action.)

26. B&P responded to the Motion to Dismiss on September 22, 2006, a copy of which is attached to the original Verified Complaint filed in this action at Exhibit 6 which is incorporated herein by reference.

27. The GAO issued an Order dismissing B&P's Protest on September 27, 2006, a copy of which is attached to the original Verified Complaint filed in this action at Exhibit 7 which is incorporated herein by reference.

28. B&P believes that the GAO decision was incorrect.

29. B&P believes that the Army rationale to award to the SLA without establishing a competitive range and without finding that the SLA's proposal was within a competitive range improperly suggests an absolute right by the SLA to receive a government contract without regard to the contract criteria or the merit of the other bidders' proposals.

30. The Solicitation provided that the contract work on the Project pursuant to the Solicitation would begin on October 1, 2006. In light of

B&P's protest and the timing of the GAO's decision, the Army has extended the incumbent contractor's contract to November 30, 2006 with the new contract to begin December 1, 2006.

31. Subsequent to the filing of this action, the Army agreed to extend the incumbent contractor's contract to at least January 31, 2007.

32. In November 2006, the Defendant Government produced the administrative record for this case. As a result of the production of documents in that administrative, B&P has come to believe that the Army understands that the SLA's proposal contemplates that the work on the Project would be performed by Blackstone Industries, Inc. which B&P understands is not a blind vendor. B&P believes that Department of Defense regulations require the Army to ensure that the cafeteria operations will be performed by a State licensed blind vendor which the Army apparently recognizes would not occur under the SLA's proposal. Therefore, B&P believes the proposed award by the Army to the SLA would violate the Army's duty to duty to ensure that the cafeteria operations will be performed by a State licensed blind vendor.

33. B&P also understands from the administrative record that the SLA's proposed pricing was unclear and its proposal was defective because the SLA: (1) did not total proposed hours; (2) apparently did not

include contractor furnished material costs of $1,200,000 in the total proposal amount; and (3) did not show the computation of fee in its summary breakdown per year or by building. As a result, the Army could not tell what the SLA's proposed price really was (other than to know it was at least $5.67 million higher than B&P's.) B&P believes that such errors in a proposal render the proposal non-responsive.

**COUNT I**
**(PERMANENT INJUNCTION)**

34. B&P incorporates herein by reference the allegations contained in paragraphs 1 through 33 of the Verified Amended Complaint in full as if set forth herein and reaffirms and reiterates those allegations.

35. B&P is an interested party in this matter because it submitted a proposal in response to the Solicitation, and because B&P's proposal was the only proposal other than the SLA's proposal deemed technically acceptable by the Army.

36. Permanent injunctive relief is appropriate where: (1) the plaintiff has succeeded on the merits of the case; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) it is in the public interest to grant injunctive relief. *See Amoco Prod. Co.*

*v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987); *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

37. B&P believes a permanent injunction is appropriate in this case because the Administrative Record and undisputed facts show that Army's actions were arbitrary, an abuse of discretion and not in accordance with applicable regulations because (1) the Army did not apply the proper competitive range analysis required for proposals under the RSA, (2) the Army has failed to ensure that the cafeteria services would be performed by a blind vendor and instead seeks to award the contract to an SLA where the work is to be operated by a non-blind vendor, and (3) the SLA's proposal did not provide proper responses to many of the pricing requirements of the Solicitation.

38. B&P believes its claims succeed on the merits because there is no dispute that the Army: (a) did not establish a competitive range; (b) did not use a competitive range analysis; and (c) did not apply a price evaluation to determine if the SLA's proposed price was in a reasonable competitive range. Also, the Army apparently has decided to award to the SLA knowing that the cafeteria operations would not be operated by a licensed blind vendor which violates the Army's duty to ensure that the operations are performed by a blind vendor. There is also no dispute that

the SLA is not an 8(a) contractor and that the SLA's proposal price is over $5.67 million (i.e., over 16 percent) higher than B&P's proposal, which indicates that the SLA's bid would not be within a reasonable competitive range. B&P believes the Army's decision to award to the SLA effectively provides the SLA with a near absolute right to receive an award over other bidders, and exceeds the authority allowed the Army and its Contracting Officers.

39. Also, B&P believes its claims succeed on the merits because the Army has apparently decided to award to the SLA even though the SLA's pricing information was not complete and not responsive in B&P's opinion.

