**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **BROWN & PIPKINS, LLC, doing business as ACSENTIAL SERVICES,** | |
| **Plaintiff,** | **CIVIL ACTION FILE NO. 06-732C** |
| **v.** | **Judge Lawrence M. Baskir** |
| **THE UNITED STATES,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT**

James W. Copeland (Georgia Bar No. 186780)
S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

## Table of Contents


**I. STATEMENT OF MATERIAL FACTS .......... 2**

**II. ARGUMENT AND DISCUSSION OF AUTHORITY .......... 6**

A. Reconsideration Of The Court's Order/Opinion And Final Judgment As Appropriate In This Case .......... 6

B. Plaintiff Has A Strong Showing, Or At Least A Substantial Case For Prevailing On Appeal. .......... 7

1. There is authority supporting B&P's position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case. .......... 7

2. There is authority supporting B&P's position that the price differential between The SLA's proposal and B&P's proposal is excessive and rendered the SLA's price outside the competitive range. .......... 15

3. The applicable DOD and Army regulations should be construed to direct the procurement officers to ensure that the operator of the SLA's proposed services is a blind person and not sighted persons and the record indicates that BCI, not Hulsey, will be operating the SLA's proposed services. .......... 18

**III. CONCLUSION .......... 20**


## Table of Authorities

### Cases


*Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993) at 244 .......... 9

*Emerald Maintenance, Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) ........ 16-17, 18

*Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005) ........ 11,12,15

*North Carolina Division of Services for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002) ........ 16

*Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985) ........ 10

*Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980) ........ 10

*Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987) ........ 18

## Other Authorities

Mississippi Dep't of Rehabilitation Services v. United States Dep't of Defense, Federal Register, vol. 62, , No. 145, Pages 40509-40510 ........ 15-16

## Statutes, Regulations, and Directives

34 C.F.R. § 395.33(a) ........ 11, 18

34 C.F.R. § 395.33(b) ........ 8, 10, 13

48 C.F.R. §15.306(c) ........ 12

Army Regulation 210-25 ........ passim

Department of Defense Directive 1125.3 ........ 3, 7, 8

Department of Defense, Department of Education and the Committee For Purchase From People Who Are Blind Or Severely Disabled Joint Report to Congress under Section

848 Of The National Defense Authorization Act For Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts ............................... 17

FAR 15.101-2 ........................................................................... passim

FAR 15.305(a)(1) ........................................................................... 16

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT

Plaintiff Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), submits the following Memorandum in support of its Motion For Reconsideration pursuant to RCFC 59(a). B&P believes that the legal authorities and factual information set forth below justify the reconsideration by the Court of its January 29, 2007 Order/Opinion.

(B&P will also be filing a Motion pursuant to RCFC 62(c) requesting that the Court issue an order to stay, enjoin and/or restrain the Government from proceeding with performance of a full food services contract at Fort Gordon, Georgia pursuant to the Solicitation No. W911SE-05-R-0013 ("Solicitation") with any contractor other than B&P while the Court addresses this Motion For Reconsideration. That Motion also requests that, if the Court decides not to reconsider its Order/Opinion and the Judgment, that the Court issue an Order to stay, enjoin and/or restrain the Government from proceeding with performance of the Fort Gordon food services contract pursuant to the Solicitation until the Court of Appeals for the Federal Circuit has had an opportunity to rule on an appeal of this Court's January 29, 2007 Order/Opinion and January 30, 2007 Judgment.

B&P understands that the State Licensing Agency ("SLA") is scheduled to begin providing food services at Fort Gordon on March 1, 2007. Therefore, B&P requests that the Court issue a stay, injunction and/or temporary retraining order on an expedited basis to allow this Curt to reconsider its prior decision and, f necessary, for the Court of Appeals for the Federal Circuit to rule on B&P's appeal. B&P requests an expedited ruling on these Motions given the March 1 start date for the new contract.)

