**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **BROWN & PIPKINS, LLC,**<br>**doing business as**<br>**ACSENTIAL SERVICES,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION**<br>**FILE NO. 06-732C** |
| **v.** | ) | **Judge Lawrence M. Baskir** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER PENDING DECISION ON MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT, AND PENDING RESOLUTION OF APPEAL

James W. Copeland (Georgia Bar No. 186780)
S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

# Table of Contents

**I. STATEMENT OF MATERIAL FACTS .............................................. 2**

**II. ARGUMENT AND DISCUSSION OF AUTHORITY ............................... 7**

A. The Rules Expressly Authorize This Court To Issue A Temporary Stay Or Injunction Pending Appeal .............................................. 7

B. The Legal Standard For Considering A Motion For A Stay Pending Appeal .............................................................................. 7

C. Plaintiff Has A Strong Showing, Or At Least A Substantial Case For Prevailing On Reconsideration Or Appeal. .................................... 10

1. There is authority supporting B&P's position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case. ............... 10

2. There is authority supporting B&P's position that the price differential between the SLA's proposal and B&P's proposal is excessive and rendered the SLA's price outside the competitive range. ........................................................................ 18

3. The applicable DOD and Army regulations can be construed to direct the procurement officers to ensure that the operator of the SLA's proposed services is a blind person and not sighted persons and the record indicates that BCI, not Hulsey, will be operating the SLA's proposed services. ................................................... 21

D. Plaintiff Will Suffer Irreparable Injury If The Court Does Not Issue An Injunction Pending Appeal. ................................................... 23

E. The Issuance Of An Injunction Pending Appeal Will Not Result In Any Substantial Injury To Any Parties Having An Interest In This Bid Protest. ..................................................................... 25

F. The Issuance Of An Injunction Pending Appeal Will Not Harm The Public's Interest. ....26

**III. CONCLUSION....27**

## Table of Authorities

## Cases

*Alaska Central Express v. United States*, 51 Fed.Cl. 227, 229-30 (2001)....8-10

*Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C.Cir.1966))....8

*Ceres Environmental Services, Inc. v. United States*, 52 Fed.Cl. 23, 39 (2002)....23

Cortez *III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996)....25

*CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 576 (2004)....26

*Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993) at 244 ....12-13

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir.1987) ....8

*Emerald Maintenance, Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) ....20,21

*Georgia Gazette Pub. Co. v. U.S. Dep't of Defense*, 562 F.Supp. 1004, 1010 (S.D. Ga. 1993)....23

*Golden Eagle Ref. Co. v. United States*, 4 Cl.Ct. 622, 624 (1984)....8

*Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370, (2004)....23

*HDM Corp. v. United States*, 69 Fed.Cl. 243, 259, 261 (2005)............23, 26

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)....................8, 9

*JWK Int'l Corp. v. United States*, 49 Fed.Cl. 364, 366 (2001)....................8

*Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005) ....................14, 15, 16, 18

*Magnavox Electronics Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992) ....................24-25

*North Carolina Division of Services for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002)....................19

*Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 44 (2000)....................24

*Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985) ....................13

*Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980) ....................13-14

*Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed.Cir.1990) ....................9

*Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987)....................21

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977)* ....................9

## Other Authorities

C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 2904 , 516-17 (1995)....................10

*Mississippi Dep't of Rehabilitive Services vs. United States Dep't of Defense*, Federal Register, vol. 62, , No. 145, Pages 40509-4051043 ....................19

## Statutes, Regulations and Directives

34 C.F.R. § 395.33(a) .......................................................... 14, 18, 19

34 C.F.R. § 395.33(b) .......................................................... 12, 16, 19

48 C.F.R. §15.306(c) .......................................................................... 16

Army Regulation 210-25 ...................................................................passim

Department of Defense Directive 1125.3 ....................................... 4, 11, 19

Department of Defense, Department of Education and the Committee For Purchase From People Who Are Blind Or Severely Disabled Joint Report to Congress under Section 848 Of The National Defense Authorization Act For Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts ............................... 20

FAR 15.101-2 ................................................................................ 4, 11, 17

FAR 15.305(a)(1) .................................................................................. 19

FRAP 8 ....................................................................................................... 8

RCFC Rule 62(b) ........................................................................................ 8

RCFC Rule 62(c) ........................................................................................ 8

RCFC Rule 65 ............................................................................................ 8

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER PENDING DECISION ON MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT, AND PENDING RESOLUTION OF APPEAL**

Plaintiff Brown & Pipkins, LLC, doing business as Acsential Services ("B&P") respectfully requests that the Court issue an order to stay, enjoin and/or restrain the Government (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a full food services contract at Fort Gordon, Georgia pursuant to the Solicitation No. W911SE-05-R-0013 ("Solicitation") with any contractor other than B&P while the Court addresses B&P's Motion For Reconsideration of January 29, 2007 Order/Opinion Regarding Cross-Motions For Judgment Upon The Administrative Record And January 30, 2007 Judgment.

