**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **BROWN & PIPKINS, LLC,** | ) | |
| **doing business as** | ) | |
| **ACSENTIAL SERVICES,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **FILE NO. 06-732C** |
| | ) | |
| **v.** | ) | **Judge Lawrence M. Baskir** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER DURING THE PENDENCY OF APPEAL

James W. Copeland (Georgia Bar No. 186780)
S. Gregory Joy (Georgia Bar No. 405495)
**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

# Table of Contents

I. **STATEMENT OF MATERIAL FACTS** ............................................... 2
II. **ARGUMENT AND DISCUSSION OF AUTHORITY** ............................... 6
A. The Legal Standard For Considering A Motion For A Stay Pending Appeal ........................................................................................ 6
B. Plaintiff Has A Strong Showing, Or At Least A Substantial Case For Prevailing On Reconsideration Or Appeal........................................ 7
1. There is authority supporting B&P's position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case.................. 7
2. There is authority supporting B&P's position that the price differential between the SLA's proposal and B&P's proposal is excessive and rendered the SLA's price outside the competitive range.................................................................................. 13
3. The applicable DOD and Army regulations can be construed to direct the procurement officers to ensure that the operator of the SLA's proposed services is a blind person and not sighted persons and the record indicates that BCI, not Hulsey, will be operating the SLA's proposed services......................................................... 15
C. Plaintiff Will Suffer Irreparable Injury If The Court Does Not Issue An Injunction Pending Appeal. ........................................................... 17
D. The Issuance Of An Injunction Pending Appeal Will Not Result In Any Substantial Injury To Any Parties Having An Interest In This Bid Protest. .................................................................................... 18
E. The Issuance Of An Injunction Pending Appeal Will Not Harm The Public's Interest. ........................................................................ 19
IV. **CONCLUSION** ........................................................................ 20

# Table of Authorities

## Cases

*Ceres Environmental Services, Inc. v. United States*, 52 Fed.Cl. 23, 39 (2002) ........ 17

Cortez *III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996) ........ 18

*CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 576 (2004) ........ 19

*Department of the Air Force – reconsideration*, 72 Comp. Gen. 241 (June 4, 1993) at 244 ........ 8-9

*Emerald Maintenance, Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) ........ 14, 15

*Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370, (2004) ........ 17

*HDM Corp. v. United States*, 69 Fed.Cl. 243, 259 (2005) ........ 17

*HDM Corp. v. United States*, 69 Fed.Cl. 243, 261 (2005) ........ 19

*Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005) ........ 10, 11, 13

*Magnavox Electronics Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992) ........ 18

*North Carolina Div. of Servs. for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002) ........ 14

*Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 44 (2000) ........ 17

*Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985) ........ 9

*Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980) ....................................................9-10

*Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed.Cir.1990) ..........................................................................7

*Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987)..............................................................................15

**Other Authorities**

*Mississippi Dep't of Rehabilitive Services vs. United States Dep't of Defense*, Fed. Reg., vol. 62, , No. 145, Pages 40509-4051043 ..............................................................13-14

**Statutes, Regulations and Directives**

34 C.F.R. § 395.33(a) .......................................................... 10, 13, 14

34 C.F.R. § 395.33(b) .............................................................8, 9, 11

48 C.F.R. §15.306(c) ...................................................................11

Army Regulation 210-25 .........................................................passim

Department of Defense Directive 1125.3 ....................................2, 7, 14

Department of Defense, Department of Education and the Committee For Purchase From People Who Are Blind Or Severely Disabled Joint Report to Congress under Section 848 Of The National Defense Authorization Act For Fiscal Year 2006: Application of the Javits-Wagner-O'Day Act and the Randolph-Sheppard Act to the Operation and Management of Military Dining Facilities Contracts ..............................15

FAR 15.101-2 ..........................................................................10, 12

FAR 15.305(a)(1)..........................................................................14

FRAP 8 ........................................................................................6

RCFC Rule 62(c) .......................................................................................... 6