40. B&P would suffer irreparable harm if permanent injunctive relief is not granted because it would lose the opportunity to receive profit of over $1.6 million subject to its proposal for the Project. Additionally, B&P would be irreparably harmed if permanent injunctive relief it is not granted because B&P would have been forced to deal with an evaluation process not on a level playing field because the Army did not follow regulations applicable to the RSA requirements.

41. An injunction would not pose substantial harm to other interested parties in this case or harm the public interest. The Army will still

be able to obtain the food services needed at Fort Gordon because there is an existing contract and contractor providing the food services. The Army has already extended the existing contract by at least four months which indicates that the Army will not be injured by the continuation of the existing contract. Additionally, injunctive relief will be in the public interest because it can save taxpayers over $5.67 million with food services coming from a vendor that has been rated as acceptable by the Army, and injunctive relief would also promote the competitive process by helping to protect the competitive process. In contrast, B&P would suffer significant hardship as discussed in paragraph 40 above. Therefore, the balance of hardships favors injunctive relief and the public interest would be helped, not harmed, by the issuance of injunctive relief.

## COUNT II
## (DECLARATORY RELIEF)

42. B&P incorporates herein by reference the allegations contained in paragraphs 1 through 41 of the Verified Amended Complaint in full as if set forth herein and reaffirms and reiterates those allegations.

43. B&P believes that in light of the Army's failure to properly apply the required competitive range analysis, the Army's expressed intention to award the contract for the Project to the SLA, and the fact that B&P has submitted the only other technically acceptable proposal, which is more

than $5.67 million lower than the SLA's proposal, declaratory relief should be issued directing Defendant, its agencies, officers, agents and employees can not award the contract for the Project pursuant to the Solicitation to the SLA or any proposer other than B&P. B&P also believes declaratory relief is appropriate in light of the Army's failure ensure that the SLA's offer for cafeteria services would actually be operated by a licensed blind vendor.

## COUNT III
## (MANDAMUS)

44. B&P incorporates herein by reference the allegations contained in paragraphs 1 through 43 of the Verified Amended Complaint in full as if set forth herein and reaffirms and reiterates those allegations.

45. B&P believes that it is entitled to a writ of mandamus directing Defendant, its agencies, officers, agents and employees to award the contract for the Project to B&P because: (1) B&P does not have any other means to obtain the relief that it desires because B&P does not have any ability to control award of the contract; (2) B&P has shown that it is the only 8(a) enterprise-proposer that submitted a technically acceptable proposal within a reasonable competitive range, thereby establishing a clear right to be awarded the contract; and (3) the issuance of a writ is appropriate in this case given that B&P was the only party to provide a

proposal that would be within a reasonable competitive range and that would justify award under the terms of the RSA and the Solicitation.

PRAYER FOR RELIEF

WHEREFORE, B&P respectfully prays that this Honorable Court:

1) permanently enjoin Defendant from proceeding with performance of a new contract for the Food Services Project pursuant to the Solicitation by anyone other than B&P;

2) declare any contract issued pursuant to the Solicitation to anyone other than B&P void, and further declare that the contract pursuant to the Solicitation is to be awarded to B&P;

3) Issue a writ of mandamus directing Defendant to award any contract issued pursuant to the Solicitation to B&P; and

4) Provide such other and further relief as this Court determines is appropriate.

DATED this 3rd day of January, 2007.

**SMITH, CURRIE & HANCOCK LLP**

By s/ James W. Copeland

James W. Copeland (Ga. Bar No. 186780)

By s/ S. Gregory Joy
S. Gregory Joy (Ga. Bar No. 405495)
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC, doing business as Acsential Services

# VERIFICATION

STATE OF GEORGIA )
) SS
COUNTY OF FULTON )

Before me, the undersigned authority, a Notary Public in and for said State of Georgia, personally appeared Deidre F. Brown, who being duly sworn according to law, deposes and says that she is the principal member of Plaintiff Brown & Pipkins, LLC, doing business as Acsential Services and that she has personal knowledge of the facts set forth in the foregoing Verified Amended Complaint and knows the content thereof and that the same are true of her own knowledge and belief.

Deidre F. Brown

Sworn to and subscribed before me

this 29th day of December, 2006.

Notary Public

My Commission Expires: June 21, 2010

CAROL D. SEFERS NOTARY PUBLIC GEORGIA COBB COUNTY JUNE 21, 2010