## I. STATEMENT OF MATERIAL FACTS

1. Plaintiff filed the instant bid protest case on October 27, 2006, seeking: (a) a temporary restraining order and permanent injunction restraining Defendant and its agencies, officers, servants, employees, and agents (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for the Food Services Project at Fort Gordon Georgia ("Project") pursuant to the Army Solicitation No. W911SE-05-R-0013 ("Solicitation") by anyone other than B&P; (b) declaratory relief that any contract issued pursuant to the Solicitation to anyone other than B&P void, and further declaring that the contract pursuant to the Solicitation is to be awarded to B&P; (c) a writ of mandamus directing Defendant to award any contract issued pursuant to

the Solicitation to B&P; and (d) such other and further relief as this Court determined was appropriate.

2. The Government agreed during a conference call with the Court on October 30, 2006 that the Army would not proceed with performance of the contract for the Project pending the resolution of this bid protest case.

3. Following briefing and oral argument, the Court issued a ruling orally on January 18, 2007 which was entered by written Order/Opinion issued January 29, 2007 denying Plaintiff's Motion for Judgment on the Administrative Record and granting Defendant's Cross-Motion for Judgment on the Administrative Record.

4. On January 30, 2007, the Clerk entered a final judgment in accordance with the Court's January 29, 2007 Order/Opinion.

5. In its briefs, B&P cited the Court to Department of Defense Directive 1125.3, and Army Regulation 210-25 implementing the Randolph-Sheppard Act ("RSA") as requiring that a competitive range had to be established and that the State Licensing Agency's ("SLA") proposal had to fall within the competitive range in order to be accepted. B&P also cited the Court to various authorities indicating that the agency must determine that the SLA's bid falls within "a reasonable and competitive range".

6. The Court found in its Order/Opinion that no competitive range had been established in this case because the Government disavowed references to a "virtual" competitive range "and based its argument foursquare on FAR 15.101-2." (Order/Opinion at page 9)

7. The Court's January 29, 2007 Order/Opinion finds that the Army did not have an obligation under the Department of Defense and Army regulations applicable to the RSA to establish a competitive range or to conduct a competitive range analysis. (Order/Opinion at page 8)

8. B&P believes the Court's Order/Opinion fails to recognize that cases cited by B&P requiring the contracting officer to establish a competitive range and determine that the SLA's proposal is within that range before awarding to the SLA, as discussed in the Argument below.

9. The Court ruled that B&P had provided no authority which would require a price comparison of the SLA's and a low bidder's prices in determining whether the SLA's price is fair and reasonable, and that B&P had not established that comparison with the incumbent's price, or with the Independent Government Estimate, or both, is an abuse of discretion, or that a difference in price of 16 percent to 19 percent is *per se* unreasonable. (Order/Opinion at 11)

10. B&P believes the Court's decision in this regard does not comport with judicial authorities requiring comparison of other bidder prices for a competitive range analysis. B&P also believes that relevant authorities show that a price differential of 16 to 19 percent between proposal costs is too high to be considered to be within a reasonable competitive range, as discussed in the Argument below.

11. The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the procurement process. (Order/Opinion at pages 13-14)

12. B&P believes that Army Regulation 210-25 (4)(c)(4) requires the Army and the contracting officer to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services as discussed in the Argument below.

13. The Order/Opinion finds that the evidence does not indicate that the SLA's services will be operated by Blackstone Consulting, Inc. ("BCI"), a non-blind entity. (Order/Opinion at page 14)

14. B&P believes the contracting officer has acknowledged that the SLA's food services, and not just accounting services, will be operated by

BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 13, page 903; see also Post Negotiation Memorandum at AR Tab 14, page 916; AR Tab 7, pages 98-100) B&P also believes the administrative record shows that the information relied on by the Army in deciding to award to the SLA shows that the operational information relied on was based on BCI's information not the blind vendor. (AR Tab 7 at 93-100; AR Tab 7 at pages 127-130; AR Tab 7 at pages 210, 259-260; AR Tab 13 at page 903 discussed below)

## II. ARGUMENT AND DISCUSSION OF AUTHORITY

### A. Reconsideration Of The Court's Order/Opinion And Final Judgment As Appropriate In This Case

Pursuant to Court of Federal Claims Rule 59(a), the Court may reconsider its prior rulings on all or part of the issues for any reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. A motion for reconsideration is to be filed within ten days (not including weekends and holidays, RCFC 6(a)) of the entry of the judgment. RCFC 59(b). Here, B&P is requesting reconsideration of the Court's Order/Opinion and final judgment within ten calendar days (eight business days) after the issuance of the Order/Opinion and nine calendar days (seven business days) after the issuance of the final Judgment.