If the Court decides not to reconsider its Order/Opinion and the Judgment, B&P requests that the Court extend any stay, injunction and/or restraining order it may have already entered regarding this Motion to prevent the Government from proceeding with performance of the Fort Gordon food services contract pursuant to the Solicitation until the Court of Appeals for the Federal Circuit has had an opportunity to rule on an appeal

of this Court's January 29, 2007 Order/Opinion and January 30, 2007 Judgment, or issue an Order to stay, enjoin and/or restrain the Government from proceeding with performance of the Fort Gordon food services contract pursuant to the Solicitation until the Court of Appeals for the Federal Circuit has had an opportunity to rule on an appeal of this Court's January 29, 2007 Order/Opinion and January 30, 2007 Judgment.

B&P understands that the State Licensing Agency ("SLA") is scheduled to begin providing food services at Fort Gordon on March 1, 2007 pursuant to the Solicitation. Therefore, B&P requests that the Court issue a stay, injunction and/or temporary retraining order on an expedited basis to allow this Court to reconsider its prior decision and, if necessary, for the Court of Appeals for the Federal Circuit to rule on B&P's appeal. B&P requests an expedited ruling on these Motions given the March 1 start date for the new contract.

B&P requests that the Court rule of this Motion on an expedited basis given the March 1, 2007 scheduled start date for the new contract.

## I. STATEMENT OF MATERIAL FACTS

1. Plaintiff filed the instant bid protest case on October 27, 2006, seeking: (a) a temporary restraining order and permanent injunction restraining Defendant and its agencies, officers, servants, employees, and

agents (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a new contract for the Food Services Project at Fort Gordon Georgia ("Project") pursuant to the Army Solicitation No. W911SE-05-R-0013 ("Solicitation") by anyone other than B&P; (b) declaratory relief that any contract issued pursuant to the Solicitation to anyone other than B&P void, and further declaring that the contract pursuant to the Solicitation is to be awarded to B&P; (c) a writ of mandamus directing Defendant to award any contract issued pursuant to the Solicitation to B&P; and (d) such other and further relief as this Court determined was appropriate.

2. The Government agreed during a conference call with the Court on October 30, 2006 that the Army would not proceed with performance of the contract for the Project pending the resolution of this bid protest case.

3. Following briefing and oral argument, the Court issued a ruling orally on January 18, 2007 which was entered by written Order/Opinion issued January 29, 2007 denying Plaintiff's Motion for Judgment on the Administrative Record and granting Defendant's Cross-Motion for Judgment on the Administrative Record.

4. On January 30, 2007, the Clerk entered a final judgment in accordance with the Court's January 29, 2007 Order/Opinion.

5. In its briefs, B&P cited the Court to Department of Defense Directive 1125.3, and Army Regulation 210-25 implementing the Randolph-Sheppard Act ("RSA") as requiring that a competitive range had to be established and that the State Licensing Agency's ("SLA") proposal had to fall within the competitive range in order to be accepted. B&P also cited the Court to various authorities indicating that the agency must determine that the SLA's bid falls within "a reasonable and competitive range".

6. The Court found in its Order/Opinion that no competitive range had been established in this case because the Government disavowed references to a "virtual" competitive range "and based its argument foursquare on FAR 15.101-2." (Order/Opinion at page 9)

7. The Court's January 29, 2007 Order/Opinion finds that the Army did not have an obligation under the Department of Defense and Army regulations applicable to the RSA to establish a competitive range or to conduct a competitive range analysis. (Order/Opinion at page 8)

8. B&P believes the Court's Order/Opinion fails to recognize that cases cited by B&P requiring the contracting officer to establish a

competitive range and determine that the SLA's proposal is within that range before awarding to the SLA, as discussed in the Argument below.