Table of Exhibits

Exhibit 1 Notice of Appeal filed February 15, 2007

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER DURING THE PENDENCY OF APPEAL

Brown & Pipkins, LLC, doing business as Acsential Services ("B&P"), respectfully requests that the Court issue an order to stay, enjoin and/or restrain the Government (specifically the Department of the Army, the Secretary of Defense, the Secretary of the Army, and the Contracting Officers, and their successors) from proceeding with performance of a full food services contract at Fort Gordon, Georgia ("Project") pursuant to Solicitation No. W911SE-05-R-0013 ("Solicitation") with any contractor other than B&P during the pendency of B&P's appeal to the Court of Appeals for the Federal Circuit from this Court's January 29, 2007 Order/Opinion, January 30, 2007 Judgment, and February 14, 2007 Order denying B&P's Motions For Reconsideration.

B&P understands that Army is scheduled to proceed on March 1, 2007 with the State Licensing Agency ("SLA") providing food services at Fort Gordon pursuant to the Solicitation. Therefore, B&P requests that the Court issue a stay, injunction and/or restraining order on an expedited basis to maintain the status quo and allow the Court of Appeals time to rule on B&P's appeal before a new contract begins.

## I. STATEMENT OF MATERIAL FACTS

1. B&P filed this bid protest case on October 27, 2006, seeking: (a) a temporary restraining order and permanent injunction restraining Defendant and its agencies, officers, servants, employees, and agents from proceeding with performance of a new contract for the Fort Gordon Project pursuant to the Solicitation by anyone other than B&P; as well as (b) declaratory relief; and (c) a writ of mandamus directing Defendant to award any contract issued pursuant to the Solicitation to B&P.

2. The Government agreed during a conference call with the Court on October 30, 2006 that the Army would not proceed with performance pursuant to the Solicitation pending the resolution of this bid protest case.

3. Following briefing and oral argument, the Court issued a ruling orally on January 18, 2007, entered by written Order/Opinion of January 29, 2007, denying B&P's Motion for Judgment on the Administrative Record and granting Defendant's Cross-Motion. On January 30, 2007, the Clerk entered a final Judgment in accord with the Court's Order/Opinion.

4. B&P has argued that Department of Defense ("DOD") Directive 1125.3, and Army Regulation 210-25 implementing the Randolph-Sheppard Act ("RSA"), as construed by courts and the GAO, require that a

competitive range be established and that the SLA's proposal had to fall within "a reasonable and competitive range".

5. The Court found that no competitive range had been established in this case. (Order/Opinion at 9)

6. The Court found that the Army did not have an obligation under DOD or Army regulations applicable to the RSA to establish a competitive range or conduct a competitive range analysis. (Order/Opinion at 8)

7. B&P believes the Order/Opinion does not interpret properly authorities cited by B&P requiring the contracting officer to establish a competitive range and determine that the SLA's proposal is within that range before awarding to the SLA, as discussed in the Argument below.

8. The Court ruled that B&P had provided no authority which would require a price comparison of the SLA's and a low bidder's prices in determining whether the SLA's price is fair and reasonable, and that B&P had not established that comparison with the incumbent's price, or with the Independent Government Estimate, or both, is an abuse of discretion, or that a difference in price of 16 percent to 19 percent is *per se* unreasonable. (Order/Opinion at 11)

9. B&P believes the Court's decision in this regard does not comport with judicial authorities requiring comparison of other bidder prices

for a competitive range analysis. B&P also believes that relevant authorities show that a price differential of 16 to 19 percent between proposal costs is too high to be considered to be within a reasonable competitive range, as discussed in the Argument below.

10. The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the procurement process. (Order/Opinion at 13-14)

11. B&P believes Army Regulation 210-25 (4)(c)(4) requires the Army and the contracting officer to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services as discussed in the Argument below.