For the reasons discussed below, B&P believes that the Court should reconsider its January 29, 2007 Order/Opinion (and the resulting January 30, 2007 Judgment) in light of the authorities cited below in conjunction with the facts of this case which show that the Army abused its discretion by failing to follow the required regulatory requirements applicable to the Solicitation and by awarding to the SLA instead of awarding to B&P.

**B. <u>The Applicable Law And Facts Justify The Court's Reconsideration Of the Order/Opinion And Judgment In This Case.</u>**

1. **<u>Authorities support B&P's position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case</u>**.

The Court found in its Order/Opinion that no competitive range had been established in this case because the Government disavowed references to a "virtual" competitive range "and based its argument foursquare on FAR 15.101-2." Order/Opinion at page 9. The Court also found that the Army did not have an obligation under the Department of Defense and Army regulations applicable to the RSA to establish a competitive range or to conduct a competitive range analysis, stating:

> Plaintiff cites these passages [from DoD Directive 1125.3] for the proposition that the regulations applying the RSA *require* the contracting officer to set a competitive range when determining if the SLA should

> be afforded priority. The cited provisions require nothing of the sort. Competitive range procedures are clearly not the focus of the directive. . . Plaintiff has not offered any procurement language that requires the setting of a competitive range in these circumstances.

Order/Opinion at page 8. (emphasis in original)

In its briefs, B&P cited the Court to Department of Defense Directive 1125.3, and Army Regulation 210-25 as requiring that award to the SLA could be made if the SLA's proposal was found to be "within the competitive range" and that award may be made to a non-SLA if the SLA's proposal "is not within the competitive range established by the contracting officer." The Solicitation specifically referenced the DOD and Army policies applicable to the RSA. (AR Tab 1, page 2) B&P continues to believe that these regulations required the contracting officer in this case to establish a competitive range and to determine that the SLA was within that range before awarding the contract to the SLA, which the contracting officer undisputedly did not do.

B&P also believes that the Court's finding that the DOD and Army regulations do not require a competitive range analysis is also contrary to Department of Education ("DOE") procedures implementing the RSA. 34 C.F.R. § 395.33(b) provides, "If the proposal received from the State licensing agency is judged *to be within the competitive range* and has been

ranked among those proposals which have a reasonable chance of being selected for final award, the property managing department, agency, or instrumentality shall consult with the Secretary as required under paragraph (a) of this section." (emphasis added)

B&P also believes the Court's finding is contrary to GAO and judicial authorities which B&P has previously cited to the Court (but which were not specifically referenced in the Order/Opinion) which require the contracting officer to establish a competitive range and to determine whether the State Licensing Agency's proposal falls within that competitive range before it can accept the SLA's proposal. In *Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993) at 244, the GAO quoted the DOE regulation and recognizes that "'In order to establish the ability of blind vendors to operate a cafeteria . . . *at comparable cost* and of comparable high quality . . . the . . . State licensing agency shall be invited to respond to the solicitations for offers when a cafeteria contract is contemplated." (emphasis added) To determine whether the SLA's proposal meets the "comparable cost" standard the GAO found at page 244:

> If the state licensing agency's proposal is judged by the federal agency to be 'within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award, "the

> federal agency is to consult with DOE. 34 C.F.R. § 395.33(b). The preamble to DOE's regulations states that the contract 'is expected to be awarded to the state licensing agency" following this consultation. Preamble to Final Rule, Randolph-Sheppard regulations, 42 Fed. Reg. 15803,15809 (1977). If, on the other hand, the proposal is judged not to be within the competitive range, the agency can award the contract to the most highly evaluated offerer. Accordingly the term "priority" does not suggest an absolute right to receive a government contract, without regard to the contract criteria or the merits of the other bidders.