9. The Court ruled that B&P had provided no authority which would require a price comparison of the SLA's and a low bidder's prices in determining whether the SLA's price is fair and reasonable, and that B&P had not established that comparison with the incumbent's price, or with the Independent Government Estimate, or both, is an abuse of discretion, or that a difference in price of 16 percent to 19 percent is *per se* unreasonable. (Order/Opinion at 11)

10. B&P believes the Court's decision in this regard does not comport with judicial authorities requiring comparison of other bidder prices for a competitive range analysis. B&P also believes that relevant authorities show that a price differential of 16 to 19 percent between proposal costs is too high to be considered to be within a reasonable competitive range, as discussed in the Argument below.

11. The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the procurement process. (Order/Opinion at pages 13-14)

12. B&P believes that Army Regulation 210-25 (4)(c)(4) requires the Army and the contracting officer to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services as discussed in the Argument below.

13. The Order/Opinion finds that the evidence does not indicate that the SLA's services will be operated by Blackstone Consulting, Inc. ("BCI"), a non-blind entity. (Order/Opinion at page 14)

14. B&P believes the contracting officer has acknowledged that the SLA's food services, and not just accounting services, will be operated by BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 13, page 903; see also Post Negotiation Memorandum at AR Tab 14, page 916; AR Tab 7, pages 98-100) B&P also believes the administrative record shows that the information relied on by the Army in deciding to award to the SLA shows that the operational information relied on was based on BCI's information not the blind vendor. (AR Tab 7 at 93-100; AR Tab 7 at pages 127-130; AR Tab 7 at pages 210, 259-260; AR Tab 13 at page 903 discussed below)

15. The incumbent contract for food services at Fort Gordon has been extended by the Army to end February 28, 2007. If the Court needs several weeks to address B&P's Motion For Reconsideration filed February

8, 2007 and/or if an appeal is necessary because the Court does not reconsider its decision, it is unlikely that the appeal of this case would conclude by that time.

## II. ARGUMENT AND DISCUSSION OF AUTHORITY

### A. The Rules Expressly Authorize This Court To Issue A Temporary Stay Or Injunction Pending Resolution Of A Motion For Reconsideration Or Pending Appeal

Pursuant to RCFC 65, the court has the authority to issue injunctions where it deems proper and the standards for an injunction are met. The facts and legal authorities supporting an injunction in this case have been discussed at length in B&P's prior briefs and, as to the basis for reconsideration are discussed in Sections II.C. – F below.

Rule RCFC 62(b) provides that the Court has the discretion to enter a stay pending the outcome of certain motions made pursuant to Rule 59. Rule 59(a) allows a party to request reconsideration of a final judgment.

In this case, a stay, injunction and a restraining order would be appropriate to preserve the status quo while the Court addresses the Motion for Reconsideration filed by B&P on February 8, 2007 for the reasons discussed in Sections II.C - F below.

### B. The Legal Standard For Considering A Motion For A Stay Pending Appeal

RCFC Rule 62(c) provides, in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

FRAP 8(a) instructs parties seeking injunctive relief to move this Court for a stay pending appeal before filing a similar motion in the Court of Appeals.

This Court discussed the standard for an injunction or stay pending appeal in *Alaska Central Express v. United States*, 51 Fed.Cl. 227, 229-30 (2001):

> An injunction pending appeal, like a stay pending appeal, is an “extraordinary remedy.” *Golden Eagle Ref. Co. v. United States*, 4 Cl.Ct. 622, 624 (1984) (quoting *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C.Cir.1966)). When considering such a motion under RCFC 62(c), the court is guided by the Federal Circuit's jurisprudence under Fed. R. App. P. 8(a) and assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *JWK Int'l Corp. v. United States*, 49 Fed.Cl. 364, 366 (2001); *cf. E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir.1987) (motion for injunction pending appeal in patent case). The court considers four factors: (1) whether the movant has made a strong showing that he is likely to succeed on the merits; (2)

whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed.Cir.1990) (quoting *Hilton*, 481 U.S. at 776, 107 S.Ct. 2113). The court need not give each factor equal weight, and the likelihood of success on the merits is not a rigid concept. *Id*.