12. The Order/Opinion finds that the evidence does not indicate that the SLA's services will be operated by Blackstone Consulting, Inc. ("BCI"), a non-blind entity. (Order/Opinion at 14)

13. B&P believes the contracting officer has acknowledged that the SLA's food services, and not just accounting services, will be operated by BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 13, page 903; AR Tab 14, page 916; AR Tab 7, pages 98-100) Also, the

operational information relied on by the Army in deciding to award to the SLA was based on BCI's information not the blind vendor's. (AR Tab 7 at 93-100; AR Tab 7 at 127-130; AR Tab 7 at 210, 259-260; AR Tab 13 at 903 discussed below)

14. B&P filed Motions on February 7 and 8, 2007 requesting the Court to reconsider its Order/Opinion and/or Judgment. The Court denied those Motions on February 14, 2007. B&P included with its February 8, 2007 Motion for Reconsideration a Motion for Stay, Injunction And/or Restraining Order Pending Resolution Of Appeal which this Court denied without prejudice as premature.

15. B&P filed a Notice of Appeal on February 15, 2007. A copy of the Notice of Appeal stamped filed February 15 is attached at Exhibit 1.

16. The incumbent contract for food services at Fort Gordon has been extended by the Army to end February 28, 2007 and the new contract with the SLA is presently scheduled to start March 1, 2007. It is unlikely that the appeal of this case would conclude by that time.

17. Plaintiff will be irreparably injured if a stay or injunction is not issued shortly because B&P will be prevented from having its proposal fully and fairly considered and from obtaining a contract to which it is entitled

preventing its ability to obtain profits in excess of $1.6 million. (See Exhibit A to B&P's December 29, 2006 Response Memorandum (Docket #18).

18. A stay or injunction pending appeal will not result in substantial injury to other parties interested in this case. The new food services contract can proceed after the appeal if the appeal is denied, and if this Court's prior decision is reversed then a contract with an entity other than B&P should not have proceeded.

19. The public interest will not be prejudiced by the issuance of an injunction pending appeal because Fort Gordon would still have cafeteria food services under the incumbent contractor's contract.

## II. <u>ARGUMENT AND DISCUSSION OF AUTHORITY</u>

### A. <u>The Legal Standard For An Injunction Pending Appeal</u>

RCFC Rule 62(c) provides that:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

FRAP 8(a) directs parties to move in this Court for a stay pending appeal before filing a similar motion in the Court of Appeals.

The standard for injunction or stay pending appeal depends on four factors: (1) whether the movant has made a strong showing that he is

likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed.Cir.1990) B&P meets those factors.

### B. Plaintiff Has A Strong Showing, Or At Least A Substantial Case, For Prevailing On Appeal.

#### 1. Authorities support B&P's position that the DOD and Army regulations applicable to the RSA require the contracting officer to conduct a competitive range analysis which the contracting officer undisputedly did not do in this case.

The Court found that no competitive range had been established in this case. (Order/Opinion at 9) The Court also found the Army was not required under DOD and Army regulations applicable to the RSA to establish a competitive range or to conduct a competitive range analysis. (Order/Opinion at 8)

B&P has cited to DOD Directive 1125.3, and Army Regulation 210-25 as requiring that award to the SLA could be made if the SLA's proposal was found to be "within the competitive range" and that award may be made to a non-SLA if the SLA's proposal "is not within the competitive range established by the contracting officer." The Solicitation referenced

the DOD and Army policies applicable to the RSA. (AR Tab 1 at 2) B&P still believes these regulations required the contracting officer to establish a competitive range and to determine that the SLA was within that range before awarding the contract to the SLA, which the contracting officer undisputedly did not do.