72 Comp. Gen. at 244, citing *Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985). The district court in *Weinberger* examined the legislative history behind the RSA and found the government only needed to consider proposals from SLA's *which are within a competitive range*. *Id.* at 1018. (emphasis added)

The court in *Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980), stated:

> Apparently the plaintiffs want an unqualified priority to operate cafeterias. Yet, the bidding system allows the Secretary to determine whether the blind operator's cost is "reasonable"; and *the bidding regulation provides that if the blind vendor's bid falls within a reasonable and competitive range,* even if it is higher than some others, it will be given a priority. . . . It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost, In fact such a scheme, unlike the present one, would actually exceed the authority delegated to the Secretary by the Amendments [to the RSA]. (emphasis added)

Perhaps even more explicit is the ruling in *Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005) (which was not cited in B&P's prior briefs but which applies the same logic as the cases cited by B&P previously). In *Kentucky*, the Court reviewed the DOE regulation at 34 C.F.R. § 395.33(a) and found:

> If an SLA submits a bid pursuant to the solicitation, the regulations describe a two-step procedure that the contracting agency then *must* follow:
> If the proposal received from the [SLA] is judged to be *within a competitive range* and has been ranked among those proposals which have a reasonable chance of being selected for final award, the … agency shall consult with the Secretary as required under [34 C.F.R. § 395.33(a)]. *Id.* The SLA, hence, *must* clear two hurdles before receiving a priority under the RSA. First, the managing agency *must find that the SLA falls within "a competitive range"* and possesses "a reasonable chance" of receiving the contract. *Id.* Second, after the managing agency makes the aforementioned determinations, the agency must consult with the Secretary of Education to determine whether the SLA's operations "can be provided at a reasonable cost, with food of a high quality." 34 C.F.R. § 395.33(a) In other words, the regulations do not provide an automatic priority for an SLA whose proposal falls within a competitive range; even if the SLA's proposal does fall within the competitive range, the Secretary could still deny the SLA priority.

62 Fed.Cl. at 455. (emphasis added) The *Kentucky* decision makes clear that the competitive range determination must be performed under the

regulations applicable to the RSA and that the SLA must clear the competitive range hurdle.

In this case, the Court states that the competitive range is inapplicable because there is no authority indicating that a competitive range must be established where the solicitation applies FAR 15.101-2, lowest price technically acceptable source selection applicable to the Solicitation here. However, the court in *Kentucky* addressed an analogous situation where the solicitation provided that the procurement would not be negotiated, so the FAR did not require the contracting officer to establish a competitive range. *Id.* at 450. Despite that, the contracting officer established and used a competitive range analysis. "The CO expected to receive bids from one or more SLAs, however, and therefore formed a competitive range to comply with the RSA . . .." *Id.* The Court agreed that the competitive range procedure was the appropriate and required procedure under the RSA even though the solicitation did not require negotiations, stating at pages 462-63:

> The court notes that the competitive range requirement was placed in the solicitation solely because it was believed that KDB, and possibly other SLAs, would participate. *See* Def. Mot. To Dismiss at 11-13 (noting that, aside from the RSA requirements, [t]he contracting officer had no other reason to establish a competitive range" because this procurement did not require discussions); 48 C.F.R. §15.306(c)(*"[I]f discussions are*

> *to be conducted,"* then "Agencies shall…establish the competitive range.") (emphasis added) Admin. R. at 458. To be sure, the competitive range requirement in the solicitation was the result of the DOE regulation requiring agencies to establish a competitive range in the vending facility contracts, *see* 34 C.F.R. § 395.33(b), which became part of the solicitation pursuant to the corresponding Army regulation. *See* Army Reg. 210-25.

Thus, the Court of Federal Claims has recognized that competitive range analysis is required under the DOE and Army regulations implementing the RSA even if the solicitation provides there will be no negotiations so a competitive range analysis is not required under the FAR.