* * * * *

'where [the movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,' provided the other factors militate in movant's favor." *Standard Havens*, 897 F.2d at 512 (quoting *Hilton*, 481 U.S. at 778, 107 S.Ct. 2113). "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.' " *Id*. Accordingly, if the equities weigh heavily in favor of maintaining the status quo, this court may grant an injunction under RCFC 62(c) where the question raised is novel or close, especially when the case will be returned to the trial court should the movant succeed. *See id*. at 513 ("[I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation ····"); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977)* (discussing "the movement in other courts away from a standard incorporating a wooden 'probability' requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of

equities as revealed through an examination of the other three factors”).

(While B&P as not yet filed a notice of appeal it intends to do so if the Court does not reconsider its prior decision shortly and if the prior decision stands. “When there is reason to believe that an appeal will be taken, there is no reason why the court should not make an order preserving the status quo pending the expected appeal.” C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure*, § 2904, 516-17 (1995))

**C. Plaintiff Has A Strong Showing, Or At Least A Substantial Case For Prevailing On Reconsideration Or Appeal.**

B&P believes there it has a strong likelihood of success on appeal, or at least that it can demonstrate a substantial case on the merits so that the Court of Appeals for the Federal Circuit can find that the Order/Opinion contains material error on some or all of the material issues addressed below, and, therefore, B&P believes there is at least a substantial case for its prevailing on its motion for reconsideration or on appeal.

1. **Authorities support B&P’s position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case**.

The Court found in its Order/Opinion that no competitive range had been established in this case because the Government disavowed

references to a "virtual" competitive range "and based its argument foursquare on FAR 15.101-2." Order/Opinion at page 9. The Court also found that the Army did not have an obligation under the Department of Defense and Army regulations applicable to the RSA to establish a competitive range or to conduct a competitive range analysis, stating:

> Plaintiff cites these passages [from DoD Directive 1125.3] for the proposition that the regulations applying the RSA *require* the contracting officer to set a competitive range when determining if the SLA should be afforded priority. The cited provisions require nothing of the sort. Competitive range procedures are clearly not the focus of the directive. . . Plaintiff has not offered any procurement language that requires the setting of a competitive range in these circumstances.

Order/Opinion at page 8. (emphasis in original)

In its briefs, B&P cited the Court to Department of Defense Directive 1125.3, and Army Regulation 210-25 as requiring that award to the SLA could be made if the SLA's proposal was found to be "within the competitive range" and that award may be made to a non-SLA if the SLA's proposal "is not within the competitive range established by the contracting officer." The Solicitation specifically referenced the DOD and Army policies applicable to the RSA. (AR Tab 1, page 2) B&P continues to believe that these regulations required the contracting officer in this case to establish a competitive range and to determine that the SLA was within that range

before awarding the contract to the SLA, which the contracting officer undisputedly did not do.

B&P also believes that the Court's finding that the DOD and Army regulations do not require a competitive range analysis is also contrary to Department of Education ("DOE") procedures implementing the RSA. 34 C.F.R. § 395.33(b) provides, "If the proposal received from the State licensing agency is judged *to be within the competitive range* and has been ranked among those proposals which have a reasonable chance of being selected for final award, the property managing department, agency, or instrumentality shall consult with the Secretary as required under paragraph (a) of this section." (emphasis added)

B&P also believes the Court's finding is contrary to GAO and judicial authorities which B&P has previously cited to the Court which require the contracting officer to establish a competitive range and to determine whether the State Licensing Agency's proposal falls within that competitive range before it can accept the SLA's proposal. In *Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993) at 244, the GAO quoted the DOE regulation and recognizes that "'In order to establish the ability of blind vendors to operate a cafeteria . . . *at comparable cost* and of comparable high quality . . . the . . . State licensing agency shall be

invited to respond to the solicitations for offers when a cafeteria contract is contemplated." (emphasis added) To determine whether the SLA's proposal met the "comparable cost" standard the GAO found at page 244:

> If the state licensing agency's proposal is judged by the federal agency to be 'within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award, "the federal agency is to consult with DOE. 34 C.F.R. § 395.33(b). The preamble to DOE's regulations states that the contract 'is expected to be awarded to the state licensing agency" following this consultation. Preamble to Final Rule, Randolph-Sheppard regulations, 42 Fed. Reg. 15803,15809 (1977). If, on the other hand, the proposal is judged not to be within the competitive range, the agency can award the contract to the most highly evaluated offerer. Accordingly the term "priority" does not suggest an absolute right to receive a government contract, without regard to the contract criteria or the merits of the other bidders.