B&P also believes that the Court's finding is contrary to Department of Education ("DOE") procedures implementing the RSA. 34 C.F.R. § 395.33(b) provides, "If the proposal received from the State licensing agency is judged *to be within the competitive range* and has been ranked among those proposals which have a reasonable chance of being selected for final award, the property managing department, agency, or instrumentality shall consult with the Secretary as required under paragraph (a) of this section." (emphasis added)

B&P also believes the Court's finding is contrary to GAO and judicial authorities which require the contracting officer to establish a competitive range and to determine whether the State Licensing Agency's proposal falls within that competitive range before it can accept the SLA's proposal. In *Department of the Air Force – reconsideration*, 72 Comp. Gen. 241, 244 (June 4, 1993), the GAO quoted the DOE regulation and found, "'In order to establish the ability of blind vendors to operate a cafeteria . . . at

comparable cost and of comparable high quality . . . the . . . State licensing agency shall be invited to respond to the solicitations for offers when a cafeteria contract is contemplated." To determine whether the SLA's proposal met the "comparable cost" standard the GAO found at 244:

> If the state licensing agency's proposal is judged by the federal agency to be 'within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award, "the federal agency is to consult with DOE. 34 C.F.R. § 395.33(b). The preamble to DOE's regulations states that the contract 'is expected to be awarded to the state licensing agency" following this consultation. Preamble to Final Rule, Randolph-Sheppard regulations, 42 Fed. Reg. 15803,15809 (1977). If, on the other hand, the proposal is judged not to be within the competitive range, the agency can award the contract to the most highly evaluated offerer. Accordingly the term "priority" does not suggest an absolute right to receive a government contract, without regard to the contract criteria or the merits of the other bidders.

72 Comp. Gen. at 244, citing *Randolph – Sheppard Vendors of America v. Weinberger*, 602 F. Supp. 1007 (D.C. D.C. 1985). The district court in *Weinberger* examined the RSA's legislative history and found the government only needed to consider proposals from SLA's which are within a competitive range. *Id.* at 1018. See also *Randolph – Sheppard Vendors of America, Inc. v. Harris,* 628 F.2d 1364, 1367 (D.C. Cir. 1980), ("[T]he bidding system allows the Secretary to determine whether the blind operator's cost is "reasonable"; and *the* bidding regulation provides that if

the blind vendor's bid falls within a reasonable and competitive range, even if it is higher than some others, it will be given a priority. . . . It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost,. . .")

Even more explicit is the ruling in *Kentucky v. United States*, 62 Fed. Cl. 445 (2004), *aff'd*, 424 F.3d 1222 (Fed. Cir. 2005). In *Kentucky*, the Court reviewed the DOE regulation at 34 C.F.R. § 395.33(a) and found:

> If an SLA submits a bid pursuant to the solicitation, the regulations describe a two-step procedure that the contracting agency then *must* follow:
> If the proposal received from the [SLA] is judged to be *within a competitive range* and has been ranked among those proposals which have a reasonable chance of being selected for final award, the … agency shall consult with the Secretary as required under [34 C.F.R. § 395.33(a)]. *Id.* The SLA, hence, *must* clear two hurdles before receiving a priority under the RSA. First, the managing agency *must find that the SLA falls within "a competitive range "*and possesses "a reasonable chance" of receiving the contract. *Id.*

62 Fed.Cl. at 455. (emphasis added) The *Kentucky* decision makes clear that a competitive range determination must be performed under the RSA regulations and that the SLA must clear the competitive range hurdle.

In this case, the Court states that the competitive range is inapplicable because there is no authority indicating that a competitive range must be established where the solicitation applies FAR 15.101-2,

lowest price technically acceptable source selection, applicable in this case. However, the court in *Kentucky* addressed an analogous situation where the solicitation provided that the procurement would not be negotiated, so the FAR did not require the contracting officer to establish a competitive range. *Id.* at 450. Despite that, the contracting officer established and used a competitive range analysis. "The CO expected to receive bids from one or more SLAs, however, and therefore formed a competitive range to comply with the RSA . . .." *Id.* The Court agreed that the competitive range procedure was the appropriate and required procedure under the RSA, stating at 462-63:

> The court notes that the competitive range requirement was placed in the solicitation solely because it was believed that KDB, and possibly other SLAs, would participate. *See* Def. Mot. To Dismiss at 11-13 (noting that, aside from the RSA requirements, [t]he contracting officer had no other reason to establish a competitive range" because this procurement did not require discussions); 48 C.F.R. §15.306(c)(*"[I]f discussions are to be conducted,"* then "Agencies shall…establish the competitive range.") (emphasis added) Admin. R. at 458. To be sure, the competitive range requirement in the solicitation was the result of the DOE regulation requiring agencies to establish a competitive range in the vending facility contracts, *see* 34 C.F.R. § 395.33(b), which became part of the solicitation pursuant to the corresponding Army regulation. *See* Army Reg. 210-25.

Thus, the Court of Federal Claims has recognized that competitive range analysis is required under the DOE and Army regulations

implementing the RSA even if the solicitation provides there will be no negotiations so a competitive range analysis is not required under the FAR.

Moreover, B&P has not found any authority and none is cited in the Order/Opinion providing that the competitive range language in the regulations is optional or of no effect where a lowest cost technically acceptable method is used, even without discussions.

B&P believes the competitive range requirement exists to ensure that the SLA's proposed price is "at a comparable cost" as the RSA requires but which did not occur here. The Court finds that the Army made a pricing determination under FAR 15.101-2, lowest price technically acceptable standard, then applied the RSA priority to award to the SLA. However the Army clearly did not apply the "lowest price" portion of FAR 15.101-2 procedure. As the Court notes, if the RSA priority did not apply, the award should have been made to B&P. Order/Opinion at 9. The Army was not following the competitive range or lowest price standard, but rather is creating its own cost standard based solely on its belief as to what is a "reasonable" price from the SLA. That process is an abuse of discretion and contrary to required regulations because the Army disregarded both the competitive range analysis required by regulations incorporated into the Solicitation and the lowest price component under FAR 15-101.2. The

Army made a determination of price reasonableness outside of regulations into the Solicitation and without determining that the SLA's services will be provided "at a comparable cost" as required by 34 C.F.R. § 395.33(a). The Army improperly awarded the contract for over $5.677 million (and over 16% higher) than B&P's price, and not at a "comparable cost" to B&P's.

2. **Authorities support B&P's position that the price differential between the SLA's and B&P's proposals is excessive and rendered the SLA's price outside the competitive range.**

This Court ruled that B&P had provided no authority requiring a comparison of the SLA's and a low bidder's prices in determining whether the SLA's price is fair and reasonable, and that B&P had not established that comparison with the incumbent's price, or with the Independent Government Estimate, or both, is an abuse of discretion, or that a difference in price of 16 percent to 19 percent is *per se* unreasonable. (Order/Opinion at 11)

B&P believes the Court's decision does not comport with judicial authorities. *Kentucky v. United States*, 62 Fed. Cl. at 455 ("In awarding the priority, therefore, the Secretary must evaluate the quality and costs of the blind vendor's services to ensure that they are comparable to those of an incumbent vendor or other offerors"); Fed. Reg., vol. 62, No. 145, Pages 40509-40510, Arbitration Panel Decision Under Randolph-Sheppard Act in

*Mississippi Dep't of Rehab. Servs. vs. United States Dep't of Defense* (finding an SLA's offer was properly rejected because it exceeded the price of the other offers submitted).

The standard for competitive range determination under RSA regulations is the same as under the FAR. *North Carolina Div. of Servs. for the Blind v. United States*, 53 Fed. Cl. 147, 167 (2002). FAR 15.305(a)(1) provides, "Normally, competition establishes price reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis." The regulations provide that award is to be made to the SLA if its proposal offers "comparable cost and of comparable high quality" to other qualified bidders. 34 C.F.R. § 395.33(a); DOD Directive 1125.3, Army Regulation 210-25.

There is authority for that a price differential of more than 16 percent between proposal costs justifies a finding that the higher price is outside the competitive range. (*Emerald Maintenance, Inc.*, Comp. Gen. Dec. B-221353, 86-1 CPD ¶308 (1986) (14 percent difference justified exclusion from competitive range; the proposal also scored lower on technical items).