Moreover, there is no authority in the RSA, the DOE, DOD or Army regulations, or from the GAO or judiciary that B&P has been able to find, and none cited in the Order/Opinion providing that the language in the regulations calling for a competitive range analysis is optional or of no effect where a lowest cost technically acceptable method is used for evaluating proposals even without discussions. The regulations and authorities cited by B&P repeatedly refer to the need for a competitive range analysis which is clearly established in the *Kentucky* decision.

B&P believes the reason the competitive range requirement exists is to ensure that the SLA's proposed price is "at a comparable cost" as the RSA requires. The Court indicates that the Army made a pricing determination under FAR 15.101-2, lowest price technically acceptable

standard, then applied the RSA priority to award to the SLA. While the Army apparently applied the "technically acceptable" portion of the FAR 15-101.2 procedure, it clearly did not apply the "lowest price" portion. As the Court notes, under that procedure, if the RSA priority did not apply, the award should have been made to B&P. Order/Opinion at 9. Rather, under the Army's procedure, it found that RSA altered the lowest price technically acceptable standard because the contract was not awarded to B&P which submitted the lowest price technically acceptable offer. At this point, the Army was not following the competitive range or lowest price standard, but rather is creating its own standard based solely on its belief as to what is a "reasonable" price from the SLA. That process is an abuse of discretion and contrary to required regulations because the Army has disregarded the competitive range analysis required by the regulations incorporated into the Solicitation and the lowest price component called for in the Solicitation and made an independent determination of price reasonableness outside of the Solicitation's procedures and the regulations incorporated therein. The Army's process does not limit the Army's ability to determine whether the SLA's services will be provided "at a comparable cost" as occurred in this case where the Army awarded the contract for over $5.677 million more

than B&P's price (over 16 percent higher) which is not at a "comparable cost" (34 C.F.R. § 395.33(a)) to B&P's price as discussed below.

2. **There is authority supporting B&P's position that the price differential between the SLA's proposal and B&P's proposal is excessive and rendered the SLA's price outside the competitive range.**

The Order/Opinion states that:

> Plaintiff has pointed us to no authority which would require assessment of a SLA-low bidder differential in determining whether the SLA's price is fair and reasonable. Nor has Plaintiff established that comparison with the incumbent's price, or with the IGE [Independent Government Estimate], or both, is an abuse of discretion. Indeed, Plaintiff has not successfully argued that a difference in price of 16 percent – or under Plaintiff's worst-case scenario, 19 percent – is per se unreasonable. Under the circumstances, therefore, we find the contracting officer was not compelled to make a comparison between Plaintiff's price and that of the SLA.

B&P believes the Court's decision in this regard does not comport with judicial authorities requiring comparison of other bidder prices for a competitive range analysis. See *Kentucky v. United States*, 62 Fed. Cl. at 455 ("In awarding the priority, therefore, the Secretary must evaluate the quality and costs of the blind vendor's services to ensure that they are comparable to those of an incumbent vendor or other offerors"); Federal Register, vol. 62, No. 145, Pages 40509-40510, Arbitration Panel Decision Under Randolph-Sheppard Act in *Mississippi Dep't of Rehabilitative*

*Services vs. United States Dep't of Defense* (finding an SLA's offer was previously rejected because it exceeded the price of the other offers submitted).

The standard for a competitive range determination under the RSA regulations is the same as under the FAR. See *North Carolina Division of Services for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002). Under the FAR, the relative prices of the proposers need to be considered. See FAR 15.305(a)(1) ("Normally, competition establishes price reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis.") The regulations provide that award is to be made to the SLA if its proposal offers "comparable cost and of comparable high quality" to other qualified bidders. 34 C.F.R. § 395.33(a); DOD Directive 1125.3, Army Regulation 210-25. Therefore, the applicable regulations contemplate that a price comparison is to be made between the proposed prices.

B&P also believes that there is authority for the proposition that a price differential of more than 16 percent and as much as 19 percent between proposal costs, as in this case, justifies a finding that that the higher price is outside the competitive range. (see *Emerald Maintenance,*

*Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) (14 percent difference justified exclusion from competitive range).