72 Comp. Gen. at 244, citing *Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985). The district court in *Weinberger* examined the legislative history behind the RSA and found the government only needed to consider proposals from SLA's *which are within a competitive range*. *Id.* at 1018. (emphasis added)

The court in *Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980), stated:

> Apparently the plaintiffs want an unqualified priority to operate cafeterias. Yet, the bidding system allows the Secretary to determine whether the blind operator's cost

> is "reasonable"; and *the bidding regulation provides that if the blind vendor's bid falls within a reasonable and competitive range,* even if it is higher than some others, it will be given a priority. . . . It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost, In fact such a scheme, unlike the present one, would actually exceed the authority delegated to the Secretary by the Amendments [to the RSA]. (emphasis added)

Perhaps even more explicit is the ruling in *Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005) (which was not cited in B&P's prior briefs but which applies the same logic as the cases cited by B&P previously). In *Kentucky*, the Court reviewed the DOE regulation at 34 C.F.R. § 395.33(a) and found:

> If an SLA submits a bid pursuant to the solicitation, the regulations describe a two-step procedure that the contracting agency then *must* follow:
> If the proposal received from the [SLA] is judged to be *within a competitive range* and has been ranked among those proposals which have a reasonable chance of being selected for final award, the … agency shall consult with the Secretary as required under [34 C.F.R. § 395.33(a)]. *Id.* The SLA, hence, *must* clear two hurdles before receiving a priority under the RSA. First, the managing agency *must find that the SLA falls within "a competitive range"* and possesses "a reasonable chance" of receiving the contract. *Id.* Second, after the managing agency makes the aforementioned determinations, the agency must consult with the Secretary of Education to determine whether the SLA's operations "can be provided at a reasonable cost, with food of a high quality." 34 C.F.R. § 395.33(a) In other words, the regulations do not provide an automatic

> priority for an SLA whose proposal falls within a competitive range; even if the SLA's proposal does fall within the competitive range, the Secretary could still deny the SLA priority.

62 Fed.Cl. at 455. (emphasis added) The *Kentucky* decision makes clear that the competitive range determination must be performed under the regulations applicable to the RSA and that the SLA must clear the competitive range hurdle.

In this case, the Court states that the competitive range is inapplicable because there is no authority indicating that a competitive range must be established where the solicitation applies FAR 15.101-2, lowest price technically acceptable source selection applicable to the Solicitation here. However, the court in *Kentucky* addressed an analogous situation wher*e* the solicitation provided that the procurement would not be negotiated, so the FAR did not require the contracting officer to establish a competitive range. *Id.* at 450. Despite that, the contracting officer established and used a competitive range analysis. "The CO expected to receive bids from one or more SLAs, however, and therefore formed a competitive range to comply with the RSA . . .." *Id.* The Court agreed that the competitive range procedure was the appropriate and required procedure under the RSA even though the solicitation did not require negotiations, stating at pages 462-63:

> The court notes that the competitive range requirement was placed in the solicitation solely because it was believed that KDB, and possibly other SLAs, would participate. *See* Def. Mot. To Dismiss at 11-13 (noting that, aside from the RSA requirements, [t]he contracting officer had no other reason to establish a competitive range" because this procurement did not require discussions); 48 C.F.R. §15.306(c)(*"[I]f discussions are to be conducted,"* then "Agencies shall…establish the competitive range.") (emphasis added) Admin. R. at 458. To be sure, the competitive range requirement in the solicitation was the result of the DOE regulation requiring agencies to establish a competitive range in the vending facility contracts, *see* 34 C.F.R. § 395.33(b), which became part of the solicitation pursuant to the corresponding Army regulation. *See* Army Reg. 210-25.

Thus, the Court of Federal Claims has recognized that competitive range analysis is required under the DOE and Army regulations implementing the RSA even if the solicitation provides there will be no negotiations so a competitive range analysis is not required under the FAR.

Moreover, there is no authority in the RSA, the DOE, DOD or Army regulations, or from the GAO or judiciary that B&P has been able to find, and none cited in the Order/Opinion providing that the language in the regulations calling for a competitive range analysis is optional or of no effect where a lowest cost technically acceptable method is used for evaluating proposals even without discussions. The regulations and authorities cited by B&P repeatedly refer to the need for a competitive range analysis which is clearly established in the *Kentucky* decision.