While the Court is correct that the August 29, 2006 DOD, DOE and the Committee For Purchase From People Who Are Blind Or Severely

Disabled Joint Report to Congress regarding the RSA was issued after award in this case, the Report is extremely persuasive authority from DOD and DOE that a difference of more than five percent or $1 million dollars (whichever is less) is the maximum reasonable difference for the SLA's price to be considered within the competitive range. Thus, the SLA's over $5.677 million and perhaps as much as $6.745 million higher proposal price (16–19.25% higher than B&P's) in this case justified a determination that the SLA's proposal was not within a reasonable competitive range.

Also, a higher priced proposal may be excluded from the competitive range even if that leaves only one proposal in the competitive range. *Emerald Maintenance*, *supra*; *Systems Integrated*, Comp. Gen. Dec. B-225055, 87-1 CPD §114 (1987).

3. **<u>Applicable DOD and Army regulations should be construed to require procurement officers to ensure that the operator of the SLA's proposed services is a blind person, and the record indicates that BCI, a non-blind entity, will be the SLA's operator.</u>**

The Order/Opinion finds that Army Regulation 210-25(4)(c)(4) does not require that the Army "will . . . [e]nsure that operators are in fact State licensed blind persons and that sighted employees and assistants are utilized only to the extent reasonably necessary" as part of the bidding and contracting process. B&P believes Army Regulation 210-25(4)(c)(4)

requires the Army to ensure that the award will be made to an SLA whose blind vendor will be the true operator of the services because if the Army believes the SLA's proposed operator will not be blind then the Army could not be ensuring "that operators are in fact … blind persons."

The Order/Opinion also finds that the evidence does not indicate that the SLA's services will be operated by BCI, a non-blind entity. Order/Opinion at 14. B&P believes the contracting officer has acknowledged that the SLA's services, not just accounting services, will be operated by BCI, which would violate Army Regulation 210-25(4)(c)(4). (AR Tab 14, page 916, "The report concluded that Blackstone Consulting, Inc. (BCI) will be the actual contractor performing the services proposed by the SLA and their accounting system is operational and is determined acceptable to support cost-type contracts." There are two distinct statements here (1) regarding BCI as the "actual contractor performing the services proposed by the SLA" and (2) regarding the accounting system.)

Additionally, the SLA's proposal references key personnel who are BCI employees (AR Tab 7 at 92-99) and the organizational chart indicates that key personnel on the job are BCI employees. (AR Tab 7 at 100) The SLA's proposal also relies on BCI's experience and pricing to support that proposal. Proposers were required to provide evidence of past

performance by providing at least three prior food services customers for services similar to the Fort Gordon services within the past five years. (AR Tab 5 at 72) The SLA's proposal only provided one from Mr. Hulsey (AR Tab 7 at 126) and several from BCI. (Tab 7 at 127-130) Furthermore, the SLA relied on BCI's, not Mr. Hulsey's, overhead calculations for the SLA's proposed overhead for the Project. (Compare AR Tab 7 at 210 with AR Tab 13 at 903) B&P believes the proposal and the Army's statements and evaluation factors for the SLA's proposal show that BCI is the actual operator under the SLA's proposal which violates the Army regulations.

### C. B&P Will Suffer Irreparable Injury If The Court Does Not Issue An Injunction Pending Appeal.

Denial of the opportunity to have one's proposal fully and equally considered demonstrates irreparable harm justifying an injunction. *Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370 (2004); *Ceres Environmental Servs., Inc. v. United States*, 52 Fed.Cl. 23, 39 (2002). "A party suffers irreparable injury when it loses the opportunity to compete a level playing field with other bidders." *HDM Corp. v. United States*, 69 Fed.Cl. 243, 259 (2005); see also *Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 744 (2000).