While the Court is correct in its finding that the August 29, 2006 Department of Defense, Department of Education and the Committee For Purchase From People Who Are Blind Or Severely Disabled Joint Report to Congress under Section 848 Of The National Defense Authorization Act For Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts was issued after the award in this case, that Report is extremely persuasive authority from the DOD and DOE that a difference of more than five percent or $1 million dollars (whichever is less) is the maximum reasonable difference for the SLA's price to be considered to be within the competitive range. As a result, the SLA's over $5.677 million and perhaps as much as $6.745 million higher proposal price (16 – 19.25% higher than B&P's) justified a determination that the SLA's proposal in this case was not reasonable or within a reasonable competitive range.

Also, the fact that the price comparison may have resulted in B&P's proposal being the sole proposal in the competitive range does not bar the use of the price comparison. While it is preferable to have more than one

proposal in the competitive range, a higher priced proposal may be excluded from the competitive range even if that leaves only one proposal in the competitive range. *Emerald Maintenance*, *supra*; *Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987).

3. **The applicable DOD and Army regulations should be construed to direct the procurement officers to ensure that the operator of the SLA's proposed services is a blind person and not sighted persons and the record indicates that BCI, not Hulsey, will be operating the SLA's proposed services.**

The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the bidding and contracting process. B&P believes that Army Regulation 210-25(4)(c)(4) does require the Army and the contracting officer to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services. It would not make sense for the regulations to be construed otherwise. If the Army believes based on the SLA's proposal that the operator will not be blind then the Army could not "ensure that operators are in fact … blind persons."

The Order/Opinion also finds that the evidence does not indicate that the SLA's services will be operated by BCI, a non-blind entity.

Order/Opinion at 14. B&P believes the contracting officer has acknowledged that the SLA's food services, and not just accounting services, will be operated by BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 14, page 916, "The report concluded that Blackstone Consulting, Inc. (BCI) will be the actual contractor performing the services proposed by the SLA and their accounting system is operational and is determined acceptable to support cost-type contracts." There are two distinct statements here (1) regarding BCI as the "actual contractor performing the services proposed by the SLA" and (2) regarding the accounting system.)

Additionally, as B&P has noted previously, the SLA's proposal references key personnel who are BCI employees (AR Tab 7 at pages 92-99 and an organizational chart indicates that the key personnel on the job are BCI employees. (AR Tab 7 at 100) The SLA's proposal also relied on BCI's experience and pricing to support that proposal. Proposers were required to provide evidence of past performance by providing at least three customers for which the proposer had provided food program services similar to the Fort Gordon services within the past five years. (AR Tab 5 at page 72) The SLA's proposal only provided one from Mr. Hulsey (AR Tab 7 at page 126) and several from BCI. (Tab 7 at pages 127-130)

Furthermore, the SLA relied on BCI's, not Mr. Hulsey's, overhead calculations for the SLA's proposed overhead for the Project. (Compare AR Tab 7 at page 210 with AR Tab 13 at page 903) B&P believes the evidence from the proposal, as well as the Army's statements shows that BCI is the actual operator under the SLA's proposal which is not appropriate under the applicable regulations.

## III. CONCLUSION

For the reasons set out above, B&P requests that the Court reconsider its January 29, 2007 Order/Opinion and January 30, 2007 final Judgment.

Respectfully submitted,

SMITH, CURRIE & HANCOCK LLP

By s/James W. Copeland
James W. Copeland
Georgia Bar No. 186780

By s/S. Gregory Joy
S. Gregory Joy
Georgia Bar No. 405495
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC, doing business as Acsential Services

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MEMORANDUM OF LAW IN SUPPORT OF MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON the ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT and the MEMORANDUM IN SUPPORT of that Motion are being electronically filed with the clerk of court this 8TH day of February, 2007 using the CM/ECF system which will send e-mail notification of such electronic filing to the following counsel of record for defendant: Kenneth David Woodrow, Esquire

By s/James W. Copeland
James W. Copeland
Georgia Bar No. 186780