B&P believes the reason the competitive range requirement exists is to ensure that the SLA's proposed price is "at a comparable cost" as the RSA requires. The Court indicates that the Army made a pricing determination under FAR 15.101-2, lowest price technically acceptable standard, then applied the RSA priority to award to the SLA. While the Army apparently applied the "technically acceptable" portion of the FAR 15-101.2 procedure, it clearly did not apply the "lowest price" portion. As the Court notes, under that procedure, if the RSA priority did not apply, the award should have been made to B&P. Order/Opinion at 9. Rather, under the Army's procedure, it found that RSA altered the lowest price technically acceptable standard because the contract was not awarded to B&P which submitted the lowest price technically acceptable offer. At this point, the Army was not following the competitive range or lowest price standard, but rather is creating its own standard based solely on its belief as to what is a "reasonable" price from the SLA. That process is an abuse of discretion and contrary to required regulations because the Army has disregarded the competitive range analysis required by the regulations incorporated into the Solicitation and the lowest price component called for in the Solicitation and made an independent determination of price reasonableness outside of the Solicitation's procedures and the regulations incorporated therein. The

Army's process does not limit the Army's ability to determine whether the SLA's services will be provided "at a comparable cost" as occurred in this case where the Army awarded the contract for over $5.677 million more than B&P's price (over 16 percent higher) which is not at a "comparable cost" (34 C.F.R. § 395.33(a)) to B&P's price as discussed below.

2. **<u>There is authority supporting B&P's position that the price differential between the SLA's proposal and B&P's proposal is excessive and rendered the SLA's price outside the competitive range.</u>**

The Order/Opinion states that:

> Plaintiff has pointed us to no authority which would require assessment of a SLA-low bidder differential in determining whether the SLA's price is fair and reasonable. Nor has Plaintiff established that comparison with the incumbent's price, or with the IGE [Independent Government Estimate], or both, is an abuse of discretion. Indeed, Plaintiff has not successfully argued that a difference in price of 16 percent – or under Plaintiff's worst-case scenario, 19 percent – is per se unreasonable. Under the circumstances, therefore, we find the contracting officer was not compelled to make a comparison between Plaintiff's price and that of the SLA.

B&P believes the Court's decision in this regard does not comport with judicial authorities requiring comparison of other bidder prices for a competitive range analysis. *Kentucky v. United States*, 62 Fed. Cl. at 455 ("In awarding the priority, therefore, the Secretary must evaluate the quality and costs of the blind vendor's services to ensure that they are comparable

to those of an incumbent vendor or other offerors"); Federal Register, vol. 62, No. 145, Pages 40509-40510, Arbitration Panel Decision Under Randolph-Sheppard Act in *Mississippi Dep't of Rehabilitative Services vs. United States Dep't of Defense* (finding an SLA's offer was properly rejected because it exceeded the price of the other offers submitted).

The standard for a competitive range determination under the RSA regulations is the same as under the FAR. See *North Carolina Division of Services for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002). Under the FAR, the relative prices of the proposers need to be considered. See FAR 15.305(a)(1) ("Normally, competition establishes price reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis.") The regulations provide that award is to be made to the SLA if its proposal offers "comparable cost and of comparable high quality" to other qualified bidders. 34 C.F.R. § 395.33(a); DOD Directive 1125.3, Army Regulation 210-25. Therefore, the applicable regulations contemplate that a price comparison is to be made between the proposed prices.

B&P also believes that there is authority for the proposition that a price differential of more than 16 percent and as much as 19 percent

between proposal costs, as in this case, justifies a finding that that the higher price is outside the competitive range. (see *Emerald Maintenance, Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) (14 percent difference justified exclusion from competitive range; that proposal also scored lower on technical components).

While the Court is correct in its finding that the August 29, 2006 Department of Defense, Department of Education and the Committee For Purchase From People Who Are Blind Or Severely Disabled Joint Report to Congress under Section 848 Of The National Defense Authorization Act For Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts was issued after the award in this case, that Report is extremely persuasive authority from the DOD and DOE that a difference of more than five percent or $1 million dollars (whichever is less) is the maximum reasonable difference for the SLA's price to be considered to be within the competitive range. As a result, the SLA's over $5.677 million and perhaps as much as $6.745 million higher proposal price (16 – 19.25% higher than B&P's) justified a determination that the SLA's proposal was not reasonable or within a reasonable competitive range.