The Army has failed to adhere to the required competitive range analysis, thereby depriving B&P of its opportunity to compete on a fair

playing field. If a stay or other injunctive relief is not granted then the Army will allow the SLA to begin providing services at Fort Gordon on March 1, 2007 which would effectively prevent B&P from having an opportunity to obtain the contract. B&P would lose the opportunity to compete for the contract award and will lose over $1.6 million profits thereunder. (Affidavit of Deidre Brown attached to B&P's December 29, 2006 Response Memorandum at Exhibit A; Order/Opinion at 12-13.) B&P cannot recover these lost profits; only proposal preparation and attorneys' fees if a stay or injunction is not granted. The lost opportunity to compete and the loss of profits both justify a finding of irreparable harm. *Magnavox Electronic Systems Co. v. United States*, 26 Cl.Ct. 1373, 1379 (Cl.Ct. 1992); Cortez *III Service Corp. v. NASA*, 950 F.Supp. 357 (D.D.C. 1996).

### D. <u>The Issuance Of An Injunction Pending Appeal Will Not Result In Any Substantial Harm To Any Parties Having An Interest In This Matter.</u>

While the entry of an injunction would protect B&P's interests, an injunction would not pose a substantial harm to food service operations at Fort Gordon or harm the public interest in this case. The Army will still be able to obtain the food services needed at Fort Gordon from the incumbent contractor pending the injunction because there is an existing contract and contractor providing the food services. There would not be any harm to the

SLA because if the appeal is successful then it would not have been entitled to the contract anyway. If the appeal is unsuccessful, then the SLA will simply begin providing services pursuant to the contract a little later with the same contract time periods specified in the Solicitation.

Additionally, if B&P's appeal is ultimately upheld and award to the SLA is enjoined with concurrent direction to award to B&P then B&P would provide food services at a savings to taxpayers of over $5.67 million over five years and perhaps even more. An injunction of award to the SLA would also serve to promote the 8(a) set-aside for which this Project was designated but which would not be fostered by award to the non-8(a) SLA.

### E. <u>The Issuance Of An Injunction Pending Appeal Will Not Harm The Public's Interest.</u>

There will be no substantial harm to the public if an injunction is issued. The Army would receive the food services it needs and the Army and taxpayers would save over $5.67 million dollars if award to the SLA is enjoined and the contract is awarded to B&P. Also, "[t]here is an overriding public interest in preserving the integrity of the federal procurement process by requirement government officials to follow procurement statutes and regulations." *HDM Corp. v. United States*, 69 Fed.Cl. 243, 261 (2005) (citing *CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 576 (2004)).

An injunction would allow the Court of Appeals time to address this matter to ensure the competitive procurement process has been properly followed.

Injunction of award to the SLA and award to B&P would also serve to promote the 8(a) set-aside for which this Project was designated. Therefore, a permanent injunction would serve the public interest.

## III. CONCLUSION

B&P believes it has satisfied the standards for an injunction and/or stay pursuant to RCFC 62(c) and B&P respectfully requests that its Motion For Stay, Injunction And/Or Restraining Order During The Pendency Of Appeal Be Granted on an expedited basis.

Respectfully submitted,

SMITH, CURRIE & HANCOCK LLP

By s/James W. Copeland
James W. Copeland
Georgia Bar No. 186780

By s/S. Gregory Joy
S. Gregory Joy
Georgia Bar No. 405495
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone (404) 521-3800
Facsimile (404) 688-0671

Attorneys for Brown & Pipkins, LLC,
doing business as Acsential Services

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing PLAINTIFF'S MOTION FOR STAY, INJUNCTION AND/OR RESTRAINING ORDER DURING THE PENDENCY OF APPEAL and the MEMORANDUM IN SUPPORT of that MOTION are being electronically filed with the Clerk of Court this 16th day of February, 2007 using the CM/ECF system which will send e-mail notification of such electronic filing to the following counsel of record for defendant: Kenneth David Woodrow, Esquire

By s/S. Gregory Joy
S. Gregory Joy
Georgia Bar No. 405495