Also, the fact that the price comparison may have resulted in B&P's proposal being the sole proposal in the competitive range does not bar the use of the price comparison. While it is preferable to have more than one proposal in the competitive range, a higher priced proposal may be excluded from the competitive range even if that leaves only one proposal in the competitive range. *Emerald Maintenance*, *supra*; *Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987).

3. **The applicable DOD and Army regulations should be construed to direct the procurement officers to ensure that the operator of the SLA's proposed services is a blind person and not sighted persons and the record indicates that BCI, not Hulsey, will be operating the SLA's proposed services.**

The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the bidding and contracting process. B&P believes that Army Regulation 210-25(4)(c)(4) does require the Army and the contracting officer to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services. It would not make sense for the regulations to be construed otherwise. If the Army believes based on the SLA's proposal that the

operator will not be blind then the Army could not "ensure that operators are in fact … blind persons."

The Order/Opinion also finds that the evidence does not indicate that the SLA's services will be operated by BCI, a non-blind entity. Order/Opinion at 14. B&P believes the contracting officer has acknowledged that the SLA's food services, and not just accounting services, will be operated by BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 14, page 916, "The report concluded that Blackstone Consulting, Inc. (BCI) will be the actual contractor performing the services proposed by the SLA and their accounting system is operational and is determined acceptable to support cost-type contracts." There are two distinct statements here (1) regarding BCI as the "actual contractor performing the services proposed by the SLA" and (2) regarding the accounting system.)

Additionally, as B&P has noted previously, the SLA's proposal references key personnel who are BCI employees (AR Tab 7 at pages 92-99 and an organizational chart indicates that the key personnel on the job are BCI employees. (AR Tab 7 at 100) The SLA's proposal also relied on BCI's experience and pricing to support that proposal. Proposers were required to provide evidence of past performance by providing at least

three customers for which the proposer had provided food program services similar to the Fort Gordon services within the past five years. (AR Tab 5 at page 72) The SLA's proposal only provided one from Mr. Hulsey (AR Tab 7 at page 126) and several from BCI. (Tab 7 at pages 127-130) Furthermore, the SLA relied on BCI's, not Mr. Hulsey's, overhead calculations for the SLA's proposed overhead for the Project. (Compare AR Tab 7 at page 210 with AR Tab 13 at page 903) B&P believes the evidence from the proposal, as well as the Army's statements shows that BCI is the actual operator under the SLA's proposal which is not appropriate under the applicable regulations.

### D. <u>Plaintiff Will Suffer Irreparable Injury If The Court Does Not Issue An Injunction Pending Appeal.</u>

The denial of the opportunity to have one's proposal fully and equally considered demonstrates irreparable harm justifying an injunction. *Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370 (2004); *Ceres Environmental Services, Inc. v. United States*, 52 Fed.Cl. 23, 39 (2002); *Georgia Gazette Pub. Co. v. U.S. Dep't of Defense*, 562 F.Supp. 1004, 1010 (S.D. Ga. 1983). "A party suffers irreparable injury when it loses the opportunity to compete a level playing field with other bidders." *HDM Corp. v. United States*, 69 Fed.Cl. 243, 259 (2005). "The potential loss of valuable business on [a] contract . . . deriving from a lost opportunity

to compete in a fair bidding process . . . has been found to prove irreparable harm." *Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 44 (2000).

The Army has failed to adhere to the required competitive range analysis, thereby depriving B&P of its opportunity to compete for these work requirements on a fair playing field. Therefore, injunctive relief is necessary to prevent irreparable harm to B&P.

If a stay or other injunctive relief is not granted then the Army will allow the SLA to begin providing services at Fort Gordon on March 1, 2007 which would effectively allow the SLA and its contractor to begin on-site operations, and ultimately to take over the food services contract which would effectively prevent B&P from having an opportunity to obtain the contract. Injunctive relief is appropriate in this case because if B&P is excluded from providing the food services at Fort Gordon, B&P will lose the opportunity to compete for the contract award and will lose over $1.6 million profits thereunder. (Affidavit of Deidre Brown attached to B&P's December 29, 2006 Response Memorandum at Exhibit A; Order/Opinion at pages 12-13.) B&P cannot recover these lost profits; only proposal preparation and attorneys' fees can be recovered. The lost opportunity to compete and the loss of profits both justify a finding of irreparable harm. *Magnavox*

*Electronic Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992); Cortez *III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996).

### E. The Issuance Of An Injunction Pending Appeal Will Not Result In Any Substantial Injury To Any Parties Having An Interest In This Bid Protest.

While the entry of an injunction would protect B&P's interests, an injunction would not pose a substantial harm to food service operations at Fort Gordon or harm the public interest in this case. The Army will still be able to obtain the food services needed at Fort Gordon pending the injunction because there is an existing contract and contractor providing the food services. The Army has already extended the existing contract by five months, which indicates that the Army will not be injured by the continuation of the existing contract. There would not be any harm to the SLA because if the appeal is successful then it would not have been entitled to the contract anyway. If the appeal is unsuccessful, then the SLA will simply begin providing services pursuant to the contract a little later with the same contract time periods specified in the Solicitation.

Additionally, if B&P's appeals is ultimately upheld and award to the SLA is enjoined with concurrent direction to award to B&P then B&P would provide food services at a savings to taxpayers of over $5.67 million over five years and perhaps even more.

An injunction of the award to the SLA and award to B&P would also serve to promote the 8(a) set-aside for which this Project was designated but which would not be fostered by award to the non-8(a) SLA.

### F. **<u>The Issuance Of An Injunction Pending Appeal Will Not Harm The Public's Interest.</u>**

As discussed above, there will be no substantial harm to the public if a permanent injunction is issued. The Army and taxpayers would receive the food services they need and the Army would save over $5.67 million dollars if award to the SLA is enjoined and the contract is awarded to B&P. "There is an overriding public interest in preserving the integrity of the federal procurement process by requirement government officials to follow procurement statutes and regulations." *HDM Corp. v. United States*, 69 Fed.Cl. 243, 261 (2005) (citing *CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 576 (2004)). If the Court does not reconsider its prior decision then an injunction would be proper to allow the Court of Appeals time to address this matter to ensure the competitive procurement process has been properly followed.

Injunction of award to the SLA and award to B&P would also serve to promote the 8(a) set-aside for which this Project was designated. Therefore, a permanent injunction would serve the public interest.

## III. CONCLUSION

B&P understands that the SLA is scheduled to begin providing food service at Fort Gordon on March 1, 2007. In light of the foregoing facts and authorities, B&P respectfully requests that the Court issue, on an expedited basis, an order to stay, enjoin and/or restrain the Government (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a full food services contract at Fort Gordon, Georgia pursuant to the Solicitation No. W911SE-05-R-0013 ("Solicitation") with any contractor other than B&P while the Court addresses B&P's Motion For Reconsideration of January 29, 2007 Order/Opinion Regarding Cross-Motions For Judgment Upon The Administrative Record And January 30, 2007 Judgment.

If the Court decides not to reconsider its Order/Opinion and the Judgment, B&P requests that the Court extend any stay, injunction and/or restraining order it may have already entered regarding this Motion to prevent the Government from proceeding with performance of the Fort Gordon food services contract pursuant to the Solicitation until the Court of Appeals for the Federal Circuit has had an opportunity to rule on an appeal of this Court's January 29, 2007 Order/Opinion and January 30, 2007

Judgment, or issue an Order to stay, enjoin and/or restrain the Government from proceeding with performance of the Fort Gordon food services contract pursuant to the Solicitation until the Court of Appeals for the Federal Circuit has had an opportunity to rule on an appeal of this Court's January 29, 2007 Order/Opinion and January 30, 2007 Judgment.

Respectfully submitted,

SMITH, CURRIE & HANCOCK LLP

By s/James W. Copeland
James W. Copeland
Georgia Bar No. 186780

By s/S. Gregory Joy
S. Gregory Joy
Georgia Bar No. 405495
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER PENDING DECISION ON MOTION FOR RECONSIDERATION OF JANUARY 29, 2007 ORDER/OPINION REGARDING CROSS-MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND JANUARY 30, 2007 JUDGMENT AND PENDING RESOLUTION OF APPEAL and the MEMORANDUM IN SUPPORT of that MOTION are being electronically filed with the Clerk of Court this 8th day of February, 2007 using the CM/ECF system which will send e-mail notification of such electronic filing to the following counsel of record for defendant: Kenneth David Woodrow, Esquire

By s/S. Gregory Joy
S. Gregory Joy
Georgia Bar No. 405495